David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.*,[1] | **Case No. 11-10614 (MG)** |
| Debtors. | (Jointly Administered) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) EXTENDING THE TIME WITHIN WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) AUTHORIZING THE DEBTORS TO ENTER INTO STIPULATIONS FURTHER EXTENDING THE TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

Borders Group, Inc. ("BGI") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, (i) extending the time within which the Debtors must decide to assume or reject unexpired leases of nonresidential real property (the "Unexpired Leases") by 90 days for a total of 210 days pursuant to Section 365(d)(4) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and (ii) authorizing, but not

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

directing, the Debtors to enter into stipulations with landlords in substantially in the form attached hereto as <u>Exhibit B</u> (the "Stipulations") further extending the deadline to assume or reject such unexpired leases beyond the 210-day period. In support of this Motion, the Debtors submit the Declaration of Richard Klein (the "<u>Klein Declaration</u>"), attached hereto as <u>Exhibit C</u>. In further support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

The Debtors are party to approximately 681 commercial leases, including approximately 674 leases for their retail stores.[2] The Debtors operate all of their stores pursuant to these leases, which are vital to the business and, thus, a successful reorganization.

Although the Debtors are seeking to expedite their exit from Chapter 11, the Debtors are still in the midst of developing, negotiating and implementing a comprehensive operational restructuring plan. As is typical for major retail cases, the Debtors need sufficient time to make critical decisions concerning the geographical footprint of the stores around which they will reorganize. Accordingly, the Debtors must seek relief from deadlines imposed by the Bankruptcy Code by which they must assume or reject their leases to ensure that the Debtors will have the time to address these issues in an orderly manner.

The Bankruptcy Code provides that, absent landlord consent, the Debtors must determine which leases to assume or reject on an accelerated basis. The Debtors have 120 days to make this determination subject to an extension of up to a 90-day extension for cause shown. For the reasons set forth below, the Debtors respectfully submit that there is sufficient cause to extend the initial 120-day period for an additional 90 days for a total of 210 days.

First, the Unexpired Leases are core assets of the estates: without leases, there would be no stores to operate the business.

---

[2] In a limited number of instances, the Debtors sublet their leasehold interests.

Second, the Debtors are continuing to explore options to maximize the value of the Unexpired Leases through potential assumption and assignment to third parties. Given the sheer number of Unexpired Leases at issue here, more time is needed fully explore these options.

Third, if the Debtors precipitously reject or assume the Unexpired Leases or are deemed to reject the Unexpired Leases by operation of Section 365(d)(4) of the Bankruptcy Code, they may forego significant value in such Unexpired Leases or incur unnecessary rejection damages or administrative claims.

Fourth, the Debtors are currently paying and will continue to pay for the post-petition rent obligations that arise under the Unexpired Leases. Pending the Debtors' decision to assume or reject the Unexpired Leases, the Debtors expect to perform all of their undisputed obligations arising from and after the Commencement Date.

Fifth, under the Debtors' $505 million DIP financing facility (the "DIP Facility"), the Debtors must obtain the requested 90-day extension within 60 days of the Commencement Date, or be in default under such facility with the attendant consequences. In addition, the DIP Facility requires the Debtors to set certain reserves, including a "Lease Reserve" for inventory that remains at the Debtors' lease locations that are not assumed at least 120 days before the deadline to assume or reject. Any such Lease Reserve will have a severe and detrimental effect on the Debtors' liquidity.

The Court should grant an extension for the full 210-day statutory period. Granting this relief will help ensure that the Debtors have the best opportunity to make fully-informed decisions regarding their leases and their restructuring plan; conversely, forcing the Debtors to make premature decisions will undoubtedly harm the estates by disabling the Debtors from obtaining the time necessary to reorganize a highly complex enterprise. Therefore, the Debtors

believe more than sufficient cause exists to extend the Debtors' Section 365(d)(4)'s assumption deadline to 210 days (subject to further extension with the consent of the impacted landlords, as discussed below).

