UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>BORDERS GROUP, INC., *et al.*,<br><br>Debtors.[1] | FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 11-10614 (MG)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART THE DEBTORS' MOTION TO AUTHORIZE PROCEDURES FOR SALE OF DE MINIMIS ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

*A P P E A R A N C E S:*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Attorneys for Borders Group, Inc.*
1633 Broadway
New York, New York 10019
By:  Andrew Glenn, Esq.
     Jeffrey R. Gleit, Esq.

LOWENSTEIN SANDLER PC
*Attorneys for the Official Committee of Unsecured Creditors*
65 Livingston Avenue
Roseland, New Jersey 07068
By:  Bruce Buechler, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       Borders Group, Inc. and its affiliated debtors (collectively, the "Debtors") move for an order approving certain proposed procedures (the "Procedures") for the Debtors to sell de minimis assets free and clear of liens, claims and encumbrances without further need for Court approval (the "Motion"). (ECF Doc. # 672.) One limited objection was filed by Verizon

---

[1]     The Debtors are: Borders Group, Inc.; Borders International Services, Inc.; Borders, Inc.; Borders Direct, LLC; Borders Properties, Inc.; Borders Online, Inc.; Borders Online, LLC; and BGP (UK) Limited.

1

Communications, Inc. (ECF Doc. # 778), but that objection was resolved by agreement in advance of the hearing. In support of the Motion, the Debtors annexed the declaration of Holly Felder Etlin, Senior Vice President—Restructuring (the "Etlin Declaration"). (Motion Ex. C.) The Debtors also submitted a proposed form of order (the "Proposed Order"). (*Id.* Ex. A.)

Motions to approve streamlined procedures for sales of de minimis assets are fairly routine in large chapter 11 cases, particularly in cases of retailers with many store locations that will be closed during a chapter 11 case. The Debtors understandably want an inexpensive procedure to sell assets free and clear of liens, claims and encumbrances; buyers at such sales likewise want the assurance that their purchases are not subject to later attack. Efficiency and expediency, however, cannot be achieved at the expense of required protections under the Bankruptcy Code. For that reason, while the Court will grant approval of procedures for de minimis asset sales, the precise relief sought by the Debtors must be denied. Debtors' counsel must submit to the Court a new proposed order consistent with this Opinion.

## BACKGROUND

The Debtors seek to effectuate, from time to time, sales or transfers of surplus, obsolete, non-core or burdensome assets owned by the Debtors (the "De Minimis Assets") in any individual transaction or series of related transactions to a single buyer or group of "related buyers"[2] with an aggregate selling price equal to or less than $1,000,000.00. (Motion ¶ 9.) No De Minimis Assets will be sold to insiders pursuant to the Procedures. (*Id.*) Additionally, the Debtors request that the Procedures provide that every sale be deemed free and clear of all liens, claims and encumbrances (collectively, the "Liens") with such Liens attaching to the proceeds

---

[2] The Debtors define "related buyers" as purchasers of assets that may be corporate affiliates or otherwise related to other purchasers.

with the same validity, extent and priority as had attached to the assets immediately prior to the sale or transfer. (*Id.*) Further, the Debtors seek authorization to pay all necessary and reasonable costs associated with such sale or transfer as disclosed in the Sale Notice (defined below). (*Id.*)

The De Minimis Assets subject to the Motion include certain fixed assets located at Borders' distribution centers and corporate offices, as well as certain assets not part of the store closing sales that remain at stores after the conclusion of such sales located in and used by the Debtors' information technology and supply chain departments. (*Id.* ¶ 10.) The Debtors submit that these assets have become unnecessary to the Debtors' estates and reorganization efforts due to the closing of numerous stores and the planned closure of their distribution center located in Carlisle, Pennsylvania. (*Id.*) Specifically, the De Minimis Assets include, but are not limited to, the following: (i) fork lifts and dockstockers; (ii) automatic sorting equipment; (iii) multi-level inventory mezzanines; (iv) office furniture; (v) case erectors; (vi) power tools, ladders and other maintenance supplies; and (vii) computers, printers, servers and other technology-related equipment. (*Id.*)

The Procedures consist of the following:

a.  With regard to sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price less than or equal to $300,000:

    (i)  the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of the estates, without further order of the Court or notice to any party other than the DIP Agents in accordance with the terms and conditions of the DIP Credit Agreement; and

    (ii) any such transactions shall be free and clear of all Liens with such Liens attaching only to the sale proceeds with the same validity, extent and priority that existed immediately prior to the transaction.

