David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.*,[1] | **Case No. 11-10614 (MG)** |
| Debtors. | **(Jointly Administered)** |

**NOTICE OF HEARING ON DEBTORS' MOTION FOR ORDER PURSUANT
TO 11 U.S.C. § 1121(d) EXTENDING THEIR EXCLUSIVE PERIODS FOR
FILING AND SOLICITING ACCEPTANCES OF A CHAPTER 11 PLAN**

**PLEASE TAKE NOTICE** that Borders Group, Inc. and its debtor subsidiaries, as

debtors and debtors in possession (collectively, the "Debtors"), filed the attached *Debtors'*

*Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending Their Exclusive Periods for*

*Filing and Soliciting Acceptances of a Chapter 11 Plan* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion shall be held on

**June 2, 2011 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be

heard, before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

Bankruptcy Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be made in writing, shall state with particularity the grounds therefor, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-399 or otherwise **so as to be actually received no later than May 26, 2011 at 4:00 p.m. (prevailing Eastern Time)** by: (i) Kasowitz, Benson, Torres & Friedman LLP, attorneys for the Debtors, 1633 Broadway, New York, New York 10019 (Attn: David M. Friedman, Esq., Andrew K. Glenn, Esq., and Jeffrey R. Gleit, Esq.); (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, New York, New York 10004 (Attn: Tracy Davis, Esq. and Linda Riffkin, Esq.); (iii) Lowenstein Sandler PC, counsel for the official committee of unsecured creditors, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn: Bruce D. Buechler, Esq. and Paul Kizel, Esq.), and 1251 Avenue of the Americas, New York, New York 10020 (Attn: Bruce S. Nathan, Esq.); (iv) counsel for the DIP Agents: (a) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178-0060 (Attn: Wendy Walker, Esq.), and 225 Franklin Street, 16th Floor, Boston, Massachusetts 02110-4104 (Attn: Sandra Vrejan, Esq.), counsel for the Working

Capital Agent, and (b) Choate Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Kevin Simard, Esq.), counsel for GA Capital LLC; (v) Kelley Drye & Warren LLP, attorneys for certain landlords, 101 Park Avenue, New York, New York 10178 (Attn: James S. Carr, Esq., Robert L. LeHane, Esq., and Benjamin D. Feder, Esq.); and (vi) Bingham McCutchen LLP, attorneys for Bank of America, N.A., One Federal Street, Boston, Massachusetts 02110-1726 (Attn: Julia Frost-Davies, Esq. and Andrew Gallo, Esq.).

**PLEASE TAKE FURTHER NOTICE** that the relief requested in the Motion may be granted without a hearing if no objection is timely filed and served as set forth above and in accordance with the order, dated February 16, 2011, implementing certain notice and case management procedures in these cases [Docket No. 64].

Dated: May 19, 2011
      New York, New York

    KASOWITZ, BENSON, TORRES
     & FRIEDMAN LLP

    By: /s/ Andrew K. Glenn
    David M. Friedman (DFriedman@kasowitz.com)
    Andrew K. Glenn (AGlenn@kasowitz.com)
    Jeffrey R. Gleit (JGleit@kasowitz.com)
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800

*Attorneys for Debtors
and Debtors in Possession*

David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Debtors*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **BORDERS GROUP, INC.,** *et al.*,[1] | Case No. 11-10614 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 1121(d)**
**EXTENDING THEIR EXCLUSIVE PERIODS FOR FILING**
**AND SOLICITING ACCEPTANCES OF A CHAPTER 11 PLAN**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Borders Group, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully submit this motion (the "Motion"), pursuant to section 1121(d) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order substantially in the form attached hereto as Exhibit A, extending the Debtors' exclusive periods within which to file and solicit acceptances of a chapter 11 plan. In support of the Motion, the Debtors also submit the *Declaration of Holly Felder Etlin*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

*in Support of the Debtors' Motion for Order Pursuant to 11 U.S.C. § 1121(d) Extending Their Exclusive Periods for Filing and Soliciting Acceptances of a Chapter 11 Plan*, filed contemporaneously herewith (the "Etlin Declaration"). In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

The Debtors have made significant progress in these cases since the Commencement Date. The Court should grant an extension of exclusivity to enable the Debtors to formulate a bankruptcy exit strategy that will maintain the Debtors' business as a going concern, maximize recoveries to creditors and reduce administrative expenses.

