Bruce S. Nathan, Esq.
Bruce Buechler, Esq.
Paul Kizel, Esq.
**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 262-6700
Fax: (212) 262-7402
-- and --
65 Livingston Avenue
Roseland, NJ 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **BORDERS GROUP, INC.,** *et al.*,[1] | Case No. 11-10614 (MG) |
| Debtors. | Jointly Administered |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING THEIR EXCLUSIVE PERIODS FOR FILING AND SOLICITING ACCEPTANCES OF A CHAPTER 11 PLAN**

The Official Committee of Unsecured Creditors (the "Committee") of Borders Group, Inc., *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, submits this objection (the "Objection") to the Debtors' motion for an order pursuant to 11 U.S.C. §1121(d) extending their exclusive periods for filing and soliciting acceptances of a chapter 11 plan (the "Motion"). In support of this Objection, the Committee respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

## PRELIMINARY STATEMENT

1.      The Debtors have failed to establish "cause" to justify the relief requested in the Motion.  Since the commencement of these Chapter 11 cases, the Debtors have purportedly pursued a "dual track" approach by which they have attempted to simultaneously (i) solicit bids from potential financial and/or strategic buyers; and (ii) develop and eventually propose a Chapter 11 plan of reorganization.  The Debtors have reported losses at an alarming rate--the Debtors' monthly operating reports for the period from the Petition Date (defined below) to April 30, 2011, a mere 2.5 months, shows in excess of a $180 million loss.  *See* Docket Nos. 752 and 883.  However, to date, the Debtors have neither a stalking horse bidder nor a draft Chapter 11 plan.

2.      The Committee is gravely concerned that granting the Debtors an additional 120 day extension of their exclusivity periods could be detrimental to the interests of the Debtors' general unsecured creditors.  In order to protect the Debtors' estates and save the time and expense that would be required if the Committee needed to terminate exclusivity, the Committee does not oppose extending the Debtors' exclusive periods to file and solicit a plan as long as any order approving such extensions does not apply to the Committee, and would allow the Committee to file and solicit a plan at any time.  While the Committee has no current intention to file a plan and disclosure statement, these cases are at a very fluid and critical point in time.  One way or another, one or more sale(s) or a consensual plan will have to occur or be prepared in the next 30-60 days.  If the Debtors were to file a plan at this time, it would most likely be without Committee support.

3.      The Committee seeks by this Objection to provide itself (on behalf of all unsecured creditors) with maximum flexibility to file an alternative plan if the Debtors filed a plan without Committee support.  If the Committee is not carved out from the relief sought by the Debtors in the Motion, it will take the Committee even more time to be in a position to prepare and file a plan because the Committee will first need to terminate exclusivity.

4.     Alternatively, the Committee submits that the Court should deny the Debtors' Motion for the reasons set forth herein if the Committee's "middle ground" proposal is rejected.[2]

## JURISDICTION

5.     The Court has jurisdiction to consider the Motion and this Objection under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6.     On February 16, 2011 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

7.     The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

8.     No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

9.     On February 24, 2011, the Office of the United States Trustee appointed the Committee pursuant to 11 U.S.C. § 1102.  *See* Doc. No. 156.

## OBJECTION

**I.     The Court May Exclude The Committee From An Extension Of The Debtors' Exclusive Periods.**

10.     This Court may grant the Motion to extend the Debtors' Exclusive Periods, but provide in the order that such extension does not apply to the Committee.  While such relief may not be common, there is precedent in this District allowing for specific exclusions to a debtor's extension of its exclusive periods.  In *In re Young Broadcasting Inc., et al.*, Case No. 09-10645 (AJG) (Bankr. S.D.N.Y. August 12, 2009), the court approved an order granting the debtors' motion to further extend their exclusive periods to file and solicit a Chapter 11 plan, but expressly lifted such exclusivity solely with respect to the creditors' committee as part of a resolution of the creditors' committee's objection to the motion seeking an extension of

---

[2]     The Debtors rejected the Committee's proposal prior to the filing of this Objection.

exclusivity (the "**Young Extension Order**").  A copy of the *Young* Extension Order is attached hereto as **Exhibit A**.

11.     In *Young Broadcasting,* the creditors' committee had drafted a plan and solicited certain investors willing to infuse cash to fund the proposed plan.  After negotiations, the debtors agreed to include a specific exclusion in the order approving their motion to extend exclusivity, which would allow the committee to file and solicit its plan.   While the Committee acknowledges that there are factual differences between these cases and *Young Broadcasting*, such differences do not diminish the fact that the relief sought herein is not unique in this District.  Further, from a practical perspective, extending the Debtors' exclusive periods while simultaneously excluding the Committee from such exclusivity will have the same net result as granting a motion to terminate exclusivity.

