David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.*,[1] | **Case No. 11-10614 (MG)** |
| **Debtors.** | **(Jointly Administered)** |

**BID PROCEDURES FOR SALE OF ALL**
**OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

On July __, 2011, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered that certain order (the "Sale Procedures Order"), which granted the *Debtors' Motion for Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and the Assumption and Assignment of Executory Contracts and Unexpired Leases Related Thereto, (II) Approving the Sale Procedures and Break-Up Fee, and (III) Granting Related Relief* (the "Sale Motion") and authorized the Debtors to follow

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

certain procedures governing the sale of the above captioned debtors and debtors-in-possession's

(collectively, the "Debtors") business and substantially all of their assets in accordance with the

procedures provided herein.

## I.    FORMS OF SALES

Pursuant to these Bid Procedures, the Debtors are soliciting bids for the purchase of

substantially all of their assets under the terms and conditions set forth in the Sale Motion and as

set forth herein.

The Debtors will consider the following types of bids: (i) the purchase, in one or a series

of related transactions, of all or a substantial portion of the Debtors' business as a going concern

(which may include a liquidation of a portion of the Debtors' assets) (a "GC Sale"), (ii) the

purchase to liquidate, in one or a series of related transactions, substantially all or any portion of

the Debtors' assets not subject to a GC Sale, including, but not limited to, inventory, furniture,

fixtures and equipment, intellectual property, leases, executory contracts and substantially all

other assets (a "Remainder Chain Liquidation") and (iii) the purchase to liquidate, in one or a

series of related transactions, substantially all of the Debtors' assets, including, inventory,

furniture, fixtures and equipment, executory contracts and substantially all other assets (a "Full

Chain Liquidation"), excluding intellectual property, leases and other assets of the Debtors not

included in the Agency Agreement (as amended).  A Bidder may submit one or more of the

foregoing types of bids, or if applicable, a combination of the foregoing.[2]

In the event there is no GC Sale, the Debtors will be filing a motion to conduct a separate

sale process(es) for all assets that are excluded from the Agency Agreement, including, but not

limited to, intellectual property, leases, notes and receivables.

---

[2]        To the extent permitted under the Second Amendment and Waiver to DIP Credit Agreement, the Debtors reserve their right to exclude their intellectual property and interests in leases in or from a sale transaction other than as agreed to in the Purchase Agreement.

The sale shall be pursuant to the terms and conditions of that certain Agency Agreement dated June 30, 2011 (as amended on July 13, 2011), and/or that certain Asset Purchase Agreement dated June 30, 2011, as applicable, each as may be modified pursuant to these Bid Procedures, the forms of which will be subject to approval by the Bankruptcy Court at the Sale Hearing, subject to higher and better bids to be submitted by a Qualified Bidder under the terms of these Bid Procedures.

## II. BID PROCEDURES

**A.  Notice of Sale.**

The Debtors will provide notice of the proposed sale to the Liquidating Agent,[3] and the Bid Procedures, the Sale Objection Deadline and the date and time of the Sale Hearing to all parties in interest, every party that has previously expressed any interest in the potential purchase or liquidation of the Debtors' business, and any other party that the Debtors believe might be interested in a possible purchase or liquidation of some or all of the Debtors' business.

**B.  Diligence Room.**

The Debtors have made and will continue to make available until the conclusion of the Auction information concerning the Debtors' business and assets to all prospective Bidders for a GC Sale, Full Chain Liquidation and/or Remainder Chain Liquidation that execute a confidentiality agreement acceptable to the Debtors in their sole and absolute discretion; provided, however, that the Debtors reserve the right to deny access to any Bidder if the Debtors determine, in their sole and absolute discretion, that such denial is necessary to protect the Debtors' trade secrets, including with respect to the Debtors' competitors, or if the prospective Bidder does not provide a reasonable showing that it has the ability to consummate a sale.

---

[3]      Any capitalized term not defined shall have the definitions as set forth below, or, if not defined below, shall have the same definitions as provided in the Sale Motion.

By submitting a Bid, each Bidder shall be deemed to acknowledge and represent that it has had a reasonable opportunity to conduct due diligence on the Debtors' business and assets before submitting its Bid, that in making its Bid, it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Debtors' assets in making its Bid, and that in making its Bid, it did not rely upon any written or oral statement, representation, promise, warranty or guaranty whatsoever, whether express or implied, by operation of law, or otherwise, regarding the Debtors, or the completeness of any information provided in connection therewith.

**C.      Qualified Bidder.**

A "Qualified Bidder" is a Bidder on the Debtors' assets that provides the following on or before the Bid Deadline, together with the items set forth in Section G:

(i)      An executed confidentiality agreement acceptable to the Debtors;

(ii)      Current audited financial statements or such other form of financial disclosure acceptable to the Debtors demonstrating the ability to close the proposed transaction;

(iii)      A bid summary describing the purchase price and structure of the Bid and sufficient evidence regarding the Bidder's ability to obtain financing for the proposed transaction; and

(iv)      A complete Bid fulfilling all the requirements set forth in these Bid Procedures including the requisite deposit as defined herein.

The Debtors will notify each Bidder whether it is a Qualified Bidder promptly upon receipt of the information listed above.

**D.    Purchase Price and Consideration of Bids.**

All Bids submitted by a bidder (each, a "<u>Bidder</u>") must state the total proposed purchase price (the "<u>Purchase Price</u>"), in U.S. dollars for a GC Sale, including any cash to be paid and any liabilities to be assumed, or the amount of the Guaranty Percentage (as defined in the Agency Agreement) for a Full Chain Liquidation or a Remainder Chain Liquidation, and, in each case, must exceed the consideration provided in the Agency Agreement by at least $1 million and include at least $215.1 million in cash.  Bids for portions of the Debtors' assets will be considered, but, when added to the value that the Debtors' estates will otherwise receive for its assets, must exceed the consideration in the Agency Agreement by at least $1 million and must include at least $215.1 million in cash.  A Bidder who bids on two or all three of the following: a GC Sale, a Full Chain Liquidation and/or a Remainder Chain Liquidation (a "<u>Multiple Transaction Bidder</u>"), must specify the Purchase Price for each of the proposed transactions.