The Debtors recognize that they may need more than the 210-day period. Accordingly, the Debtors believe it is prudent to prepare for that scenario now and respectfully request that the Court authorize their use of the form of Stipulation annexed hereto providing for an extension through and including January 12, 2012. Having a form agreement will save substantial time and expense in negotiating with each landlord for a consensual extension beyond the 210-day period.

The benefits of the relief requested herein are substantial with little or no prejudice to other parties in interest. Accordingly, the Motion should be approved.

## JURISDICTION

1. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On February 16, 2011 (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

## DEBTORS' BUSINESS

### A. Operations

3. The Debtors are a leading operator of book, music and movie superstores and mall-based bookstores. At January 29, 2011, the Debtors operated 642 stores, under the Borders,

Waldenbooks, Borders Express and Borders Outlet names, as well as Borders-branded airport stores in the United States, of which 639 stores are located in the United States and 3 in Puerto Rico. In addition, the Debtors operate a proprietary e-commerce web site, www.Borders.com, launched in May 2008, which includes both in-store and online e-commerce components.

4. As of February 11, 2011, the Debtors employed a total of approximately 6,100 full-time employees, approximately 11,400 part-time employees, and approximately 600 contingent employees (who are required to work one shift per month, and usually do so at special events), all of whom are located in the United States and Puerto Rico. The Debtors' employees are not subject to any collective bargaining agreements.

B. **Financials**

5. For the fiscal year ended January 29, 2011, the Debtors recorded net sales of approximately $2.3 billion. As of December 25, 2010, the Debtors had incurred net year-to-date losses of approximately $168.2 million.

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the *Declaration of Scott Henry Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions* (the "First Day Declaration") filed on the Commencement Date [Docket No. 20].

C. **Retention of DJM Realty Services, LLC**

7. On the Commencement Date, the Debtors filed their application to retain DJM Realty Services, LLC ("DJM") as real estate consultant (the "DJM Retention App.")[3] and to provide lease modification and mitigation and other real estate services to the Debtors. The DJM Retention App. is currently scheduled to be heard by this Court on March 15, 2011.

---

[3] [Docket No. 49].

### D. The DIP Provisions

8. Under the DIP Facility there are a number of provisions that address the ongoing treatment of the Unexpired Leases, including, but not limited to:

- *Required Extension of Time to Assume/Reject*: it is an event of default under the DIP Facility if "on or before the date that is sixty (60) days after the [Commencement] Date, the Credit Parties have not obtained an order of the Bankruptcy Court extending the time period of the Credit Parties to assume or reject leases to not less than two hundred and ten (210) days from the [Commencement Date]...." *See Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* (the "DIP Agreement"), § 7.1(m).[4]

- *Availability*: the Debtors are required to set a Lease Reserve (as defined in the DIP Agreement), that is determined, in part, by the amount of inventory at leased locations that have not been assumed by the Lease Assumption Reserve Commencement Date (12 weeks before the applicable deadline to assume or reject). Under the DIP Agreement, an increase in the Lease Reserve will decrease borrowing availability. *See DIP Agreement* §§ 1.1, 1.8, 2.2 and § 11.01 (definitions of Maximum Borrowing Availability and Maximum Borrowing Availability). To the extent the 120-day deadline is not extended by March 24, 2011, the Lease Reserve will kick in and the Debtors will lose their availability under the DIP Facility.

### THE UNEXPIRED LEASES

9. At the date hereof, the Debtors are subject to approximately 681 nonresidential real property leases[5] with approximately 325 landlords.[6] All stores are operated through such leases.

---

[4] In addition, under the DIP Agreement, there are a number of affirmative actions the Debtors are required to take (the "Additional Actions") by dates set in reference to the "Lease Rejection Date." *See* DIP Agreement, §§ 7.1 (m)(ii)-(v). Lease Rejection Date "means the last day of the 120 day lease rejection/assumption period, *as such period may be extended or shortened by the Bankruptcy Court*". DIP Agreement, § 11.01 (emphasis added). However, the Debtors believe they have substantially satisfied the Additional Actions. Additional Actions do not include the determinations in connection with setting the Lease Reserve.