3

    b.    With regard to the sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price greater than $300,000 and less than or equal to $1,000,000:

        (i)    the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of the estates, without further order of the Court, subject to the procedures set forth herein;

        (ii)    any such transactions shall be free and clear of all Liens with such Liens attaching only to the sale proceeds with the same validity, extent and priority that existed immediately prior to the transaction;

        (iii)    the Debtors shall, at least five (5) business days prior to the date of closing such sale or effectuating such transfer, provide written notice of such sale or transfer . . . (each notice a "Sale Notice") via email or overnight mail to [(i) the Office of the United States Trustee; (ii) Counsel for the Official Committee of Unsecured Creditors; (iii) counsel for the DIP Agents; (iv) Attorneys for certain landlords; (v) Attorneys for Bank of America, N.A.; (vi) any known affected creditor asserting a Lien on the relevant De Minimis Assets; and (vii) those parties requesting notice pursuant to Bankruptcy Rule 2002 (the parties set forth above other than in clause (iii), collectively, the "Notice Parties")];

        (iv)    the content of the Sale Notice shall consist of: (a) identification of the De Minimis Assets being sold or transferred; (b) identification of the purchaser of the assets; (c) the net book value of the assets, if known (d) the purchase price; and (e) the significant terms of the sale or transfer (which may include attaching the transaction agreement);

        (v)    if no written objections are filed with the Court and timely served on counsel for the Debtors by the Notice Parties by 4:00 p.m. (Eastern Time) on the fifth (5th) business day after service of such Sale Notice, the Debtors are authorized to immediately consummate such transaction; and

        (vi)    if a written objection is received from a Notice Party within such five business day (5-day) period that cannot be resolved, the relevant De Minimis Assets shall only be sold upon withdrawal of such written objection or further order of the Court.

    c.    Any sale or transfer of De Minimis Assets shall be subject to the Debtors' compliance with the terms and conditions of the DIP

>Credit Agreement including, without limitation, all notice and
>consent requirements set forth therein.

(Motion ¶ 11.)

## DISCUSSION

### A. The Debtors Have Demonstrated the Appropriate Exercise of Business Judgment

Section 363(b)(1) of the Bankruptcy Code provides that debtors "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir. 1992) (finding that section 363(b) was applicable because sound business judgment supported the sale of assets); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1072 (2d Cir. 1983) (holding that the application of section 363(b) must be supported by "some articulated business justification, other than appeasement of major creditors" and that "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application"); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (citing *Lionel Corp.*, 722 F.3d at 1071) (emphasizing the business judgment standard).

Although the determination of what constitutes a sufficient business reason depends on the facts and circumstances of each case, a debtor often satisfies the business judgment standard if "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872

5

(Del. 1985). Courts should not generally interfere with business decisions absent a showing of "bad faith, self-interest, or gross-negligence." *Integrated Res.*, 147 B.R. at 656.

In the context of auctions, courts defer to a debtor's business judgment when selecting the highest and best bid. *See In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002). Indeed, "the trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets; and although the trustee's or DIP's discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands." *In re Castre, Inc.*, 312 B.R. 426, 430–31 (Bankr. D. Colo. 2004).

The Debtors have established here that relief under section 363(b) is appropriate. The value of each transaction will be relatively small in light of the Debtors' total assets. And I have approved streamlined procedures for sales of de minimis assets in other cases. *See, e.g.*, *In re Mesa Air Grp.*, No. 10-10018 (Bankr. S.D.N.Y. Feb. 25, 2010) [Docket No. 371] (approving de minimis asset sale procedures for assets sold up to $750,000). In this case, it is simply not cost-efficient or necessary for the Debtors to seek Court approval for each sale. The costs associated with drafting, serving and filing all necessary pleadings could significantly reduce the proceeds garnered from each transaction. Moreover, the Debtors will be able to avoid maintenance and storage costs associated with these De Minimis Assets which no longer have much value to the estates. (Etlin Decl. ¶ 10.) The Procedures will also enable the Debtors to streamline the disposition process so that they can meet tight deadlines with respect to turning premises over to respective landlords. (*Id.* ¶ 11.) Lastly, to facilitate these transactions, the Debtors' request to pay necessary fees and expenses incurred in the sale or transfer of De Minimis Assets is also appropriate.

6

### B. The Proposed Notice Procedures Are Inadequate

Unfortunately, the efficiency of the Procedures does not satisfy the protections required by the Bankruptcy Code, at least for sales for $300,000 or less. Under the Procedures, for transactions of $300,000 or less, no party *other* than the DIP Agents—including the Official Committee of Unsecured Creditors (the "Committee") and known lienholders—will receive notice of the proposed sales.[3] When sale proceeds exceed $300,000, the Procedures call for broader notice to be made, including notice to all known lienholders. (Motion ¶ 11.) As explained below, broader notice is required for the Debtors to meet their goal of sales free and clear of liens under section 363(f).