The Debtors have worked tirelessly with their professionals and creditor constituencies to consummate a successful restructuring. The building block of any going concern sale or reorganization in these cases is the Debtors' operational restructuring, which already has resulted in significant cost savings and enhancements to the Debtors' profitability. This operational restructuring has included evaluating the Debtors' extensive lease portfolio, closing underperforming stores, negotiating rent concessions to maximize the profitability of their retail footprint, reducing SG&A and rejecting unfavorable contracts. The Debtors' operational restructuring has been incorporated into a long-term business plan that was presented to the Committee on April 6, 2011 and to potential acquirers in a sale process that is still underway.

The Debtors respectfully submit that they have made ample progress in these cases to justify an extension of exclusivity. The Debtors have worked in concert with the Committee to maximize the value of the estates and to ensure that the Debtors have creditor support for their

---

[2] All capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them in the balance of the Motion.

2

initiatives. There have been very few contested matters in these cases as a result of this cooperation. Conversely, terminating exclusivity would be disruptive to these cases with no commensurate benefit. Terminating exclusivity would create the prospect of multiple plans and a potentially contentious confirmation process that would unnecessarily serve to increase administrative expenses and diminish recoveries. Further, if the Debtors are not granted the requested extension of their Exclusive Periods and exclusivity is terminated, they will be in default under their DIP Credit Agreement.

The Debtors believe, as more fully set forth below, that the requested extension of the Exclusive Periods will benefit all parties in interest and allow the Debtors a full and fair opportunity to propose a consensual plan, to the extent possible, and solicit acceptances thereof.

**JURISDICTION**

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**PROCEDURAL BACKGROUND**

2. On February 16, 2011 (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

3. On February 24, 2011, the Office of the United States Trustee appointed the seven (7) member Official Committee of Unsecured Creditors (the "Committee") pursuant to sections

3

1102(a) and (b) of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

**RELIEF REQUESTED**

4. Pursuant to section 1121(d) of the Bankruptcy Code, by this Motion the Debtors seek entry of an order extending the Debtors' Exclusive Periods (as defined below) to file and solicit acceptances of a plan under chapter 11 of the Bankruptcy Code for 120 days, until October 14, 2011, and December 13, 2011, respectively, without prejudice to the Debtors' rights to seek further extensions (or to parties in interest to seek reductions thereof). In this case, the Debtors' exclusive period to file a plan currently expires on June 16, 2011 (the "Exclusive Filing Period"), and the attendant solicitation period expires on August 15, 2011 (the "Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods").

**BASIS FOR RELIEF REQUESTED**

5. The Bankruptcy Code provides a debtor with the exclusive right, for a period of time, to propose a chapter 11 plan and solicit votes thereon. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan. 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that, if the debtor files a plan within the 120-day exclusive period, it has an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan, during which time competing plans may not be filed. 11 U.S.C. § 1121(c)(3).

6. Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusive periods upon a demonstration of cause, subject to certain limitations. Specifically, section 1121(d) of the Bankruptcy Code provides as follows:

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause . . . increase the 120-day period or the 180-day period referred to in this section.
>
> (2) (A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

7. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231, 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interest by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

8. Case law indicates that the flexibility of section 1121 of the Bankruptcy Code is intended to give the debtor an adequate opportunity to negotiate an effective plan with its creditors. *See Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (Bankr. W.D. Tenn. 1987) (noting that section 1121 is designed to give the debtor time to reach an agreement with its creditors regarding a plan). The decision to extend a debtor's exclusive periods is committed to the sound discretion of the court and should be based upon the facts and circumstances of a particular case. *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006)

5

("*Adelphia*") (stating that it is within the discretion of the court whether to extend or terminate exclusivity for cause).

9. Bankruptcy courts examine a number of factors in determining whether a debtor has had an adequate opportunity to develop, negotiate and propose a chapter 11 plan and thus whether there is "cause" for extension of the debtor's exclusive periods under section 1121(d). In making this determination, courts typically rely on nine (9) enumerated factors:

> (a) the size and complexity of the case;
>
> (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
>
> (c) the existence of good faith progress toward reorganization;
>
> (d) the fact that the debtor is paying its bills as they become due;
>
> (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (f) whether the debtor has made progress in negotiations with its creditors;
>
> (g) the amount of time which has elapsed in the case;
>
> (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (i) whether an unresolved contingency exists.