12.     Section 1121 of the Bankruptcy Code establishes the time periods within which a debtor has the exclusive right to file a plan of reorganization and solicit acceptances to such plan. *See* 11 U.S.C. § 1121(b), (c).  Sections 1121(b) and (c) provide that, beginning on the date of filing of a Chapter 11 case, a debtor has an exclusive 120-day period to propose a plan and a 180-day period to solicit acceptances of such plan.  *See* 11 U.S.C. § 1121(b), (c).  During these "exclusive" periods, no other entities may file and/or solicit acceptances of a Chapter 11 plan. *Id.*  Section 1121(d) permits the Court "for cause [to] reduce or increase the 120-day period or the 180-day period referred to in this section."  11 U.S.C. § 1121(d).  The exclusivity period can be terminated at any point in time for cause, even during a debtor's initial 120-day exclusivity period.  *Id.*

13.     Here, the Debtors have requested 120-day extensions of the statutory exclusivity periods provided by Bankruptcy Code §§ 1121(b) and (c).  The Committee does not believe that the Debtors have established cause for the requested extensions.  Further, the Committee is concerned that granting the Debtors an additional four months of untethered exclusivity will (i) create opportunities for the Debtors to pursue strategies inconsistent with their current mandate and working agreement with the Committee to go forward with a sales process; (ii) handcuff the

Committee; and (iii) ultimately prove harmful and expensive to the estates if the Debtors were to file a plan of reorganization without Committee approval. However, this issue is easily resolved by the Committee's request to be carved out from the relief sought in the Motion.

14.     The Committee is cognizant of the provisions set forth in § 1121(d) and related case law that establish procedures for reducing or terminating exclusivity after notice and a hearing. However, the Committee submits that allowing it an exclusion from exclusivity via the order granting a requested extension to the exclusive periods as suggested herein is more cost-effective and timely than having the Committee rush into court at a future date seeking to terminate exclusivity, yet will have the same legal effect. The Bankruptcy Code allows the Court to terminate exclusivity, which is no different from excluding the Committee from the exclusivity extension requested in the Motion.

15.     From a practical perspective, extending the Debtors' exclusivity periods while simultaneously excluding the Committee from such an extension will have the same net result as granting a motion to terminate exclusivity, but limited only as to the Committee. All other creditors and parties in interest would be bound by the extension of exclusivity and, for cause shown, could seek, at a later date, to terminate exclusivity if they so desired. Additionally, this approach has been previously utilized in this District to allow a creditors' committee (but no other party) to file a plan during a debtor's extended exclusivity periods. Accordingly, the Committee respectfully requests that the Court grant the Motion only on condition that the associated order expressly does not apply to the Committee.

**II.   In The Alternative, The Debtors Have Not Established Cause For Extending The Exclusivity Periods And, Therefore, The Motion Should Be Denied.**

16.   Contrary to the assertions made in the Motion, the Debtors have failed to establish cause for extending their exclusivity periods.   Thus, in the alternative, the Debtors' Motion should be denied.

17.   The party requesting an extension of the exclusivity periods bears the burden of demonstrating sufficient "cause" exists to justify such relief.   *See In re General Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (denying extension of exclusivity because debtor failed to establish "cause" for such extension); *In re Curry Corp.*, 148 B.R. 754 (Bankr. S.D.N.Y. 1992) ("[t]he debtor must make a clear showing of 'cause' to support an extension of the exclusivity period"); *In re Mid- State Raceway, Inc.*, 323 B.R. 63, 67-68 (Bankr. N.D.N.Y. 2005) ("[i]t is the Debtors that have the burden of establishing the requisite cause for any extension").   Moreover, courts should "not routinely extend the exclusivity period absent a showing of 'cause' when creditors object to such requests for extensions." *Curry*, 148 B.R. at 756.

18.   Although the Bankruptcy Code does not define "cause" for extending exclusivity, the legislative history and case law make it clear that "cause" is a flexible standard designed to balance the competing interests of a debtor and its creditors.   *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Associates, Ltd.)*, 808 F.2d 363, 372 n.15 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988) (*quoting* H.R. Rep. No. 595, 95th Cong., 2d Sess. 174, 231-232 (1978)); *Mid-State Raceway*, 323 B.R. at 68 (denying extension of exclusivity and stating "the court is mindful that whether or not to grant an extension of exclusivity pursuant to Code § 1121(d) is a matter of discretion based on all the facts and circumstances").

19.   In support of their Motion, the Debtors cite to a non-exclusive list of nine frequently considered factors in constructing their argument that "cause" exists.   *See In re*

*Adelphia Communications Corp.*, 352 B.R. 578, 586-87 (Bankr. S.D.N.Y. 2006). *See* Motion at ¶ 9. While these factors provide a general guideline for a court's consideration, not all of these factors are relevant in every case and the weight to be afforded to each is dependent on the facts and circumstances of each case. *See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (8th Cir. B.A.P. 2003) ("[t]hese are only factors, not all of which are relevant in every case. . . [i]t is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each").

20.     The Committee submits, under the unique facts of these cases, where the Debtors losses are admittedly accumulating on a daily basis without any end in sight, that the Debtors have not met their burden of establishing cause for an extension of their exclusivity periods. The balance of the competing interests of the Debtors and their creditors weighs in favor of denying the extensions requested in the Motion.