**E.    Bidding Deadline for Bids.**

The deadline (the "<u>Bid Deadline</u>") for submission of a final and binding written proposal for a GC Sale, a Full Chain Liquidation and/or a Remainder Chain Liquidation (each, a "<u>Bid</u>") is 5:00 p.m. (prevailing Eastern Time) on July 17, 2011 (notwithstanding Bankruptcy Rule 9006(a)(1)(C)).  Bids must be emailed to:

> Kasowitz, Benson, Torres & Friedman LLP
> 1633 Broadway
> New York, New York 10019
> Attn:    Andrew K. Glenn, Esq. (aglenn@kasowitz.com)
>              Jeffrey R. Gleit, Esq. (jgleit@kasowitz.com)
> Facsimile:  (212) 506-1800
>
> with a copy to:

Jefferies & Company, Inc.
Investment Banking
520 Madison Ave, 7th Floor
New York, NY 10022
Attn:   Richard Klein, Sr. Vice President (rklein@jefferies.com)

**F.      Deposit.**

All Bids must include a deposit of seven and a half percent (7.5%) of the Purchase Price

in cash, to be deposited in an escrow account at Citibank, N.A. (the "Escrow Agent"); provided,

however a Multiple Transaction Bidder need only submit one deposit for all of its proposed

transactions.  Additionally, each Bidder shall submit any other documentation that may be

reasonably required by the Escrow Agent.  Such deposit shall not be subject to the liens or claims

of any creditors of the Debtors and shall not be property of the Debtors' estates.

In the event that a Bid is determined by the Debtors not to be a Qualified Bid, the Debtors

shall cause the return of such Bidder's deposit within five (5) business days after the Bid

Deadline.  Other than with respect to the Winning Bidder and the Back-Up Bidder, all other

Deposits not already returned to the respective Qualified Bidder shall be returned no later than

five (5) business days after the Auction.

If the Winning Bidder (or the Back-Up Bidder, if necessary) timely closes the

transactions contemplated in the Winning Bid (or the Back-Up Bid, if necessary), such bidder's

deposit shall be credited towards its cash payment due on Closing.  In the event that the Winning

Bidder (or the Back-Up Bidder, if necessary) fails to consummate the sale because of a breach or

failure to perform on the part of such Winning Bidder (or the Back-Up Bidder, if necessary), the

Debtors will not have any obligation to return such Bidder's or Bidders' deposit.  Retention of

such deposit(s) shall constitute liquidated damages, shall be one of the Debtors' remedies at law

and in equity against the Winning Bidder (or the Back-Up Bidder, if necessary), and, upon

failure to close by the Winning Bidder, the Debtors shall be free to consummate the sale

proposed by the Back-Up Bidder (to the extent applicable) without the need for an additional hearing or order of the Bankruptcy Court.

**G.      Content of Bids.**

In addition to the purchase price, consideration and deposit, as discussed above, each Bid must contain the following information:

(1)      With respect to a GC Sale:

(a)      A copy of the Purchase Agreement, marked electronically to show any changes, and a clean, executed version of the Purchase Agreement (the "Modified Purchase Agreement")[4] and a representation that the Bidder, if deemed a Qualified Bidder, can execute a further modified version of the Modified Purchase Agreement reflecting any changes made during the Auction and/or any other changes that may be agreed upon by such Bidder and the Debtors promptly upon being notified of its selection as the Winning Bidder without need for further approval(s), if any;

(b)      Disclosure of the regulatory, shareholder or other approvals, consents or filings required to consummate and close the GC Sale;

(c)      Details of any agreements or understandings between the Bidder and any third-party with respect to the GC Sale, the Bid, the Debtors' business or with respect to any possible or contemplated transaction involving any of the Debtors' assets;

(d)      The identity of any outside advisors, including financial and legal advisors, engaged or planned to be engaged to assist the Bidder in the GC Sale, including the names of individuals at such advisors contemplated to be working on the GC Sale, and their contact information;

(e)      A statement as to the extent to which the Bid for the Debtors is a GC Sale, Full Chain Liquidation or Remainder Chain Liquidation.  With respect to a GC Sale, a statement by the Bidder identifying which stores it intends to operate as a going concern and which stores, if any, it intends to liquidate;

(f)      Information sufficient to demonstrate to the Debtors' satisfaction that the Bidder has the necessary financial capacity to consummate the GC Sale, as proposed in its Bid, and to provide landlords and parties to executory contracts with adequate assurance of future performance under the leases and contracts it intends to assume;

(g)      A statement acknowledging that the Debtors must close the GC Sale on or before July 29, 2011 (with time being of the essence), with a representation and warranty

---

[4]      The amount and character of any such changes will be a significant consideration in Debtors' selection of the Winning Bid from among the Bids.

that the Bidder knows of no reason why it cannot close the GC Sale on or before that date, as well as either a representation and warranty that it either has obtained Hart Scott Rodino approval or a summary of the reasons why such approval will be obtained.

(2)     With respect to Bids for the Full Chain Liquidation or Remainder Chain Liquidation (the "Liquidation Sale Bids"):

(a)     To the extent the Bid is a Remainder Chain Liquidation, the Bid must comply with Section G(1) above, as well as this Section G(2).