[5] The aggregate lease number includes retail stores (674 leases for its 637 stores), warehouses and office space, including subleases, and excluding the leases for certain "dark" properties that the Debtors' have previously sought authority to reject. On the Commencement Date, the Debtors filed the *Debtors' Omnibus Motion Pursuant to 11 U.S.C. §§ 365(a) and 554(a) and Fed. R. Bankr. P. 6006, 6007 and 9014 for Approval of Rejection of Certain Unexpired Leases of Non-Residential Real Property and Authorization to Abandon Certain Property Effective as of the Commencement Date* [Docket No. 23] in order to reject four (4) leases on properties where the Debtors no longer conduct operations. Since the Commencement Date, four (4) additional leases have expired, with an additional lease expiring on March 3, 2011; these stores have now been closed.

[6] This number includes, in each instance, a landlord that has multiple affiliates that are parties to Unexpired Leases as a single landlord.

10. Before the commencement of these cases, the Debtors, in consultation with their advisors, identified and implemented critical cost-cutting initiatives to stabilize the Debtors' operations and ensure the Debtors' continued viability. Chief among these initiatives was the closure of certain unprofitable stores (the "<u>Closing Stores</u>"). Therefore, on the Commencement Date, the Debtors filed an emergency motion (the "<u>Store Closing Motion</u>")[7] with the Court seeking authority to, among other things, enter into an agreement with a liquidating agent (the "<u>Liquidating Agent</u>") to conduct store closing sales ("<u>SCSs</u>") at no fewer than 200 of the Debtors' stores and up to an additional 75 of the Debtors' stores if the landlords do not agree to substantial rent concessions.

11. Pursuant to the Court's *Order Approving the Agency Agreement, Store Closing Sales and Related Relief*, dated February 18, 2011,[8] the Court approved the appointment of the Liquidating Agent and the commencement of the SCSs. The SCSs have commenced and are expected to continue through April 30, 2011.

12. Further to the SCSs, the Debtors are continuing a comprehensive evaluation of their Unexpired Leases.[9] The Debtors expect to utilize the chapter 11 process to reject leases as they right-size their store footprint. Indeed, DJM is seeking to renegotiate substantially all of the Unexpired Leases to maximize the value of the estates and to ensure that the Debtors have a viable business plan that will serve as the backbone of their plan of reorganization.

---

[7] [Docket No. 7].

[8] [Docket No. 91].

[9] A list of the material Unexpired Leases identified by the Debtors to date is provided on <u>Exhibit D</u>. The Debtors hereby reserve their rights with respect to each of the agreements with the parties listed on <u>Exhibit D</u>. Including a party on <u>Exhibit D</u> does not constitute an admission by the Debtors that such agreement is an unexpired lease, or that it is necessarily a binding and enforceable agreement. Additionally, the Debtors reserve the right to amend <u>Exhibit D</u> to include Unexpired Leases that may be subsequently identified by the Debtors.

## RELIEF REQUESTED

13. By this Motion, the Debtors respectfully request the entry of an order pursuant to Section 365(d)(4) of the Bankruptcy Code (i) extending the Section 365(d)(4) deadline (the "365(d)(4) Deadline") by 90 days to September 14, 2011 for a total of 210 days and (ii) authorizing, but not directing, the Debtors to enter into Stipulations, as needed, further extending the time beyond the current requested 210-day period to assume or reject any of the Unexpired Leases.