### C. The Debtors May Sell Assets Free and Clear If Proper Notice Is Given

Section 363(f) of the Bankruptcy Code permits a debtor to sell property, under section 363(b) or (c), free and clear of any interest in such property of an entity other than the estate. *See* 11 U.S.C. § 363(f). However, a sale free and clear of liens may be approved only if at least one of the following five conditions are met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled to accept a monetary satisfaction of such interest. *Id.*; *see also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that § 363(f) is written in the disjunctive, authorizing a trustee or debtor-in-

---

[3] The failure to provide notice to known lienholders is contrary to procedures I have approved in other cases. *See Mesa Air Group*, No. 10-10018 (Bankr. S.D.N.Y. Feb. 25, 2010) [Docket No. 371] (requiring that notice be sent to the Office of the United States Trustee, counsel to the Official Committee of Unsecured Creditors, *any known lienholders* and parties requesting notice under Bankruptcy Rule 2002); *In re Partsearch Tech., Inc.*, No. 11-10282 (Bankr. S.D.N.Y. Apr. 21, 2011) [Docket No. 178] (same).

possession to sell property of the estate free and clear of all liens "if any of the five conditions of § 363(f) are met . . .").

The Debtors argue that relief is warranted under section 363(f)(2) because they have already obtained the consent of the DIP Agents for approval of the Procedures and, prior to consummating any sale or transfer of the De Minimis Assets, the Debtors will have obtained any consent from the DIP Lenders pursuant to the terms of the DIP Credit Agreement. (Motion ¶ 19; Proposed Order ¶ 4.) However, the Debtors *erroneously* state that "all relevant parties, including all known parties with a Lien on the subject assets, will have sufficient notice and the ability to object to the transaction." (*Id.*) As previously discussed, only when sale proceeds exceed $300,000 per transaction will notice be sent to *all* relevant parties, including known lienholders.

The De Minimis Assets may be sold free and clear of Liens if a lienholder receives notice of a sale and fails to object. *See* 11 U.S.C. § 363(f)(2). Under section 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens. *In re Arena Media Networks*, No. 10-10667, 2010 WL 2881346, at *4 (Bankr. S.D.N.Y. Mar. 22, 2010); *Citicorp Homeowners Servs. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988); *see also In re Gabel*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (holding that implied consent is sufficient under § 363(f)(2) to sell property free and clear of liens); 3 COLLIER ON BANKRUPTCY ¶ 363.06[3] (16th ed. rev. 2011).

8

### D. The Proposed Procedures Are Not Sufficient for Protection Under Section 363(m)

The Debtors also request that the Court find that sales of De Minimis Assets shall be deemed arms-length transactions entitled to the protections under section 363(m). (Motion ¶ 20; Proposed Order ¶ 10.) Section 363(m) states that

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

The purpose of section 363(m) is to provide that "a purchaser or lessee of property of the estate is protected from the effects of a reversal or modification on appeal of the authorization to sell or lease as long as the purchaser acted in good faith and the appellant failed to obtain a stay of the sale." 3 COLLIER ON BANKRUPTCY ¶ 363.11. The proponent of good faith carries the burden to show good faith. *Id.* ("The burden of proof to show good faith is on the proponent of good faith, usually the party seeking dismissal of the appeal; it may not be assumed."). In considering whether a sale is in "good faith" under section 363(m), courts may consider whether a potential purchaser is an insider of the debtor. *See In re After Six, Inc.*, 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (purchaser's lack of connections with debtor constituted one factor supporting finding of "good faith"). Generally, a "good faith purchaser" is "one who buys property . . . for value, without knowledge of adverse claims." 3 COLLIER ON BANKRUPTCY ¶ 363.11.

Before any de minimis asset sales have taken place, it is impossible to determine whether the proponent of good faith has satisfied its burden of establishing good faith. Nevertheless, a streamlined procedure that includes a good faith finding by the Court is still possible if, before or immediately after the sale closes, a declaration or other competent evidence, along with a proposed order with a good faith finding, is submitted to the Court on presentment. Assuming the burden of proving good faith is satisfied, a sale under section 363(b), approved free and clear of all liens under section 363(f), may be entitled to the protection provided under section 363(m).[4]

### E. Retention of Professionals

To facilitate the sale process, the Debtors state in a footnote that they may hire brokers, auctioneers or liquidators. (Motion ¶ 9, n.8.) However, in the same footnote, the Debtors indicate that they do not anticipate filing retention applications for these professionals because of the limited value of the De Minimis Assets. (*Id.*) Such sales of assets occur outside the ordinary course of business so professionals conducting these sales are not "ordinary course professionals."