*See id.*

10. Not all factors are relevant to every case, and courts have used a subset of the above-listed factors to determine whether cause exists. *See*, *e.g.*, *In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying four of the nine above-quoted factors, among others, as relevant in determining whether "cause" exists to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (using four of the nine above-quoted factors to determine that the bondholders' committee failed to show "cause" to terminate the debtors'

exclusivity period); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed "cause" to extend exclusivity period based upon three of the nine above-quoted factors).

11. Here, all of the above-quoted factors weigh heavily in favor of granting an extension of the Exclusive Periods.

A. **The Debtors' Chapter 11 Cases are Sufficiently Large and Complex.**

12. One of the most common grounds justifying an extension of a debtor's exclusive periods is the size and complexity of the debtor's chapter 11 case. *See*, *e.g.*, *Express One Int'l*, 194 B.R. at 100; *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) (sheer size of case constituted "cause" to extend exclusivity); *In re Manville Forest Prods. Corp.*, 31 B.R. 991, 995 (S.D.N.Y. 1983) ("[T]he sheer mass, weight, volume and complications of the Manville filings undoubtedly justify a shakedown period"). Indeed, Congress expressly recognized that courts would need to extend the exclusive periods if a debtor's case is unusually large or complex. *See* H.R. Rep. No. 95-595, at 231, 232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement"). Moreover, courts have found justification for extending the exclusive periods in cases that have not even approached the size or complexity of the Debtors' cases. *See*, *e.g.*, *United Press Int'l*, 60 B.R. at 270 (court granted $40 million company extension of exclusive periods based on size and complexity of case, noting that "[i]n many much smaller cases, involving far less complications, two or three years go by before the debtor is in a position to file a plan"); *Gaines v. Perkins (In re Perkins)*, 71 B.R. at 296 (in affirming the bankruptcy court's extension of the debtor's exclusive periods, the district court stated that "[t]he Chapter 11 bankruptcy proceeding

spawning this appeal is large and complex . . . . The claims amount to roughly $10,000,000.00; the estate is valued at approximately $13,000,000.00, composed mainly of improved and unimproved real property").

13.  The Debtors' chapter 11 cases undeniably are large and complex. The Debtors are a nationwide retailer and a leading operator of book, music and movie superstores and mall-based bookstores. On the Commencement Date, the Debtors operated 642 stores under the Borders, Waldenbooks, Borders Express and Borders Outlet names (as well as Borders-branded airport stores) with 639 of these stores located throughout forty-eight (48) states and the District of Columbia, and three (3) located in Puerto Rico. As of May 19, 2011, the Debtors operate 405 stores. In addition, the Debtors operate a proprietary e-commerce web site, www.Borders.com, launched in May 2008, which includes both in-store and online e-commerce components. For the fiscal year ended January 29, 2011, the Debtors recorded net sales of approximately $2.3 billion. The Debtors' Schedules list $1,649,799,850 of assets and $2,626,757,691 of liabilities. *See* Debtors' Schedules [Docket Nos. 491, 493, 495, 497, 499, 501, 503, 505, each at 2]. Etlin Decl. ¶ 4.

14.  The Debtors currently employ approximately 3,792 full-time employees and approximately 7,244 part-time employees, located throughout the United States and Puerto Rico. Since the Commencement Date, the Debtors' employees -- in particular, their management, corporate administrative employees and in-house counsel -- have devoted significant time and resources, in addition to diligently attending to their prepetition day-to-day obligations, to navigating the Debtors' business in the purview of chapter 11. This has included, among other things, responding to a litany of inquiries raised by landlords, subtenants, vendors, employees, taxing authorities, utility companies and other parties in interest in these cases. *Id.* ¶ 5.