**A.     Although Large, These Cases Are Not Overly Complex.**

21.     While these cases are admittedly large, the Debtors have not, and cannot, establish that they are overly complex. Unlike most cases of this size, there are no pre-petition secured lenders involved because all pre-petition debt was satisfied in connection with the DIP financing. As the lien challenge period set forth in the Final DIP Financing Order has expired, there are no outstanding issues with the former pre-petition lenders. Additionally, there are no bond holders involved, only the DIP Lenders and unsecured creditors (which consist primarily of trade vendors and landlords). Further, the Debtors have retained a veritable army of attorneys, accountants, consultants, investment bankers, engineers and other professionals to assist them with day-to-day operations and bankruptcy-related obligations. For example, the myriad real estate issues that have arisen in connection with the Debtors' store leases have been handled primarily by the Debtors' retained real estate consultants DJM and the Debtors' in-house real estate department. The approximately 225 GOB sales the Debtors staged and conducted were exclusively handled by the retained professional liquidators pursuant to the Agency Agreement

requiring no additional time and effort of anyone else on the Debtors' management team. In addition, although the Debtors still have over 10,000 full- and part-time employees (*see* Motion at ¶ 14) they have no legacy pension issues or labor union issues to complicate these cases. Finally, although still large, the overall size of the Debtors' chain has decreased dramatically from 642 stores on the Petition Date to 405 stores on the date the Motion was filed.

**B.      The Debtors Have Shown No Necessity For Additional Time Because A Plan Of Reorganization Is Very Unlikely Under These Circumstances.**

22.      Within the next 30-60 days, the Debtors' assets will likely be sold to one or more buyers. The Committee believes there is value to be derived from the Debtors' assets and that the most likely vehicle for such an asset disposition is a § 363 asset sale and not a plan of reorganization. The Debtors should not be allowed to control the plan process by their ability to file their own plan through extended exclusivity because, to date, they have not shared any plan with the Committee. Any plan prepared by the Debtors should be put forward in concert with the Committee. Therefore, the Debtors should not be granted an extension of exclusivity.

**C.      The Debtors Have Failed To Make Good Faith Progress Towards A Reorganization, Demonstrate Reasonable Prospects For Filing A Viable Plan, or Make Progress In Negotiations With Creditors.**

23.      The Debtors' bankruptcy counsel's April 2011 fee statement discloses approximately $58,000 in time entries incurred in connection with drafting and revising a plan and disclosure statement, and conversations with the Debtors' management and significant shareholders about such a plan. *See* Docket No. 894. The Committee has no knowledge at this time how much additional time has been spent by the Debtors' counsel in May on the plan and disclosure statement. After noticing these time entries in such a significant aggregate amount, the Committee requested a copy of the plan, assuming that it would be only a preliminary draft, in order to better understand the Debtors' intended exit strategy. The answer to this request from the Debtors was a flat out "no." Such lack of cooperation hardly qualifies as "good faith progress" under any definition.

24.     Since the filing of these Chapter 11 cases, the Debtors have purported to pursue a "dual-track" approach of soliciting potential purchasers of the Debtors' assets while simultaneously developing a Chapter 11 plan.  However, in the approximately 2.5 months since the Petition Date, the Debtors have lost in excess of $180 million (with further significant losses expected) and have neither a stalking horse bidder nor a proposed Chapter 11 plan to show for their efforts.  Thus, the Debtors have demonstrated no reasonable prospects towards filing a viable Chapter 11 plan of reorganization.  While the Debtors have cooperated with the Committee with respect to the sale process, they have not engaged in any negotiations with the Committee regarding a plan.  This overall lack of good-faith progress and cooperation towards a plan that the Debtors have started drafting and which they have discussed with the Debtors' primary shareholder (as evidenced by the Debtors' counsel's April fee request) militates against extending the Debtors' exclusivity periods.

25.     The Committee understands that these cases are relatively large and only four months old.  However, in the context of the relevant facts and circumstances, significant and recurring losses and the absolute necessity of a sale or sales within the next 30 – 60 days, an extension of exclusivity is not justified.

## RESERVATION OF RIGHTS

26.     The Committee reserves the right to raise further and other objections to the Motion prior to or at the hearing thereon in the event the Committee's objections raised herein are not resolved prior to the hearing.

**WHEREFORE**, the Committee respectfully requests that the Court (i) modify and condition the Debtors' proposed extensions on expressly excluding the Committee from

exclusivity, or, in the alternative, deny the Motion, and (ii) grant the Committee such other and further relief as the Court deems just and appropriate.

Dated:  May 26, 2011

LOWENSTEIN SANDLER PC

By:  /s/ *Bruce Buechler*
Bruce S. Nathan, Esq.
Bruce Buechler, Esq.
Paul Kizel, Esq.

**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 262-6700
Fax: (212) 262-7402

-- and –

65 Livingston Avenue
Roseland, NJ 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Official Committee*
*of Unsecured Creditors*