(b)     A copy of the Agency Agreement, marked electronically to show any changes, a clean, executed version of the Agency Agreement (the "Modified Agency Agreement")[5] and a representation that the Bidder, if deemed a Qualified Bidder, can execute a Modified Agency Agreement reflecting any changes made during the Auction and/or any other changes that may be agreed upon by such Bidder and the Debtors, promptly upon being notified of its selection as the Winning Bidder, without need for further approval(s), if any;

(c)     The background of the Bidder, including details of previous experience conducting going out of business sales (*e.g.*, the size and nature of the business and the assets subject to the going out of business sale, the results of the sale);

(d)     Details of any agreements or understandings between the Bidder and any third-party with respect to the Full Chain Liquidation or Remainder Chain Liquidation or with respect to any possible or contemplated transaction involving any of the Debtors' assets; and

(e)     A statement acknowledging that the Debtors must close the Full Chain Liquidation or Remainder Chain Liquidation on or before July 22, 2011 (with time being of the essence), with a representation and warranty that the Bidder knows of no reason why it cannot close such Full Chain Liquidation or Remainder Chain Liquidation on or before such date.

**H.     Closing Conditions to Bids.**

All conditions to closing required by a Bidder must be set forth in the Modified Purchase Agreement and/or the Modified Agency Agreement, provided, however, that no Bid may be subject to any financing, due diligence or other material conditions.  To the extent a Bid relies on one or more third-party financing sources, the Bid must include a signed, binding and irrevocable commitment letter from such third-party financing source(s) or comparable commitment from

---

[5]     The amount and character of any such changes will be a significant consideration in Debtors' selection of the Winning Bid from among the Bids.

any equity source. To the extent a Bid relies on financing sources of affiliates of the Bidder, the Bid must include sufficient evidence of financial capacity to consummate the sale and satisfy all obligations and potential obligations pursuant to the Modified Purchase Agreement and/or the Modified Agency Agreement. Other than those conditions set forth in the Modified Purchase Agreement and/or the Modified Agency Agreement, each Bid shall be irrevocable until and unless (i) such Bid is rejected or (ii) if deemed a Qualified Bid, the Debtors select a higher or otherwise better Qualified Bid and such Qualified Bidder is not selected as the Back-Up Bidder.

**I.      Joint Bids.**

The Debtors will be authorized to approve joint Bids in the Debtors' discretion, after consultation with the Committee and the DIP Agents, on a case-by-case basis.

**J.      Evaluation of Bids.**

Each Bid will be evaluated by the Debtors and their advisors to determine if it is a Qualified Bid, in their discretion, after consultation with the Committee and the DIP Agents. The Debtors, in their discretion, after consultation with the Committee and the DIP Agents, may accept a single Qualified Bid or multiple Qualified Bids for non-overlapping material portions of the Debtors' business and assets.

If the Debtors determine that a Bid is not a Qualified Bid, the Debtors will inform such bidder as soon as practicable after such determination is made. To the extent a Bid does not satisfy the applicable requirements, the Debtors reserve the right, but have no obligation, to contact a Bidder to obtain any necessary further information, documentation, deposit or other modification of such Bidder's proposed Bid package that would allow the Bid to be a Qualified Bid. Without the written consent (by letter, email or facsimile) of the Debtors, which consent may be granted or denied in the Debtors' discretion after consultation with the Committee and the DIP Agents, a Bidder that the Debtors determine to be a Qualified Bidder may not modify,

amend, or withdraw its Qualified Bid, except as such Bid may be increased or improved at the Auction.

Notwithstanding anything else herein to the contrary, the Liquidating Agent is a Qualified Bidder and the Agency Agreement is a Qualified Bid.

In evaluating the Bids, the Debtors will take into consideration, among other factors, the form and amount of the consideration, the extent to which the Bid involves a GC Sale and/or a liquidation, the presence of any closing conditions, the need and availability of financing, the extent of financial wherewithal to meet all commitments under the Bid, the required approvals (if any), and the transaction structure and execution risk.

At least one (1) day prior to the Auction, the Debtors will provide copies of all Qualified Bids to the DIP Agents and the Committee.

**K.      Auction.**

If, after the examination of all Qualified Bids, the Debtors, after consultation with the Committee and the DIP Agents, will determine that an auction (the "Auction") is appropriate and will generate an offer for the purchase of the Debtors' assets that is higher and better than the Agency Agreement, the Debtors will conduct an auction on July 19, 2011, beginning at 1:00 p.m. (prevailing Eastern Time) at a location of which the Debtors will inform each Qualified Bidder. Each Qualified Bidder will be invited to participate as soon as practicable after the Debtors make the determination to conduct an Auction. Only Qualified Bidders and their legal and financial advisors shall be entitled to attend and/or bid at the Auction; provided, however, that representatives of the Committee, the DIP Lenders and the DIP Agents may attend the Auction. Each Qualified Bidder, by participating in the Auction, agrees to keep the Auction, the bids at the Auction, and all details concerning Auction confidential (including its location), unless and until the Debtors file the Notice of Results of Sale Process or to the extent such information is

otherwise public information. Each Qualified Bidder must have at least one individual representative with authority to bind the Qualified Bidder attend the Auction in person. The Auction shall be conducted in the presence of a certified court reporter who shall transcribe all of the Bid Procedures conducted at the Auction.

The minimum interval for bidding at the auction (the "Auction Bidding Interval") shall be of a value of at least $1 million; provided, however, the Debtors, in consultation with the Committee and the DIP Agents, may increase or decrease the Bidding Interval at or before the Auction, in which case the Debtors will so inform each of the Qualified Bidders.

The Debtors may have one Auction for all Qualified Bidders or may separate the Auction into separate Auctions for Qualified Bidders for each of a GC Sale, Full Chain Liquidation and/or Remainder Chain Liquidation, or any combination thereof, as the Debtors may determine in consultation with the Committee and the DIP Agents. The Auction shall continue until there is no further bidding in response to the Qualified Bid(s) (as may be increased at the Auction) that the Debtors determine, after consultation with the Committee and the DIP Agents, is/are the highest or otherwise best Qualified Bid(s) (the "Winning Bid"), at which point the Auction will be closed. As set forth herein, the terms "Winning Bid" and "Winning Bidder" encompasses both a single Winning Bid and Winning Bidder, if there is a single, undivided Auction, and two Winning Bids and Winning Bidders, if there are separate auctions and a Winning Bid is accepted by the Debtors for a GC Sale and a Remainder Chain Liquidation. Use of the singular "Winning Bid" or "Winning Bidder" herein includes the possibility of multiple Winning Bids and Winning Bidders. Acceptance of the Winning Bid (or the Back-Up Bid, if necessary) by the Debtors is conditioned on approval of the Bankruptcy Court at the Sale Hearing.