## BASIS FOR RELIEF

14. Section 365(d)(4) of the Bankruptcy Code, provides, in part, that an unexpired lease of nonresidential real property under which a debtor is the lessee shall be deemed rejected and the debtor shall immediately surrender that nonresidential real property to the lessor, if the debtor does not assume or reject the unexpired lease by the earlier of: (a) the date that is 120 days after the Commencement Date; or (b) the date of the entry of an order confirming a plan. *See* 11 U.S.C. § 365(d)(4)(A).

15. The Court, however, may extend this deadline for an additional 90 days "for cause" and "may grant a subsequent extension only upon prior written consent of the lessor in each instance." *See* 11 U.S.C. § 365(d)(4)(B).

16. The term "cause" as used in Section 365(d)(4) is not defined in the Bankruptcy Code nor does the Bankruptcy Code establish formal criteria for evaluating a request for an extension of the initial 120-day period. Although the decision to extend a debtor's time to assume or reject unexpired leases of nonresidential real property is generally within the sound discretion of the court, in determining whether cause exists for an extension of the initial 120-day period, courts have relied on several factors, including the following:

    (a) whether the lease is the debtor's primary asset;

(b) whether the debtor has had sufficient time to formulate a plan of reorganization;

(c) whether the debtor was paying for the use of the property; and

(d) whether the debtor's continued occupation ... could damage the lessor beyond the compensation available under the Bankruptcy Code.

*See South St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 761 (2d Cir. 1996) (citing *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105-06 (2d Cir. 1982) and noting that the list of factors "is by no means exhaustive," and a bankruptcy court may consider others, such as the complexity of the debtor's case and the number of leases the debtor must evaluate); *In re Enron Corp.*, 330 B.R. 387, 393 n.10 (Bankr. S.D.N.Y. 2005) (finding that courts in the Second Circuit consider the factors provided in *Burger Boys*, among others, when setting the time for a debtor to assume or reject a contract); *In re 611 Sixth Ave. Corp.*, 191 B.R. 295, 298, 302-03 (Bankr. S.D.N.Y. 1996) (extending debtor's time to assume or reject lease where lease was primary asset and essential to debtor's plan, reversion would confer a windfall on the landlord, and, at the early stage of the case, the debtor required more time to resolve mechanics' liens and other claims prior to deciding whether it could assume the lease); *In re Wedtech Corp.*, 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987) (considering, among other factors, the complexity of the case facing the debtor and the number of leases the debtor must evaluate); *see also In re Channel Home Ctrs., Inc.*, 989 F.2d 682, 689 (3d Cir. 1993) (Alito, J.) ("[I]t is permissible for a bankruptcy court to consider a particular debtor's need for more time in order to analyze leases in light of the plan it is formulating.") (citing *Wedtech*, 72 B.R. at 471–72). The foregoing factors weigh in favor of granting the Debtors' requested extension.

A. **Cause Exists to Extend the 365(d)(4) Deadline by 90 Days**

17. There are a number of factors that individually, and collectively, are cause for the 365(d)(4) Deadline extension. First, the Unexpired Leases are core assets of the estates as they

9

govern the Debtors' retail locations. The Debtors must have sufficient time to develop and implement their operational restructuring, which will determine their retail footprint upon emergence from Chapter 11. This will entail not only an analysis of every retail location, but also a renegotiation of the terms of substantially all of the Debtors' leases. Accordingly, the Debtors need at least the full 210-day statutory period to address these matters in a deliberate and responsible manner.

18. Second, the Debtors are continuing to explore options to maximize the value of the Closing Store leases and other leases through potential assumption and assignment to third parties. In this regard, the Debtors expect to continue to work with their real estate advisor, DJM, to maximize the value of these assets. Given the sheer number of Unexpired Leases at issue, extending the 365(d)(4) Deadline to 210 days is appropriate.

19. Third, if the Debtors precipitously reject or assume the Unexpired Leases or are deemed to reject the Unexpired Leases by operation of Section 365(d)(4) of the Bankruptcy Code, they may forfeit significant value in such Unexpired Leases or incur unnecessary rejection damages or administrative claims, as the case may be. The Debtors want to have the maximum amount of information available and to exhaust all reasonable opportunities to capitalize on its leases before deciding whether to assume or reject the Unexpired Leases.