The limited value of the De Minimis Assets does not excuse compliance with sections 327(a) and 328(a). Section 328 permits a debtor-in-possession to hire professionals under section 327. 11 U.S.C. § 328(a). Section 327(a), in turn, permits a debtor-in-possession, with the court's approval, to retain professional persons, including auctioneers. 11 U.S.C. § 327(a).

---

[4] The overwhelming weight of authority concludes that section 363(m) protects a good faith sale from an unstayed appellate challenge, including where the sale is approved free of interests under section 363(f). *See In re Thorpe Insulation Co.*, CV 11-668 DSF, 2011 WL 1378537, at *1 (C.D. Cal. 2011) (concluding that section 363(m) applies to sale under section 363(b) free and clear of interests) (collecting authority and strongly criticizing a contrary result in *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 42 (B.A.P. 9th Cir. 2008)). Here, any sale is being authorized under section 363(b)(1), free and clear of liens under section 363(f).

Applications to retain brokers, auctioneers and liquidators to conduct de minimis asset sales are commonplace; it need not be an expensive or time-consuming process.

### F. Shortened Notice

Bankruptcy Rule 2002(a)(2) requires twenty-one (21) days notice by mail to parties in interest when a debtor proposes to use, sell, or lease estate property other than in the ordinary course of business. FED. R. BANKR. P. 2002(a)(2). The Court may, however, shorten this time period for cause. *Id.* In this case, the Court finds that cause exists to shorten the notice period to five (5) business days. Reducing the notice period will enable the Debtors to capture the benefits of having a streamlined asset sale procedure because they will be able to complete sales against the backdrop of needing to turn over several stores and their Carlisle, Pennsylvania distribution center to the landlords. The reduced notice period still allows sufficient time for any objections to be presented and heard by the Court.

### G. Waiver of Bankruptcy Rule 6004(h)

Bankruptcy Rule 6004(h) provides that '[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). The purpose of this rule is to "provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. A short period of time is often needed and essential to an objecting party intending to appeal because, if the sale is closed in the absence of a stay, any appeal by an objecting party may well be moot." 10 COLLIER ON BANKRUPTCY ¶ 6004.11.

11

The rule permits a court to waive all or part of the 14-day stay. Neither the rule nor the Advisory Committee Note addresses the circumstances in which a court should waive the applicable stay. Collier does, however, provide some helpful guidance. Since the purpose of the rule is to protect the rights of an objecting party, the court should eliminate the 14-day stay period and allow the sale or other transaction to close immediately where there has been no objection to the procedure. *Id.* If an objection has been filed and is overruled, the court should eliminate or reduce the 14-day stay period "upon a showing that there is a sufficient business need to close the transaction within the 14-day period and the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected." *Id.* If the objecting party informs the court that it intends to appeal and seek a stay, the 14-day stay period "should not be reduced to less than an amount of time sufficient to allow the objecting party to seek a stay, unless the court determines that the need to proceed sooner outweighs the objecting party's interests." *Id.* In this case, the Court concludes that the reduced five-day notice period is adequate to protect the interests of all parties in interest.

## CONCLUSION

As explained above, the Court concludes that streamlined procedures for de minimis asset sales should be approved. The relief sought by the Debtors must, however, be modified to assure proper notice of proposed sales. The notice proposed for sales in excess of $300,000 is proper, but on all proposed sales below that dollar threshold, notice of the sales should be filed on ECF, and, in addition, specific notice should be given to the U.S. Trustee, Counsel for the Official Committee of Unsecured Creditors, and any known creditor asserting a lien against the property Debtors propose to sell. If any buyer wishes protection of section 363(m), a declaration or other competent evidence, as well as a proposed order on presentment, must be filed

establishing the requirements of good cause. The Debtors must also file retention applications for any brokers, auctioneers or liquidators they wish to employ to conduct sales outside the ordinary course of business.

Debtors' counsel shall, within seven (7) days, submit to the Court a revised proposed order, acceptable in form to counsel to the Committee and the U.S. Trustee and consistent with this Opinion.

DATED:     May 12, 2011
           New York, New York

                                    /s/Martin Glenn
                                 MARTIN GLENN
                            United States Bankruptcy Judge