15. Further, the Debtors are working with their retained professionals, including the Deloitte entities, to establish post-petition accounting practices and file required forms with the Securities and Exchange Commission. The Debtors, with the assistance of their professionals, have recently filed their Schedules and Statements of Financial Affairs [Docket Nos. 491-506] and their first monthly operating report [Docket No. 752]. The Debtors have also closed approximately 237 stores since the Commencement Date, and are working with their real estate consultants, DJM Realty Services, LLC, to negotiate lease modifications, including rent concessions, for the remaining stores. *Id.* ¶ 6.

16. In addition to managing their business, the Debtors have expended significant effort on various matters before the Court. The Debtors have filed and received Court orders approving numerous first-day motions to ensure the Debtors' business operations continue smoothly during these cases. For example, the Debtors secured Court approval of $505 million in post-petition financing and an auction for the right to conduct store closing sales at 226 of the Debtors' locations.[3] The Debtors have also obtained Court orders extending their statutory deadline to assume or reject unexpired leases, approving lease rejection procedures and approving procedures for entering into lease modification agreements with their landlords.[4] Furthermore, the Debtors have successfully negotiated consensual key employee incentive and

---

[3] *See Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying Automatic Stay*, dated March 16, 2011 [Docket No. 404]; *see Order Approving Agency Agreement, Store Closing Sales and Related Relief*, dated February 18, 2011 [Docket No. 91] and *Notice of (A) Designation of Final Put Option Store List and (B) Filing of Agency Agreement for Store Closing Sales at Put Option Stores*, dated March 25, 2011 [Docket No. 473] (collectively, the "GOB Order").

[4] *See Order Granting Motion (I) Extending the Time Within Which the Debtors Must Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Authorizing the Debtors to Enter Into Stipulations Further Extending the Time to Assume or Reject Unexpired Leases of Nonresidential Real Property*, dated March 15, 2011 [Docket No. 383]; *Order Granting Motion Establishing and Authorizing Procedures for the Rejection of Unexpired Leases of Nonresidential Real Property*, dated March 16, 2011 [Docket No. 399] (the "Lease Rejection Procedures Order"); *Order Authorizing The Debtors To Modify Lease Terms With Landlords*, dated April 14, 2011 [Docket No. 619] (the "Lease Modifications Order").

retention plans (the "KEIP" and "KERP", respectively) aimed at incentivizing and retaining employees that are vital to the Debtors' restructuring and to day-to-day execution of their business operations, which the Court approved just two months into these cases.[5] All of the these actions have been for the benefit of the Debtors' estates and will help the Debtors either propose a viable chapter 11 plan or conduct a successful sale with the proceeds to be distributed pursuant to a chapter 11 plan.

17. The Debtors believe that their cases are large and complex by any standard, and that this factor alone warrants the requested extension of the Exclusive Periods.

B. **The Debtors Need Additional Time to Formulate and Effectuate a Successful Restructuring.**

18. The Debtors request an extension to allow for sufficient time to develop and negotiate a plan and to prepare adequate information to allow creditors to determine whether to accept such a plan. Since the Commencement Date, the Debtors have been satisfying the requirements for operating in chapter 11, such as: (i) negotiating debtor-in-possession financing; (ii) preparing and filing their Schedules and Statements of Financial Affairs; (iii) obtaining a June 1, 2011 general bar date (the "Bar Date"); (iv) preparing and filing various retention applications and case administration motions, such as motions establishing procedures for rejecting unexpired leases, compensation of professionals, and retention of ordinary course professionals; and (v) preparing and filing their monthly operating report and keeping current with their administrative fees.

---

[5] *See Order Pursuant to Sections 363(b), 365(a) and 503(c) of the Bankruptcy Code and Fed. R. Bankr. P. 6006 and 9014 Authorizing (I) the Implementation of (A) Key Employee Incentive Plan and (B) Key Employee Retention Plan, and (II) the Assumption of Certain Employment Agreements*, dated April 22, 2011 [Docket No. 697]; *Memorandum Opinion Granting the Debtors' Motion for Authorization to Implement an Employee Incentive Program and Employee Retention Program*, dated April 27, 2011 [Docket No. 721].