If there is an Auction, the Bidder with the Qualified Bid that is next-highest or otherwise second best to the Winning Bid (the "Back-Up Bid"), as determined by the Debtors, after consultation with the Committee and the DIP Agents, subject to Bankruptcy Court approval at the Sale Hearing, shall be required to be the back-up bidder (the "Back-Up Bidder"). As set forth herein, the terms "Back-Up Bid" and "Back-Up Bidder" encompasses both a single Back-Up Bid and Back-Up Bidder, if there is a single, undivided Auction, and two Back-Up Bids and Back-Up Bidders, if there are separate auctions and a Winning Bid is accepted by the Debtors for a GC Sale and a Remainder Chain Liquidation. Use of the singular "Back-Up Bid" or "Back-Up Bidder" herein includes the possibility of multiple Back-Up Bids and Back-Up Bidders.

The identity of the Bidder who submits the Winning Bid (the "Winning Bidder") and the Back-Up Bidder and the amount and material terms of the Winning Bid and the Back-Up Bid shall be announced by the Debtors at the conclusion of the Auction. The Winning Bidder and the Back-Up Bidder shall be required to keep their respective Bids open and irrevocable until and including July 29, 2011; provided, however, if the sale closes with the Winning Bidder, the Back-Up Bidder's Back-Up Bid may be revoked after such closing.

If, at any time prior to or on July 29, 2011, the Winning Bidder cannot consummate the GC Sale as proposed in the Winning Bid, the Debtors may close the GC Sale with the Back-Up Bidder by accepting the Back-Up Bid. To the extent the Winning Bid is for a Full Chain Liquidation or a Remainder Chain Liquidation (as the case may be) and such transaction cannot be consummated as proposed in the Winning Bid on or before July 22, 2001 for a Full Chain Liquidation or a Remainder Chain Liquidation, the Debtors may close a GC Sale, a Full Chain Liquidation or a Remaining Chain Liquidation (as the case may be) with the Back-Up Bidder by accepting the Back-Up Bid, provided, in any event, that the transaction(s) pursuant to which a

GC Sale (with or without a Remaining Chain Liquidation) or a Full Chain Liquidation will be consummated, shall close no later than July 29, 2011. Notwithstanding anything else herein to the contrary, the deposit of the Back-Up Bidder may be held by the Debtors until the earlier of three (3) business days after (a) July 29, 2011 and (b) the closing of the sale with the Winning Bidder, at which time the deposit must be refunded.

**L.      Fiduciary Out.**

Upon the determination by the Debtors, and upon advice of counsel, no term or provision of the Modified Purchase Agreement or the Modified Agency Agreement shall prevent, amend, alter, or reduce the Debtors' ability to exercise their fiduciary duties under applicable law.

**M.      Reservation of Rights.**

Notwithstanding anything herein to the contrary, the Debtors reserve the right, in consultation with the Committee and the DIP Agents to modify these Bid Procedures at any time, with notice to the Qualified Bidders, the Committee and the DIP Agents, that is reasonable under the circumstances, to facilitate the submission of value-maximizing Bids, to adjourn the Auction one or more times for any reason, and/or to terminate these Bid Procedures at any time to pursue an alternative restricting strategy that maximizes value for the Debtors' estates.

**N.    Consultation.**

The Debtors will consult with the Creditors' Committee and the DIP Agents on an ongoing basis throughout the sale and auction process.

**O.    Jurisdiction.**

Each Bidder, by submitting the Bid, is deemed to have submitted itself to the jurisdiction of the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction over any disputes arising out of or related to the Bid Procedures, and each Bidder, by submitting the Bid, has acknowledged and consented to such jurisdiction and has waived any right to trial by jury in connection with any disputes related to Debtors' qualification of Bids, the Auction and the construction and enforcement of these Bid Procedures.

David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.*,[1] | **Case No. 11-10614 (MG)** |
| **Debtors.** | **(Jointly Administered)** |

**BID~~DING~~ PROCEDURES FOR SALE OF ALL**
**OR SUBSTANTIALLY~~SUBSTANTIALL~~ ALL OF THE DEBTORS' ASSETS**

On July __, 2011, the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court") entered that certain order (the "Sale Procedures Order"), which

granted the *Debtors' Motion for Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy*

*Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I)*

*Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens,*

*Claims, Encumbrances and Interests and the Assumption and Assignment of Executory Contracts*

*and Unexpired Leases Related Thereto, (II) Approving the Sale Procedures and Break-Up Fee,*

*and (III) Granting Related Relief* (the "Sale Motion") and authorized the Debtors to follow

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders
Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and
BGP (UK) Limited.

certain procedures governing the sale of the above captioned debtors and debtors-in-possession's (collectively, the "<u>Debtors</u>") business and substantially all of their assets in accordance with the procedures provided herein.