20. Fourth, the Debtors have paid their rent obligations for March 2011 and will continue to pay for post-petition rent obligations for periods thereafter that arise under the Unexpired Leases.[10] The Debtors are arranging to pay "stub rent" as well – that is, the post-

---

[10] The court in *In re Monahan Ford Corp. of Flushing* found that "the language of § 365(d)(4) does not expressly require the debtor to be current in its post-petition rental obligations under § 365(d)(3) as a prerequisite to obtaining an extension of time to assume a lease" and "the status of the debtor's post-petition payments to the landlord is a relevant consideration for the bankruptcy court in determining whether to grant an extension of time to assume or reject, but 'it is not, however, the only consideration.'" 390 B.R. 493, 500, 506 (Bankr. E.D.N.Y. 2008) (quoting *In re Burger Boys, Inc.* at 761).

10

petition portion of February rent. Further, pending the Debtors' decision to assume or reject the Unexpired Leases, the Debtors are projected to perform all of their undisputed obligations arising from and after the Commencement Date and have engaged in good faith negotiations with landlords on this point. Thus, the Debtors' requested extension of time to assume or reject the Unexpired Leases will not adversely affect the lessors that are party to the Unexpired Leases.

21. Fifth, under the Debtors' DIP Facility, it is an event of default if "on or before the date that is sixty (60) days after the [Commencement] Date, the Credit Parties have not obtained an order of the Bankruptcy Court extending the time period of the Credit Parties to assume or reject leases to not less than two hundred and ten (210) days from the [Commencement Date]" *DIP Agreement*, § 7.1(m).

22. In addition, under the DIP Facility, certain required reserves may significantly decrease the Debtors' liquidity. One such reserve is the Lease Reserve, which eliminates inventory at locations subject to leases that have not been assumed at least 12 weeks before the 365(d)(4) Deadline – that is, by March 24, 2011 absent the extension sought herein. Under the DIP Facility, an increase in the Lease Reserve due to the failure to obtain an extension will quite possibly eliminate the availability of available credit for the Debtors to maintain their businesses and visit irreparable harm upon these estates. Therefore, extending the 365(d)(4) Deadline is absolutely essential to ensure that the Debtors have adequate liquidity while they finalize their operational restructuring.

23. Where, as here, the initial period to assume or reject unexpired nonresidential leases has proven to be inadequate to make determinations about lease assumption and rejection, bankruptcy courts have routinely extended such periods, especially in retail bankruptcy cases. *See, e.g., In re Movie Gallery, Inc.*, Case No. 10-30696 (Bankr. E.D. Va. May 28, 2010)

(granting 90-day extension of the 120-day period to assume or reject unexpired leases); *In re Uno Rest. Holdings Corp.*, Case No. 10-10209 (Bankr. S.D.N.Y. May 11, 2010) (same); *In re Finlay Enters., Inc.*, Case No. 09-14873 (Bankr. S.D.N.Y. Dec. 17, 2009) (same); *In re BI-LO, LLC*, Case No. 09-02140 (Bankr. D.S.C. May 21, 2009) (same); *In re Stone Barn Manhattan LLC*, Case No. 08-12579 (Bankr. S.D.N.Y. Oct. 17, 2008) (same); *In re Linens Holding Co.* Case No. 08-10832 (Bankr. D. Del. June 3, 2008) (same); *see also In re Innkeepers USA Trust*, Case No. 10-13800 (Bankr. S.D.N.Y. Nov. 9, 2010) (granting 90-day extension of the 120-day period to assume or reject unexpired leases).

24. In sum, the proposed extension of the 365(d)(4) Deadline through and including the additional 90 days provided by 365(d)(4) of the Bankruptcy Code is necessary, appropriate and in the best interests of the Debtors' estates. Accordingly, the Debtors respectfully request that the Court grant the requested extension.