19.    Moreover, the Debtors have been reviewing over a thousand executory contracts and unexpired leases.  As of the Commencement Date, the Debtors were parties to approximately 1,493 contracts.  Of these contracts, approximately 684 were non-residential real property leases.  The Debtors are in the process of assessing their leases and, based upon their analysis, taking one of two courses of action.  The Debtors may decide to reject a lease associated with an underperforming store pursuant to the Lease Rejection Procedures Order, thereby maximizing the profitability of their store footprint.  To date, the Debtors have rejected approximately 240 leases pursuant to these procedures.  Or, the Debtors may negotiate lease modification agreements with their landlords pursuant to the Lease Modifications Order.  Moreover, the Court-approved KEIP incentivizes the Debtors' management to achieve rent reductions as a result of real estate lease amendments, and/or cost reductions associated with contract rejection or renegotiation, by May 31 and June 30, 2011, respectively, which deadlines will not both have passed by the expiration of the Exclusive Filing Period.  Etlin Decl. ¶ 7.

20.    The Debtors have recently obtained the June 1, 2011 Bar Date.  Until the Bar Date has passed and the Debtors have made progress reconciling claims, and the other contingencies described herein are resolved or advanced, a reasonable plan simply cannot be formulated, because these events will all play integral parts with respect to finalizing the Debtors' plan.  Further, the Debtors need additional time to continue negotiations with their publishers and other creditors for the terms of a viable plan.

**C.    The Debtors Have Made Good Faith Progress Towards a Reorganization, Have Demonstrated Reasonable Prospects for Filing a Viable Plan and Have Made Progress in Negotiations With Their Creditors.**

21.    Since the Commencement Date, the Debtors have been working cooperatively with their publishers, landlords, vendors and other creditors towards an operational restructuring

and ensuring that the Debtors' business remains a viable enterprise. On April 6, 2011, the Debtors presented their business plan to the Committee in a private meeting with the Debtors, the Committee and their respective professionals. Based on feedback from the Committee, the Debtors continue to refine and finalize their business plan and respond to Committee inquiries with respect to the plan. Further, and as set forth above, the Debtors have obtained the Lease Modifications Order and continue to negotiate lease modification agreements with their landlords. In addition to negotiations with their landlords, the Debtors are also in the process of negotiating trade terms with their publishers, and have reached agreements with many of their smaller publishers already, despite these cases being just three months old. *Id.* ¶ 8.

22. The Debtors continue to fine-tune their business plan and solicit Committee feedback, and to negotiate lease modifications with their landlords and trade terms with their vendors. Because processes are still unfolding which will be key to any plan of reorganization, the Debtors require more time to work with their creditor constituencies in order to arrive at a plan that will, as proposed, to the fullest extent possible, have the support of all major constituencies in these cases.

23. Finally, the Debtors have embarked on a dual-path sale process to market their business to buyers as a going concern. This process is ongoing and has produced promising offers that the Debtors and their advisors are diligently pursuing. *Id.* ¶ 9.

D. **The Debtors are Current on Their Administrative Obligations.**

24. The Debtors are current on their administrative obligations and continue to pay their bills as they come due. *Id.* ¶ 10. Since the Commencement Date, the Debtors have taken significant steps towards a successful restructuring of their business. The Debtors' post-petition financing, prudent business decisions and effective cash management have ensured that the

Debtors have sufficient resources to meet their post-petition payment obligations and that the Debtors are preserving the value of their assets for the benefit of all creditors.

### E. Only Three Months Have Elapsed Since Commencement of These Cases.

25. The Debtors filed for bankruptcy just three (3) months ago, on February 16, 2011, whereas the Bankruptcy Code contemplates extensions of the Exclusive Filing Period and Solicitation Period of eighteen (18) months and twenty (20) months from the Commencement Date, respectively. This is the first extension of the Exclusive Periods sought by the Debtors.

### F. The Debtors are Using Exclusivity for a Proper Purpose.

26. In the context of a debtor's request for extension of the exclusive periods, courts undertake an assessment of whether a debtor's motives for requesting an extension of the Exclusive Periods are proper. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). The Debtors have conducted their affairs in a manner consistent with their fiduciary obligations and have demonstrated good faith in their efforts throughout the course of these cases. The Debtors have made every effort to work with their creditors -- including the Committee and individual landlords, publishers and other vendors -- towards a successful and consensual restructuring, ensuring that such constituencies are involved in the process. Granting an extension of the Exclusive Periods will not give the Debtors unfair leverage over creditor constituencies. On the contrary, such an extension will, in fact, afford the Debtors an opportunity to consider all relevant information and make informed decisions in drafting a plan that will maximize the recovery to all creditors.