## I.   FORMS OF SALES

Pursuant to these <span style="color:orange">Bid</span><s>Bidding</s> Procedures, the Debtors are soliciting bids for the purchase of substantially all of their assets under the terms and conditions set forth in the Sale Motion <span style="color:orange">and as set forth herein.</span><s>(the "Sale").</s>

The Debtors will consider the following types of bids: (i) the purchase, in one or a series of related transactions, of all or a substantial portion of the Debtors' business as a going concern (which may include a liquidation of a portion of the Debtors' assets) (a "<u>GC Sale</u>"), (ii) the purchase to liquidate, in one or a series of related transactions, substantially all or any portion of the Debtors' assets not subject to a GC Sale, including, but not limited to, inventory, furniture, fixtures and equipment, intellectual property, leases, executory contracts and substantially all other assets (a "<u>Remainder Chain Liquidation</u>") and (iii) the purchase to liquidate, in one or a series of related transactions, substantially all of the Debtors' assets, including, inventory, furniture, fixtures and equipment, <s style="color:orange">intellectual property, leases,</s> executory contracts and substantially all other assets (a "<u>Full Chain Liquidation</u>"<span style="color:orange">), excluding intellectual property, leases and other assets of the Debtors not included in the Agency Agreement (as amended).</span>"<s>).</s>  A <span style="color:orange">Bidder</span><s>bidder</s> may submit one or more of the foregoing types of bids, or if applicable, a combination of the foregoing.[2]

---

[2]   To the extent permitted under the Second Amendment and Waiver to DIP Credit Agreement, the Debtors reserve their right to exclude their intellectual property and interests in leases in or from a sale transaction other than as agreed to in the Purchase Agreement.

In the event there is no GC ~~The~~ Sale, the Debtors will be filing a motion to conduct a separate sale process(es) for all assets that are excluded from the Agency Agreement, including, but not limited to, intellectual property, leases, notes and receivables.

The sale shall be pursuant to the terms and conditions of that certain Agency Agreement dated June 30, 2011 (as amended on July 13, 2011), and/or that certain Asset Purchase Agreement dated June 30, 2011, as applicable, each as may be modified pursuant to these Bid Procedures ~~(the "Stalking Horse APA") and the Agency Agreement dated June 30, 2001~~, the forms of which will be subject to approval by the Bankruptcy Court at the Sale Hearing, subject to higher and better bids to be submitted by a Qualified Bidder under the terms of these Bid Procedures.

## II. BID PROCEDURES

**A. Notice of Sale.**

The Debtors will provide notice of the proposed sale~~Sale~~ to the Liquidating Agent,[3] and~~Stalking Horse Bidder,~~[4] the Bid Procedures, the Sale Objection Deadline and the date and time of the Sale Hearing to all parties in interest, every party that has previously expressed any interest in the potential purchase or liquidation of the Debtors' business, and any other party that the Debtors believe might be interested in a possible purchase or liquidation of some or all of the Debtors' business.

**B. Diligence Room.**

The Debtors have made and will continue to make available until the conclusion of the Auction information concerning the Debtors' business and assets to all prospective

---

[3] Any capitalized term not defined shall have the definitions as set forth below, or, if not defined below, shall have the same definitions as provided in the Sale Motion.

[4] ~~Any capitalized term not defined shall have the definitions as set forth below, or, if not defined below, shall have the same definitions as provided in the Sale Motion.~~

Bidders~~bidders~~ for a GC Sale, Full Chain Liquidation and/or Remainder Chain Liquidation that execute a confidentiality agreement acceptable to the Debtors in their sole and absolute discretion; provided, however, that the Debtors reserve the right to deny access to any Bidder~~bidder~~ if the Debtors determine, in their sole and absolute discretion, that such denial is necessary to protect the Debtors' trade secrets, including with respect to the Debtors' competitors, or if the prospective Bidder~~bidder~~ does not provide a reasonable showing that it has the ability to consummate a sale.

By submitting a Bid, each Bidder~~bidder~~ shall be deemed to acknowledge and represent that it has had a reasonable opportunity to conduct due diligence on the Debtors' business and assets before submitting its Bid, that in making its Bid, it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Debtors' assets in making its Bid, and that in making its Bid, it did not rely upon any written or oral statement, representation, promise, warranty or guaranty whatsoever, whether express or implied, by operation of law, or otherwise, regarding the Debtors, or the completeness of any information provided in connection therewith.

**C.**     **Qualified Bidder.**

A "Qualified Bidder" is a Bidder~~bidder~~ on the Debtors' assets that provides the following ~~(collectively, the "Bid")~~ on or before the Bid Deadline, together with the items set forth in Section G~~I~~:

> (i)     An executed confidentiality agreement acceptable to the Debtors;
>
> (ii)     Current audited financial statements or such other form of financial disclosure acceptable to the Debtors demonstrating the ability to close the proposed transaction;

4

(iii)    A bid summary describing the purchase price and structure of the Bid~~bid~~ and sufficient evidence regarding the Bidder's~~bidder's~~ ability to obtain financing for the proposed transaction; and

(iv)    A complete Bid~~bid~~ fulfilling all the requirements set forth in these Bid Procedures including the requisite deposit as defined herein.

The Debtors will notify each Bidder~~bidder~~ whether it is a Qualified Bidder promptly upon receipt of the information listed above.

**D.    Purchase Price and Consideration of Bids.**

**Formatted:** Keep with next

All Bids submitted by a bidder (each, a "Bidder") must state the total proposed purchase price (the "Purchase Price"), in U.S. dollars for a GC Sale, including any cash to be paid and any liabilities to be assumed, or the amount of the Guaranty Percentage (as defined in the Agency Agreement) for a Full Chain Liquidation or a Remainder Chain Liquidation, and, in each case, must exceed the consideration provided in the Agency Agreement by at least $1 million and include at least $215.1 million in cash.  Bids for portions of the Debtors' assets will be considered, but, when added to the value that the Debtors' estates will otherwise receive for its assets, must exceed the consideration in the Agency Agreement by at least $1 million and must include at least $215.1 million in cash.~~total amount of compensation of the Stalking Horse Bid (as described above) by a minimum of $8.95 million for a Bid for a GC Sale and .25% (above the Guaranty Percentage in the Agency Agreement) for a Full Chain Liquidation and/or a Remainder Chain Liquidation (the "Bidding Interval").  Additionally, each Bid must include, at minimum, $224.05 million in cash as part of the compensation.~~  A Bidder who bids on two or all three of the following: a GC Sale, a Full Chain Liquidation and/or a Remainder Chain Liquidation (a "Multiple Transaction Bidder"), must specify the Purchase Price for each of the proposed transactions.