B. **The Proposed Stipulations Are Necessary and Appropriate**

25. The Debtors will comply with any deadline for assumption/rejection of leases set by the Court. However, the Debtors recognize they may need more time to negotiate with parties in interest to implement their operational restructuring. Therefore, the Debtors believe it is prudent to prepare for this possibility now.

26. Following an extension of the initial 120 day period to 210 days for "cause", the Court can authorize further extensions of the period within which a debtor in possession must assume or reject nonresidential real property upon the filing of written consent of the lessor (the "Landlord Extensions"). *See* 11 U.S.C. § 365(d)(4)(B)(ii). The Stipulation will provide for Landlord Extensions through and including January 12, 2012.

27. The Debtors believe that entering into stipulations for consensual Landlord Extensions will streamline the process of obtaining such extensions and will avoid the need to

handle such agreements on an individual basis with the Debtors' numerous independent landlords, which will cause a substantial waste of time, expense and delay. Numerous landlords have already indicated a willingness to enter into the Stipulations. Accordingly, the Debtors believe entering into the Stipulations (if the Debtors deem necessary in their reasonable business judgment) will maximize the value of the Debtors' estate and minimize the administrative burdens on the Court.

## RESERVATION OF RIGHTS

28. The Debtors reserve the right to seek further extensions of the time within which they may assume or reject unexpired leases of nonresidential real property pursuant to Section 365(d)(4) of the Bankruptcy Code.

## MOTION PRACTICE

29. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. As such, the Debtors submit that this Motion satisfies Local Bankruptcy Rule 9013-1(a).

## NOTICE

30. The Debtors have caused notice of this Motion to be provided by electronic mail, facsimile, and/or by overnight mail to: (i) the Office of the United States Trustee for the Southern District of New York (Attn: Tracy Davis, Esq. and Linda Riffkin, Esq.); (ii) those creditors holding the thirty largest unsecured claims against the Debtors' estates]; (iii) counsel for the DIP Agents: (x) Morgan, Lewis & Bockius LLP (Attn: Wendy Walker, Esq. and Sandra Vrejan, Esq.), counsel for the Working Capital Agent, (y) Riemer & Braunstein LLP (Attn: Donald E. Rothman, Esq.), counsel for GA Capital LLC; (iv) Kelley Drye & Warren LLP, attorneys for certain landlords (Attn: James S. Carr, Esq., Robert L. LeHane, Esq., and

Benjamin D. Feder, Esq.); (v) Lowenstein Sandler PC, proposed counsel for the official committee of unsecured creditors (Attn: Kenneth A. Rosen, Esq., Bruce D. Buechler, Esq., Bruce S. Nathan, Esq., and Paul Kizel, Esq.); (vi) Fried, Frank, Harris, Shriver & Jacobson LLP, attorneys for General Growth Properties, Inc. (Attn: Brad Eric Scheler, Esq.); (vii) Bingham McCutchen LLP, attorneys for Bank of America, N.A. (Attn: Julia Frost-Davies, Esq. and Andrew Gallo, Esq.); (viii) the Internal Revenue Service; (ix) the Securities and Exchange Commission; and (x) the counterparties to the Unexpired Leases, including the sublessees. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

31. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the Declaration of Richard Klein, the Debtors respectfully request that the Court (a) enter an order, substantially in the form attached hereto as Exhibit A granting the relief requested herein and (b) grant such other and further relief as is just and proper.

Dated: March 1, 2011
New York, New York

    KASOWITZ, BENSON, TORRES
    & FRIEDMAN LLP

    By: /s/ David M. Friedman
    David M. Friedman (DFriedman@kasowitz.com)
    Andrew K. Glenn (AGlenn@kasowitz.com)
    Jeffrey R. Gleit (JGleit@kasowitz.com)
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800

    *Attorneys for Debtors*
    *and Debtors-in-Possession*