### G. Numerous Unresolved Contingencies Mitigate in Favor of an Extension of the Exclusive Periods.

27. Despite the Debtors' progress to date, several important unresolved contingencies still exist. The Debtors are still reviewing unexpired leases and determining which should be rejected pursuant to the Lease Rejection Procedures Order. Further, the Debtors are still in the process of negotiating lease modifications with their landlords for their remaining stores. The determination of which stores will remain open and the negotiation of lease modifications for these stores will play key roles in the profitability of the Debtors' retail presence and long-term viability. Further, the Debtors are in the process of negotiating post-petition trade terms with their publishers, the success of which will greatly affect the Debtors' emergence from chapter 11 or a successful sale of the Debtors' business. *Id.* ¶¶ 7-8.

28. Furthermore, as set forth above, the Debtors have obtained a June 1, 2011 Bar Date in these cases. Until the Bar Date has passed, and the Debtors have made further progress in the claims reconciliation process, the Debtors believe that filing a plan would be premature. Finally, the outcome of the Debtors' ongoing sale process could have a significant effect on creditor recoveries and the fate of the Debtors' business.

29. Because all of these contingencies could have a significant impact on the outcome of these cases, exclusivity should be extended.

### H. Terminating the Exclusive Periods Would be Disruptive.

30. The Debtors' sole purpose in seeking the instant request is to permit them time to draft, confirm and consummate a chapter 11 plan which maximizes returns to creditors. The Debtors believe that at this time, the filing of plans by third parties, or even the mere threat of such a filing, would serve no purpose other than to introduce delay and additional administrative

14

expenses to these cases. Moreover, it is highly unlikely that any party in the Debtors' cases could propose a viable, fully-informed plan prior to the resolution of the contingencies described herein, and thus, the proposal of any such plan at this time would be premature and disruptive to the plan proposal and confirmation process, without any commensurate benefits.

31. Terminating the Debtors' Exclusive Periods will result in a default of the Debtors' *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* (the "<u>DIP Credit Agreement</u>") [Docket No. 27, Exhibit B]. Etlin Decl. ¶ 11. Section 7.1(m)(8) of the DIP Credit Agreement states that an Event of Default includes "the entry of any order terminating any Credit Party's exclusive right to file a plan of reorganization, or . . . the expiration of any Credit Party's exclusive right to file a plan of reorganization." Therefore, denying the requested limited extension of the Debtors' Exclusive Periods would be highly disruptive to these cases and detrimental to the Debtors' reorganization efforts.

\* \* \* \*

32. Application of the *Adelphia* factors set forth above to the facts in the Debtors' chapter 11 cases clearly demonstrates that sufficient "cause" exists to grant the extension of the Exclusive Periods requested herein. Such an extension will allow the Debtors a fair opportunity to resolve the aforementioned unresolved contingencies, continue negotiations with their creditor constituencies and, ultimately, propose a consensual plan, to the extent possible, and solicit acceptances thereto, without the disruptive threat of competing plans or a potential default of the DIP Credit Agreement. The Debtors have made significant progress in the administration of these cases since the Commencement Date. The Exclusive Periods should be extended as requested herein to allow the Debtors to complete their reorganization as contemplated by chapter 11 of the Bankruptcy Code.

## NOTICE

33. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been given in accordance with this Court's order, dated February 16, 2011, implementing certain notice and case management procedures [Docket No. 64]. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided

## NO PRIOR REQUEST

34. No prior request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: May 19, 2011
 New York, New York

                            KASOWITZ, BENSON, TORRES
                              &FRIEDMAN LLP

                            By: /s/ Andrew K. Glenn
                            David M. Friedman (DFriedman@kasowitz.com)
                            Andrew K. Glenn (AGlenn@kasowitz.com)
                            Jeffrey R. Gleit (JGleit@kasowitz.com)
                            1633 Broadway
                            New York, New York 10019
                            Telephone: (212) 506-1700
                            Facsimile: (212) 506-1800

                            *Attorneys for Debtors*
                            *and Debtors in Possession*