**E.      Bidding Deadline for Bids.**

The deadline (the "<u>Bid Deadline</u>") for submission of a final and binding written proposal

for a GC Sale, a Full Chain Liquidation and/or a Remainder Chain Liquidation (each, a "<u>Bid</u>") is

5:00 p.m. (prevailing Eastern Time) on July 17, 2011 (notwithstanding Bankruptcy Rule

9006(a)(1)(C)).  Bids must be emailed to:

> Kasowitz, Benson, Torres & Friedman LLP
> 1633 Broadway
> New York, New York 10019
> Attn:    Andrew K. Glenn, Esq. (aglenn@kasowitz.com)
>              Jeffrey R. Gleit, Esq. (jgleit@kasowitz.com)
> Facsimile:  (212) 506-1800

> with a copy to:

> Jefferies & Company, Inc.
> Investment Banking
> 520 Madison Ave, 7th Floor
> New York, NY 10022
> Attn:   Richard Klein, Sr. Vice President (rklein@jefferies.com)

**F.      Deposit.**

All Bids must include a deposit of seven and a half percent (7.5%) of the Purchase Price

in cash, to be deposited in an escrow account at Citibank, N.A. (the "<u>Escrow Agent</u>"); <u>provided,</u>

<u>however</u> a Multiple Transaction Bidder need only submit one deposit for all of its proposed

transactions.  Additionally, each Bidder shall submit any other documentation that may be

reasonably required by the Escrow Agent.  Such deposit shall not be subject to the liens or claims

of any creditors of the Debtors and shall not be property of the Debtors' estates.

In the event that a Bid is determined by the Debtors not to be a Qualified Bid, the Debtors

shall cause the return of such Bidder's~~bidder's~~ deposit within five (5) business days after the Bid

Deadline.  Other than with respect to the Winning Bidder and the Back-Up Bidder, all other

Deposits not already returned to the respective Qualified Bidder shall be returned no later than five (5) business days after the Auction.

If the Winning Bidder (or the Back-Up Bidder, if necessary) timely closes the transactions contemplated in the Winning Bid (or the Back-Up Bid, if necessary), such bidder's deposit shall be credited towards its cash payment due on Closing.  In the event that the Winning Bidder (or the Back-Up Bidder, if necessary) fails to consummate the saleSale because of a breach or failure to perform on the part of such Winning Bidder (or the Back-Up Bidder, if necessary), the Debtors will not have any obligation to return such Bidder'sbidder or Bidders'bidders' deposit.  Retention of such deposit(s)). shall constitute liquidated damages, shall be one of the Debtors' remedies at law and in equity against the Winning Bidder (or the Back-Up Bidder, if necessary), and, upon failure to close by the Winning Bidder, the Debtors shall be free to consummate the saleSale proposed by the Back-Up Bidder (to the extent applicable) without the need for an additional hearing or order of the Bankruptcy Court.

The treatment of the deposit made by the Stalking Horse Bidder shall be governed solely by the terms of the Stalking Horse APA.

**G.    Content of Bids.**

In addition to the purchase price, consideration and deposit, as discussed above, each Bid must contain the following information:

(1)    With respect to a GC Sale:

(a)    A copy of the Purchase Agreement, marked electronically to show any changes, and a clean, executed version of the Purchase Agreement (the "Modified Purchase Agreement")[5] and a representation that the Bidder, if deemed a Qualified Bidder, can execute a further modified version of the Modified Purchase Agreement reflecting any changes made during the Auction and/or any other changes that may be

---

[5]    The amount and character of any such changes will be a significant consideration in Debtors' selection of the Winning Bid from amongamongst the Bids.

agreed upon by such ~~Qualified~~ Bidder and the Debtors promptly upon being notified of its selection as the Winning Bidder without need for further approval(s), if any;

(b)     Disclosure of the regulatory, shareholder or other approvals, consents or filings required to consummate and close the GC Sale;

(c)     Details of any agreements or understandings between the Bidder and any third-party with respect to the GC Sale, the Bid, the Debtors' business or with respect to any possible or contemplated transaction involving any of the Debtors' assets;

(d)     The identity of any outside advisors, including financial and legal advisors, engaged or planned to be engaged to assist the Bidder in the GC Sale, including the names of individuals at such advisors contemplated to be working on the GC Sale, and their contact information;

(e)     A statement as to the extent to which the Bid ~~is~~ for the Debtors is a GC Sale, Full Chain Liquidation or Remainder Chain Liquidation ~~Sale~~.  With respect to a GC Sale, a statement by the Bidder identifying which stores it intends to operate as a going concern and which stores, if any, it intends to liquidate;

(f)     Information sufficient to demonstrate to the Debtors' satisfaction that the Bidder has the necessary financial capacity to consummate the GC Sale, as proposed in its Bid, and to provide landlords and parties to executory contracts with adequate assurance of future performance under the leases and contracts it intends to assume;

(g)     A statement acknowledging that the Debtors must close the GC Sale on or before July 29, 2011 (with time being of the essence), with a representation and warranty that the Bidder knows of no reason why it cannot close the GC Sale on or before that date, as well as either a representation and warranty that it either has obtained Hart Scott Rodino approval or a summary of the reasons why such approval will be obtained.

(2)     With respect to Bids for the Full Chain Liquidation or Remainder Chain Liquidation (the "<u>Liquidation Sale Bids</u>"):

(a)     To the extent the Bid is a Remainder Chain Liquidation, the Bid must comply with Section G(1) above, as well as this Section G(2).

(b)     A copy of the Agency Agreement, marked electronically to show any changes, a clean, executed version of the Agency Agreement (the "<u>Modified Agency Agreement</u>")[6] and a representation that the <u>Bidder, if deemed a</u> Qualified Bidder<u>,</u> can execute a Modified Agency Agreement reflecting any changes made during the Auction and/or any other changes that may be agreed upon by such ~~Qualified~~ Bidder and the Debtors, promptly upon being notified of its selection as the Winning Bidder, without need for further approval(s), if any;

---

[6]     The amount and character of any such changes will be a significant consideration in Debtors' selection of the Winning Bid from <u>among</u>~~amongst~~ the Bids.

(c)     The background of the ~~Qualified~~ Bidder, including details of previous experience conducting going out of business sales (*e.g.*, the size and nature of the business and the assets subject to the going out of business sale, the results of the sale);

(d)     Details of any agreements or understandings between the ~~Qualified~~ Bidder and any third-party with respect to the Full Chain Liquidation or Remainder Chain Liquidation or with respect to any possible or contemplated transaction involving any of the Debtors' assets; and

(e)     A statement acknowledging that the Debtors must close the Full Chain Liquidation or Remainder Chain Liquidation on or before July 22, 2011 (with time being of the essence), with a representation and warranty that the ~~Qualified~~ Bidder knows of no reason why it cannot close such Full Chain Liquidation or Remainder Chain Liquidation on or before such date.

**H.     Closing Conditions to Bids.**

All conditions to closing required by a ~~Qualified~~ Bidder must be set forth in the Modified Purchase Agreement and/or the Modified Agency Agreement, <u>provided</u>, <u>however</u>, that no Bid may be subject to any financing, due diligence or other material conditions. To the extent a Bid relies on one or more third-party financing sources, the Bid must include a signed, binding and irrevocable commitment letter from such third-party financing source(s) or comparable commitment from any equity source. To the extent a Bid relies on financing sources of affiliates of the Bidder, the Bid must include sufficient evidence of financial capacity to consummate the sale~~Sale~~ and satisfy all obligations and potential obligations pursuant to the Modified Purchase Agreement and/or the Modified Agency Agreement. Other than those conditions set forth in the Modified Purchase Agreement and/or the Modified Agency Agreement, each Bid shall be irrevocable until and unless (i) such Bid is rejected or (ii) if deemed a Qualified Bid, the Debtors select a higher or otherwise better Qualified Bid and such Qualified Bidder is not selected as the Back-Up Bidder.

**I.     Joint Bids.**

The Debtors will be authorized to approve joint Bids in the Debtors' ~~sole and absolute~~ discretion, after consultation with the Committee and the DIP Agents, on a case-by-case basis.

**J.     Evaluation of Bids.**

Each Bid will be evaluated by the Debtors and their advisors to determine if it is a Qualified Bid, in their ~~sole and absolute~~ discretion, after consultation with the Committee and the DIP Agents.  The Debtors, in their ~~sole and absolute~~ discretion, after consultation with the Committee and the DIP Agents, may accept a single Qualified Bid or multiple Qualified Bids for non-overlapping material portions of the Debtors' business and assets.

If the Debtors determine that a Bid is not a Qualified Bid, the Debtors will inform such bidder as soon as practicable after such determination is made.  To the extent a Bid does not satisfy the applicable requirements, the Debtors reserve the right, but have no obligation, to contact a Bidder~~bidder~~ to obtain any necessary further information, documentation, deposit or other modification of such Bidder's~~bidder's~~ proposed Bid package that would allow the Bid to be a Qualified Bid.  Without the written consent (by letter, email or facsimile) of the Debtors, which consent may be granted or denied in the Debtors' ~~sole and absolute~~ discretion after consultation with the Committee and the DIP Agents, a Bidder~~bidder~~ that the Debtors determine to be a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except as such Bid may be increased or improved at the Auction.

Notwithstanding anything else herein to the contrary, the Liquidating Agent ~~Stalking Horse Bidder~~ is a Qualified Bidder and the Agency Agreement~~Stalking Horse Bid~~ is a Qualified Bid.

In evaluating the Bids, the Debtors will take into consideration, among other factors, the form and amount of the consideration, the extent to which the Bid involves a GC Sale and/or a

liquidation, the presence of any closing conditions, the need and availability of financing, the extent of financial wherewithal to meet all commitments under the Bidbid, the required approvals (if any), and the transaction structure and execution risk.

At least one (1) day prior to the Auction, the Debtors will provide copies of all Qualified Bids to the DIP Agents and the CommitteeStalking Horse Bidder.

**K.**     **Auction.**

If, after the examination of all Qualified Bids, the Debtors, after consultation with the Committee and the DIP Agents, will determine that an auction (the "Auction") is appropriate and will generate an offer for the purchase of the Debtors' assets that is higher and better than the Agency AgreementStalking Horse Bid, the Debtors will conduct an auction on July 19, 2011, beginning at 1:00 p.m. (prevailing Eastern Time) at a location of which the Debtors will inform each Qualified Bidder.  Each Qualified Bidder will be invited to participate as soon as practicable after the Debtors make the determination to conduct an Auction.  Only Qualified Bidders and their legal and financial advisors shall be entitled to attend and/or bid at the Auction; provided, however, that representatives of the Official Committee of Unsecured Creditors, the DIP Lenders and the DIP Agents may attend the Auction.  Each Qualified Bidder, by participating in the Auction, agrees to keep the Auction, the bids at the Auction, and all details concerning Auction confidential (including its location), unless and until the Debtors file the Notice of Results of Sale Process or to the extent such information is otherwise public information.  Each Qualified Bidder must have at least one individual representative with authority to bind the Qualified Bidder attend the Auction in person.  The Auction shall be conducted in the presence of a certified court reporter who shall transcribe all of the Bid Proceduresbidding procedures conducted at the Auction.

11

The minimum interval for bidding at the auction (the "<u>Auction Bidding Interval</u>") shall be of a value of at least $1 million; <u>provided</u>, <u>however</u>, the Debtors, in consultation with the <u>Committee and the DIP Agents</u><s>Stalking Horse Bidder</s>, may increase or decrease the Bidding Interval at or before the Auction, in which case the Debtors will so inform each of the Qualified Bidders.

The Debtors may have one Auction for all Qualified Bidders or may separate the Auction into separate Auctions for Qualified Bidders for each of a GC Sale, Full Chain Liquidation and/or Remainder Chain Liquidation, or any combination thereof, as the Debtors may determine in consultation with the <u>Committee and the DIP Agents.</u><s>Stalking Horse Bidder.</s>  The Auction shall continue until there is no further bidding in response to the Qualified Bid(s) (as may be increased at the Auction) that the Debtors determine, <u>after consultation with the Committee and the DIP Agents,</u> is/are the highest or otherwise best Qualified Bid(s) (the "<u>Winning Bid</u>"), at which point the Auction will be closed.  As set forth herein, the terms "Winning Bid" and "Winning Bidder" encompasses both a single Winning Bid and Winning Bidder, if there is a single, undivided Auction, and two Winning Bids and Winning Bidders, if there are separate auctions and a Winning Bid is accepted by the Debtors for a GC Sale and a Remainder Chain Liquidation.  Use of the singular "Winning Bid" or "Winning Bidder" herein includes the possibility of multiple Winning Bids and Winning Bidders.  Acceptance of the Winning Bid (or the Back-Up Bid, if necessary) by the Debtors is conditioned on approval of the Bankruptcy Court at the Sale Hearing.

If there is an Auction, the Bidder with the Qualified Bid that is next-highest or otherwise second best to the Winning Bid (the "<u>Back-Up Bid</u>"), as determined by the Debtors, <u>after consultation with the Committee and the DIP Agents,</u> subject to Bankruptcy Court approval at

12

the Sale Hearing, shall be required to be the back-up bidder (the "Back-Up Bidder"). As set forth herein, the terms "Back-Up Bid" and "Back-Up Bidder" encompasses both a single Back-Up Bid and Back-Up Bidder, if there is a single, undivided Auction, and two Back-Up Bids and Back-Up Bidders, if there are separate auctions and a Winning Bid is accepted by the Debtors for a GC Sale and a Remainder Chain Liquidation. Use of the singular "Back-Up Bid" or "Back-Up Bidder" herein includes the possibility of multiple Back-Up Bids and Back-Up Bidders.

The identity of the Bidder who submits the Winning Bid (the "Winning Bidder") and the Back-Up Bidder and the amount and material terms of the Winning Bid and the Back-Up Bid shall be announced by the Debtors at the conclusion of the Auction. The Winning Bidder and the Back-Up Bidder shall be required to keep their respective Bids open and irrevocable until and including July 29, 2011; provided, however, if the sale~~Sale~~ closes with the Winning Bidder, the Back-Up Bidder's Back-Up Bid may be revoked after such closing.

If, at any time prior to or on July 29, 2011, the Winning Bidder cannot consummate the GC Sale as proposed in the Winning Bid, the Debtors may close the GC Sale with the Back-Up Bidder by accepting the Back-Up Bid. To the extent the Winning Bid is for a Full Chain Liquidation or a Remainder Chain Liquidation (as the case may be) and such transaction cannot be consummated as proposed in the Winning Bid on or before July 22, 2001 for a Full Chain Liquidation or a Remainder Chain Liquidation, the Debtors may close a GC Sale, a Full Chain Liquidation or a Remaining Chain Liquidation (as the case may be) with the Back-Up Bidder by accepting the Back-Up Bid, provided, in any event, that the transaction(s) pursuant to which a GC Sale (with or without a Remaining Chain Liquidation) or a Full Chain Liquidation will be consummated, shall close no later than July 29, 2011. Notwithstanding anything else herein to the contrary, the deposit of the Back-Up Bidder may be held by the Debtors until the earlier of

13

three (3) business days after (a) July 29, 2011 and (b) the closing of the ~~sale~~Sale with the Winning Bidder, at which time the deposit must be refunded.

~~L.      Bid Protections.~~

~~The Stalking Horse Bidder shall receive the Break-Up Fee in the event that the conditions for such payment as provided in the Purchase Agreement are met.~~

~~The Debtors' obligation to pay the Break-Up Fee shall constitute a superpriority administrative claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 364(c)(1) of the Bankruptcy Code and shall be senior to, and have priority over, all other claims against the Debtors except for the super-priority claim granted to the DIP Agents under the Final DIP Order.~~

~~M.~~L.    **Fiduciary Out.**

Upon the determination by the Debtors, and upon advice of counsel, no term or provision of the Modified Purchase Agreement or the Modified Agency Agreement shall prevent, amend, alter, or reduce the Debtors' ability to exercise their fiduciary duties under applicable law.

~~N.~~M.    **Reservation of Rights.**

Notwithstanding anything herein to the contrary ~~and subject to the rights of the Stalking Horse Bidder under the Purchase Agreement~~, the Debtors reserve the right, in consultation with the Committee and the DIP Agents~~Stalking Horse Bidder,~~ to modify these Bid Procedures at any time, with notice to the Qualified Bidders, the Committee and the DIP Agents, that is reasonable under the circumstances, to facilitate the submission of value-maximizing Bids, to adjourn the Auction one or more times for any reason, and/or to terminate these Bid~~Bidding~~ Procedures at any time to pursue an alternative restricting strategy that maximizes value for the Debtors' estates.

14

**O.N.   Consultation.**

The Debtors will consult with the Creditors' Committee and the DIP Agents on an ongoing basis throughout the sale and auction process.

**P.O.   Jurisdiction.**

Each Bidder, by submitting the Bid, is deemed to have submitted itself to the jurisdiction of the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction over any disputes arising out of or related to the BidBidding Procedures, and each Bidder, by submitting the Bid, has acknowledged and consented to such jurisdiction and has waived any right to trial by jury in connection with any disputes related to Debtors' qualification of Bids, the Auction and the construction and enforcement of these Bid Procedures.