**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>BORDERS GROUP, INC., *et al.*,<br><br>Debtors.[1] | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 11-10614 (MG)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION AND ORDER (I) OVERRULING OBJECTION OF THE**
**UNITED STATES TRUSTEE AND (II) GRANTING IN PART AND DENYING IN PART**
**FIRST INTERIM APPLICATION OF MERCER (US) INC. AS COMPENSATION**
**CONSULTANT TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE**
**PERIOD FROM FEBRUARY 16, 2011 THROUGH APRIL 30, 2011**

*A P P E A R A N C E S:*

FREEBORN & PETERS, LLP
*Attorneys for Mercer (US) Inc.*
311 S. Wacker Drive, Ste. 3000
Chicago, Illinois 60606
By:    Aaron L. Hammer, Esq.


TRACY HOPE DAVIS
*United States Trustee for Region 2*
22 Whitehall Street, 21st Floor
New York, New York 10004
By:    Paul K. Schwartzberg, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This opinion addresses an important issue regarding expense reimbursement for outside

legal fees incurred by a professional officially retained by a debtor-in-possession.  Before the

Court is the *First Interim Application of Mercer (US) Inc. as Compensation Consultant to the*

*Debtors and Debtors in Possession For the Period From February 16, 2011 Through April 30,*

---

[1]      The Debtors are: Borders Group, Inc.; Borders International Services, Inc.; Borders, Inc.; Borders Direct, LLC; Borders Properties, Inc.; Borders Online, Inc.; Borders Online, LLC; and BGP (UK) Limited.

*2011* (the "Application") seeking fees of $97,226.58 and expense reimbursement of $17,402.02.

(ECF Doc. # 1043.)  The expenses sought by Mercer (US) Inc. ("Mercer") include $16,496.35 in

fees of its outside counsel, Freeborn & Peters, LLP ("F&P").  The Office of the United States

Trustee (the "U.S. Trustee") objected to reimbursement of these legal expenses arguing that

Mercer may not receive expense reimbursement to pay an attorney not retained under section

327 of the Bankruptcy Code.  (ECF Doc. # 1080 (the "Objection") at 9.)  Mercer responded to

the objection arguing, *inter alia*, that F&P need not be retained under section 327 because F&P

was not performing services for the estate and the order authorizing Mercer's retention

specifically incorporated Mercer's engagement letter, providing that Mercer is entitled to

reimbursement for its reasonable out-of-pocket expenses "including legal fees associated with

[its] retention and as a professional and subsequent fee application[s] with the US bankruptcy

court."  (ECF Doc. # 1155 (the "Response").)

    The Court held a hearing on the Application on August 10, 2011 (the "Hearing").

Mercer's Application was approved with a minor downward adjustment for block-billed time

entries that violate the U.S. Trustee's Guidelines for Reviewing Applications for Compensation

and Reimbursement of Expenses (the "Guidelines").  The Court took under submission the issue

of reimbursement of Mercer's outside legal fees.  The Court directed F&P to submit its detailed

time records for the Court to review.  Additionally, the Court directed counsel to provide the

Court with copies of the transcripts from two court hearings in the *Blockbuster* and *Sbarro*

chapter 11 cases pending before my colleagues Judges Lifland and Chapman, respectively; both

judges recently considered the issue of reimbursement of outside legal fees for retained

professionals and reached opposite conclusions.[2]  The U.S. Trustee and Mercer's counsel

referred to those transcripts during argument.

For the reasons explained below, Mercer's outside legal counsel did not have to be

retained pursuant to section 327(a) of the Bankruptcy Code for Mercer to receive expense

reimbursement for certain work performed for Mercer where the retention order approved an

engagement letter providing for expense reimbursement of counsel fees.  Section 327 simply

does not apply.  Like all reimbursable expenses, however, these expenses are subject to court

review for reasonableness and they must be "actual, necessary expenses."  11 U.S.C. §

330(a)(1)(B).  A retention application must comply with section 327 of the Bankruptcy Code and

Bankruptcy Rule 2014, which impose legal requirements and burdens on a debtor presenting the

retention application and upon the professional that seeks to be retained.  Often the

professional's cost of complying with these requirements for retention can or should be

considered a cost of doing business, not separately compensable from the estate—if you want the

business, you must first establish the absence of any disqualifying conflict (not compensable),

negotiate the scope of work and proposed compensation terms and have the retention approved

by the court.  This cost of doing business may be built into a proposed compensation structure,

not separately charged, even if a non-lawyer professional employs outside counsel to negotiate,

draft or review the engagement or retention application.  Furthermore, all fee applications in this

District require the applicant to certify that "(c) except to the extent that fees or disbursements

are prohibited by these Amended Guidelines or the UST Guidelines, the fees and disbursements

sought are billed at rates and in accordance with practices customarily employed by the applicant

and generally accepted by the applicant's clients; and (d) in providing a reimbursable service, the

---

[2]    *See In re Blockbuster, Inc., et al.*, Case No. 10-14997 (BRL) (Bankr. S.D.N.Y.) (Hr'g Tr., Oct. 27, 2010, 25:20–34:20, ECF Doc. # 481); *In re Sbarro, Inc., et al.*, Case No. 11-11527 (SCC) (Bankr. S.D.N.Y.) (H'rg Tr., May 3, 2011, 50:5–51:4, ECF Doc. # 175).

applicant does not make a profit on the service, whether the service is performed by the applicant in-house or through a third party." General Order M-389, ¶ A.1. Thus, if the applicant does not customarily charge its clients for outside counsel fees in connection with retention, it cannot recover those fees in bankruptcy. Here, the engagement letter separately provided for reimbursement of outside counsel fees in connection with retention and fee applications. And Mercer provided the certification required by General Order M-389. (*See* Certification of Aaron L. Hammer with Respect to First Interim Application Cover Sheet of Mercer (US) Inc. as Compensation Consultant to the Debtors and Debtors in Possession for the Period from February 16, 2011 through April 30, 2011 (ECF Doc. # 1043, Attachment 3)). Unless the Bankruptcy Code, Rules, General Orders or caselaw prohibits it, the terms for expense reimbursement are enforceable, subject to court review for reasonableness. The Court concludes that the circumstances of this case do not prohibit reimbursement.

Retained professionals are required to prepare fee applications in chapter 11 cases, and the Bankruptcy Code specifically provides that compensation may be awarded for preparing a fee application. *See* 11 U.S.C. § 330(a)(6). The Bankruptcy Code and Rules, as well as General Orders of this Court and the Guidelines, impose exacting requirements for fee applications. There is nothing inherently wrong with non-lawyer professionals retaining their own counsel to assist in preparing fee applications, and receiving expense reimbursement (within appropriate limits) for the cost of doing so, if their engagement letters and retention orders permit it.

But Mercer or any retained professional is not entitled to reimbursement for legal fees for time spent by outside lawyers on tasks relating to the engagement for which the professional has been retained. Work done on behalf of the estate is compensable only if the professional performing the work is retained pursuant to section 327. Here, Mercer was retained to develop

4

employee compensation programs.  Mercer cannot receive expense reimbursement if F&P worked on the Debtors' compensation or benefit programs.  Mercer bears the burden of showing its entitlement to fees and expenses.  Here, a very small amount of F&P's fees appear to relate to work on Debtors' compensation and benefit programs and will be disallowed.

## I.    BACKGROUND

On February 16, 2011 (the "Petition Date"), Borders Group, Inc. and certain of its affiliates (the "Debtors") commenced their chapter 11 bankruptcy cases.  (ECF Doc. # 1.)  At the outset of these cases, the Debtors filed several retention applications seeking Court approval of the retention of various professionals pursuant to section 327(a) of the Bankruptcy Code—Kasowitz, Benson, Torres & Friedman, LLP as lead bankruptcy counsel; Baker & McKenzie LLP as special corporate counsel; Jefferies & Company, Inc. as investment banker and financial advisor; and Mercer (US) Inc. as compensation consultant.  (ECF Doc #s 37, 48, 39, 467.)  The Debtors' efforts to reorganize as a going concern were unsuccessful, and the Court recently authorized the sale of substantially all the assets to a consortium of nationally-recognized retail liquidators.  (ECF Doc. # 1377.)

### A.    Mercer's Retention

On April 7, 2011, the Court authorized Mercer's retention *nunc pro tunc* to the Petition Date, as compensation consultant to the Debtors (the "Retention Order").  (ECF Doc. # 560.)  Mercer was retained to provide the following services: "(i) analyze proposed director compensation arrangements and assist and advise the Debtors in developing a management compensation program that aligns the interests of the Debtors, their key employees and their creditors, (ii) assist the Debtors in the development of a Key Employee Incentive Plan ("KEIP")

and Key Employee Retention Plan ("KERP") and (iii) assist the Debtors in possible emergence issues." (ECF Doc. # 467 ¶ 4.)

Mercer was retained on the terms in Mercer's February 11, 2011 engagement letter with the Debtors, subject to certain limited modifications (the "Engagement Letter"). (Retention Order, Ex. B.) The Engagement Letter states that Mercer may "also bill for necessary travel and other expenses related to the services requested, including legal fees associated with our retention as a professional and subsequent fee application[s] with the US bankruptcy court if required." (*Id.* at 2–3.) The Retention Order was approved "on the terms set forth in this Order, the Application, the Engagement Letters and the Dempsey Declaration." (*Id.* at 2.) The Retention Order also provided a general reservation of rights for the U.S. Trustee—"[t]he United States Trustee and Committee shall retain all rights to object to Mercer's fees and expenses." (*Id.* at 5.)

On March 24, 2011, the Debtors filed the *Motion Pursuant to Sections 363(b), 365(a) and 503(c) of the Bankruptcy Code and Fed. R. Bankr. P. 6006 and 9014 For an Order Authorizing (I) Implementation of (A) Key Employee Incentive Plan and (B) Key Employee Retention Plan, and (II) Assumption of Certain Employment Agreements* (the "KEIP/KERP Motion"). (ECF Doc. # 457.) In support of the KEIP/KERP Motion, the Debtors filed two declarations of John Dempsey, a partner at Mercer, setting forth the terms and rationale for implementation of an employee compensation program for the Debtors. (ECF Doc. #s 457, 601.) The U.S. Trustee objected to the KEIP/KERP Motion. (ECF Doc. # 561.) Following a lengthy hearing, further negotiations between all parties in interest, and significant revisions, the Court granted the revised KEIP/KERP Motion. *In re Borders Grp., Inc.*, No. 11-10614 (MG), 2011 WL 1563633, at *11–14 (Bankr. S.D.N.Y. Apr. 27, 2011).

**B.      F&P's Legal Fees For Services Performed for Mercer**

On June 14, 2011, Mercer filed its Application for fees and expenses for services

performed for the Debtors from the Petition Date through April 30, 2011.  Mercer sought fees of

$97,226.58 and expense reimbursement of $17,402.02.  (Application at 2.)  The expenses in

dispute—$16,496.35—fall into the category "Administrative – Legal."  Initially, Mercer did not

provide a detailed billing statement for F&P time entries, instead including only line-item

charges in the Application.  (*Id.*, Exs. A, B.)  At the Hearing, the Court directed F&P to submit

copies of its detailed March and April 2011 legal bills.

A careful review of F&P's fee statements shows that F&P's services related primarily to

Mercer's retention and review and preparation of Mercer's fee applications.  F&P's March bill—

23.8 hours for a total of $9,517.00—was exclusively for retention matters, including

corresponding with its client, drafting and reviewing Mercer's retention application, and

communicating with counsel for Debtors and for the Official Committee of Unsecured Creditors

(the "Committee") regarding a form of retention order.  F&P's April bill covers retention issues,

a significant amount of time reviewing and preparing fee applications, and a small amount of

time concerning implementation of Debtors' employee compensation program.  Below is a

breakdown of the F&P's April time entries:

| Category | Time Spent (in hours) | Fees Incurred |
|---|---|---|
| Retention | 6.6 | $2,392.50 |
| Fee Application | 11.8 | $3,338.50 |
| Reviewing Time Records | 8.5 | $2,284.00 |
| Proof of Claim Tasks | 0.4 | $250.00 |
| Miscellaneous Tasks | 0.8 | $176.00 |
| KEIP/KERP Tasks[3] | 0.6 | $343.50 |
| **APRIL 2011 TOTAL** | 28.7 | $8,784.50 |

F&P's March and April bills aggregate $18.301.50, but Mercer only seeks expense

reimbursement of $16,496.35.  (Application at 3.)

## II.    DISCUSSION

Under the Bankruptcy Code, a debtor may seek court approval to "employ one or more

. . . attorneys, accountants, appraisers, auctioneers, or other professional persons" to represent or

assist the trustee in carrying out the trustee's duties to the estate.  11 U.S.C. § 327(a).[4]  To be

retained by a debtor under section 327(a), the "[p]rofessional must be both disinterested and not

hold or represent any interest adverse to the estate."  *In re Project Orange Assocs., LLC*, 431

---

[3]    Two time entries relate to discussions about the Debtors' implementation of key employee incentive and retention programs.  The two entries are as follows:

> April 13, 2011    *Eggert, Devon J.*        0.1 hours        $31.00
> Telephone conference with John Dempsey regarding article on declaration in support of executive compensation program (0.1).

> April 13, 2011    *Hammer, Aaron L.*        0.5 hours        $312.50
> Review supplemental declaration of John Dempsey in support of the debtors' motion pursuant to sections 363(B), 365(A) and 503(C) of the bankruptcy code for an order authorizing implementation of key employee retention program and for related relief (0.5).

[4]    Section 327(a) of the Bankruptcy Code provides, in relevant part:

> [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

B.R. 363, 369 (Bankr. S.D.N.Y. 2010) (citation omitted).  Section 328(a) of the Bankruptcy

Code sets forth limitations on compensation allowable to a professional retained under section

327:

> The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, *on any reasonable terms and
> conditions of employment*, including on a retainer, on an hourly
> basis, on a fixed or percentage fee basis, or on a contingent fee
> basis.

11 U.S.C. § 328(a) (emphasis added).  The question whether terms of employment are

"reasonable" cannot be determined by a court "through hindsight." *In re CCT Commc'ns, Inc.*,

No. 07-10210 (SMB), 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing *In re

Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007)).  "The test is an objective one, and considers

'what services a reasonable [professional] will have performed in the same circumstances.'" *Id.*

(quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)) (citations omitted).

If retained, the professional may then seek compensation and expense reimbursement

under section 330(a) of the Bankruptcy Code.  3 COLLIER ON BANKRUPTCY ¶ 330.01 (16th ed.

rev. 2011).  Under section 330(a)(1)(B), a professional employed under section 327 may be

reimbursed for "actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).  Expenses are deemed

"'actual' when they are in fact incurred rather than based upon guesswork, formula or pro rata

allocation, and when they are obviously attributable to a bankruptcy client."  3 COLLIER ON

BANKRUPTCY § 330.04[1].  Expenses are "'necessary' when incurred if they were properly

required to accomplish the task for which the professional was employed." *Id.  See also In re

Computer Learning Ctrs., Inc.*, 285 B.R. 191, 226 (Bankr. E.D. Va. 2002) (citations omitted)

(stating that "expense is necessary if it is required to accomplish the task for which the

professional was employed.").  The same factors enumerated in section 330(a)(3) for the

reasonableness of compensation for services are also applicable to the reimbursement of

expenses.  3 COLLIER ON BANKRUPTCY § 330.04[1]; 11 U.S.C. § 330(a)(3)(A)–(F).

Other courts have applied a slightly different test, considering whether the expense was

"'incurred because it was required to accomplish the proper representation of the client.'"  *In re*

*Am. Preferred Prescription, Inc.*, 218 B.R. 680, 686–87 (Bankr. E.D.N.Y. 1998) (quoting *In re*

*Spanjer Bros., Inc.*, 203 B.R. 85, 91 (Bankr. N.D. Ill. 1996)).  In any event, the burden of

establishing entitlement to expenses falls on the applicant.  *Id.*

### A.    F&P Does Not Need to Seek Separate Retention Pursuant to Section 327(a) For Services Performed Solely on Behalf of Mercer

F&P was not officially retained by the Debtors under section 327(a) of the Bankruptcy

Code.  The U.S. Trustee's position, apparently a revised stance over the past two or three years,

is that attorneys who do work on behalf of retained professionals should not be compensated by

estate funds through expense reimbursement unless they are separately retained under section

327.  According to the U.S. Trustee, Mercer should not be entitled to reimbursement from the

Debtors because F&P has not been retained by the Debtor pursuant to section 327 of the

Bankruptcy Code.  (Objection at 9.)  At the Hearing, the U.S. Trustee argued that a split in

authority has developed within this District regarding whether an attorney may be compensated

by the estate through reimbursement of expenses of a retained professional.[5]  The issue was

---

[5]      The U.S. Trustee characterized the attempt by F&P to be paid through Mercer's expense reimbursement as a "backdoor" around the requirement that an attorney who does work on behalf of the estate be "disinterested" and not "hold or represent an interest adverse to the estate."  *Project Orange*, 431 B.R. at 370.

raised before my colleagues Judge Lifland in *Blockbuster* and Judge Chapman in *Sbarro* with

different outcomes.[6]  After hearing argument, I took the matter under submission.

### 1.    Reimbursement of Legal Fees as "Actual, Necessary Expenses" of a Retained Professional

The caselaw on expense reimbursement for outside legal counsel to a retained

professional is sparse.[7]  Nevertheless, independent research by the Court has turned up several

cases reflecting a disagreement whether expense reimbursement for outside legal counsel acting

on behalf of a retained professional can only be approved if the counsel has been retained

pursuant to section 327 of the Bankruptcy Code.

The U.S. Trustee relies on Judge Feller's opinion in *In re Crafts Retail Holding Corp.*,

378 B.R. 44 (Bankr. E.D.N.Y. 2007).  The court denied expense reimbursement to Duff and

Phelps Securities LLC ("DPS"), for the legal fees of DPS's counsel, Schulte Roth & Zabel LLP

("SRZ"), in connection with DPS's retention by the debtors.  *Id.* at 46.  The U.S. Trustee and the

creditors' committee objected to the request.  *Id.*  DPS's engagement letter with the debtors

---

[6]       In *Blockbuster* and *Sbarro*—unlike this case—the issue of reimbursement of legal fees arose at the retention stage—whether to approve an engagement with expense reimbursement for outside counsel fees over the objection of the U.S. Trustee.  As explained later in this Opinion, while I conclude that reimbursement does not require that outside counsel be retained under section 327, the facts and circumstances in each case may lead a court to disapprove a reimbursement provision at the retention stage.  The Debtors here sought to retain many different professionals on restructuring matters.  The U.S. Trustee, as is customary, was heavily involved in reviewing the retention applications and negotiating acceptable terms of engagement letters and retention orders.  The time to object to the expense reimbursement provision was when the retention motions were presented to the Court.  A general reservation of rights, such as the one contained in the Retention Order, may be sufficient to preserve for later review issues of violations of the Bankruptcy Code or Bankruptcy Rules, but no such violations exist here.  The reasonable expectations of the parties were set when the Engagement Letter and the Retention Order were approved by the Court with the expense reimbursement provision included.  Waiting to object until *after* expenses have been incurred raises basic fairness questions.

[7]       The U.S. Trustee cites to two cases for the proposition that an attorney must be retained under section 327 of the Bankruptcy Code to be paid from the debtor's estate, neither of which bears any resemblance to the issue before the Court.  *See e.g.*, *In re Cenargo Int'l, PLC*, 294 B.R. 571, 606 (Bankr. S.D.N.Y. 2003) (fees of barristers that debtor's attorney used to assist in English administration proceedings could not be compensated because barristers were not officially retained by debtor, but would have an opportunity to apply for compensation in English court and "[t]he English Court, therefore, [was] in the best position to review" the fees ); *In re Drexel Burnham Lambert Grp.*, 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991) (stating in dicta that legal fees associated with negotiation of indemnification agreements are part of an investment banker's overhead and may not be compensable by the estate without resolving the issue).

specifically provided for the reimbursement of reasonable, out-of-pocket expenses, not to exceed

$35,000 without the debtors' prior consent. *Id.* at 47. The retention order included language

added by the court that made the employment of DPS subject to the applicable provisions of the

Bankruptcy Code and Bankruptcy Rules. *Id.* at 50. The court denied DPS's request for

reimbursement because SRZ was not officially retained by the estate:

> Viewed, as we must, from the perspective of substance rather than
> form, the Fee Application impermissibly seeks payment of legal
> fees for services of attorneys whose employment was not approved
> by the Court. Indeed, there is no provision in the Bankruptcy Code
> authorizing a court approved professional person like DPS to, in
> turn, employ another professional. Fed. R. Bankr. P. 2014(a),
> captioned "Employment of Professional Persons", [sic] stresses
> that an order approving employment of professional persons
> pursuant to § 327 or § 1103 "shall be made *only* on application of
> the trustee or committee." (emphasis added).

*Id.* at 49. Further, the court rejected the argument that the legal fees incurred by DPS were "just

another out-of-pocket expense":

> The morphing of attorney compensation into a garden variety
> expense item is unacceptable to this Court. If such efforts at
> transformation were allowed, the prophylactic protections afforded
> by the statutory requirement of pre-appointment court approval
> would be circumvented by a mere shifting of terminology. The
> entire range of approved professional persons, such as accountants,
> appraisers, consultants, lawyers, etc., may well perceive license to
> hire other professional persons without court approval at the
> expense of a bankruptcy estate. Among other things, control over
> administrative costs would be diminished. And, the safeguards
> enacted by two interdependent statutes of the Bankruptcy Code,
> § 327 and § 330, whose provisions are intended to provide
> cumulative and not alternative protections for creditors and estates
> in bankruptcy, would be subverted.

*Id.* at 49–50. DPS also argued that the engagement letter was a valid contract that specifically

provided for the reimbursement of attorneys fees. *Id.* at 50. The court rejected the argument,

pointing to the provision added to the retention order that the employment of DPS was "subject

12

to all applicable provisions of the Bankruptcy Code and Bankruptcy Rules." *Id.* According to

the court, the portion of the engagement letter providing for reimbursement of the legal fees was

"inconsistent with normative bankruptcy law and procedures." *Id.* (citation omitted). The court

also concluded that absent SRZ's retention by the estate, the legal fees were not "necessary" to

DPS's engagement. *Id.* at 51. Compliance with section 327(a) was required, according to the

court, and absent an order of the court approving SRZ's retention, DPS could not be reimbursed

for attorneys fees in the amounts sought. *Id.* at 52.

      In contrast to the *Crafts Retail Holding Corp.* decision, the court in *In re Geneva Steel

Co.*, 258 B.R. 799 (Bankr. D. Utah 2001), approved expense reimbursement to a retained

professional, The Blackstone Group ("Blackstone"), for legal fees of its counsel, Simpson

Thacher & Bartlett LLP ("Simpson Thacher"). Simpson Thacher defended objections to

Blackstone's fee applications. *Id.* at 803–04. The Official Committee of Bondholders objected

to the payment of Simpson Thacher's legal fees because Simpson Thacher was not retained

under section 327 of the Bankruptcy Code. *Id.* at 803. Blackstone pointed to the terms of its

retention agreement with the debtor, requiring the debtor to indemnify Blackstone for all

reasonable expenses "including fees, expenses, and disbursements of counsel." *Id.* Blackstone

argued that its legal expenses "involved with the defense of its fee applications is reimbursable

as an out-of-pocket expense."[8] *Id.* The court approved reimbursement of reasonable fees and

expenses of Simpson Thacher:

>       There is no provision in the Code for a professional appointed
> pursuant to Section 327 to seek appointment of another

---

[8]     Because Mercer is not seeking reimbursement for fees associated with the defense of its fee application, the Court need not address whether such fees are reimbursable. *See In re CCT Commc'ns*, 2010 WL 3386947, at *8–9 ("While the cost of preparing a fee application is compensable, the cost of defending one may not be."). However, the underlying principle in *Geneva Steel* that Simpson Thacher need not be retained pursuant to section 327(a) of the Bankruptcy Code to collect fees through expenses awarded to Blackstone directly relates to the issue before the Court.

> professional to represent its interest at a fee hearing.  For attorneys
> this is not a problem because they are usually well equipped to
> represent themselves at fee hearings, and they are permitted to seek
> reimbursement for reasonable fees and expenses incurred in the
> preparation and defense of their fee applications.  To expect
> Blackstone, a non-attorney professional, to either accept
> representation from counsel who may suffer a conflict of interest
> or absorb the cost of representation itself is fundamentally unfair.
> This is especially true in light of the engagement agreement which
> specifically provided for reimbursement of such fees by Geneva.

*Id.*  (internal footnote omitted).  After reviewing the reasonableness of Simpson Thacher's fees and expenses and reducing the amount sought for failure to provide relevant information regarding billing rates and expertise, the court approved expense reimbursement to Blackstone. *Id.* at 803–04.

Similarly, in *In re Am. Preferred Prescription, Inc.*, 218 B.R. 680 (Bankr. E.D.N.Y. 1998), Judge Eisenberg held that BDO Seidman, LLP ("BDO"), the accounting firm retained by the debtor, was not required to obtain bankruptcy court approval to employ counsel, Hahn & Hessen LLP ("Hahn & Hessen"), to represent it in a dispute regarding its retention.  *Id.* at 686. The court rejected "the Debtor's argument that absent entry of an order approving the retention of Hahn & Hessen as counsel to BDO, that BDO cannot be reimbursed" for the costs associated with defending a dispute over the accountant's retention.  *Id.*

> The Debtor appears to be confusing the issue of whether a
> professional may be reimbursed from the Debtor's estate for
> performing professional services without obtaining a prior order of
> retention with the issue of whether BDO can be reimbursed for
> costs it incurred in connection with the performance of its duties as
> spelled out in the Order of Retention.

*Id.*  The court distinguished the matter from a case where a chapter 11 trustee retained a professional to work on behalf of the estate because the accountant hired counsel to represent it in a dispute over retention and possible removal.  *Id.*

14

> In this case, BDO was not required to obtain Bankruptcy Court
> approval prior to employing counsel to represent it in a dispute
> over BDO's retention and possible removal because of a conflict of
> interest. *In re Met-L-Wood Corp.*, 115 B.R. 133 (N.D. Ill. 1990).
> BDO merely seeks Court authorization for payment of the Defense
> Costs, which it necessarily incurred in connection with the work
> performed on behalf of the Trustee. The fact that the costs
> incurred by BDO were in the nature of legal fees and such
> incidental costs does not change the Court's analysis. Such
> expense is to be scrutinized as would any other expense, in the
> context of this case. The Court believes that the only question it
> must answer is whether this charge constitutes an actual and
> necessary expense.

*Id.* Ultimately, the court deemed the expenses necessary and awarded expense reimbursement to

the accountant on the basis of "fundamental fairness," based on *Reading Co. v. Brown*, 391 U.S.

471, 479 (1968), because "the debtor in question has caused an injury to a third party for which

the estate must be held responsible." *Id.* at 688.

The facts and circumstances underlying the expense reimbursement request of non-

retained attorneys are important. In *In re Computer Learning Ctrs., Inc.*, 285 B.R. 191 (Bankr.

E.D. Va. 2002), the court denied expense reimbursement for legal fees incurred by Holland &

Knight on behalf of the debtor's accountant, Frank & Company. *Id.* at 225–26. Frank &

Company sought reimbursement of a $61,793.24 in connection with obtaining approval for the

firm's fee application. The court rejected the argument that Holland & Knight may be directly

compensated by the estate:

> There is no authority for a professional to employ another
> professional at the expense of the estate. This is consistent with
> the non-bankruptcy rule that each party bears his own legal fees
> and expenses in litigation unless by contract the fees and expenses
> are shifted to another party. Holland & Knight is a professional
> and was not employed under § 327. *See Max Rouse & Sons, Inc. v.*
> *Specialty Plywood, Inc. (In re Specialty Plywood, Inc.)*, 160 B.R.
> 627, 632 (9th Cir. BAP 1993) opinion withdrawn upon settlement
> by parties, 166 B.R. 153 (9th Cir. BAP 1994).

*Id.* at 225.  The court rejected the argument that the legal expenses were "required to accomplish the task for which the professional was employed" because Holland & Knight's representation was commenced after the accounting services were rendered and after the fee application was submitted to the court.  *Id.* (citations omitted).  "The legal fees incurred did not relate to the completion of professional services provided by Frank & Company and were not necessary to the completion of any tasks for which Frank & Company was responsible."  *Id.*  The court distinguished *Am. Preferred Prescription* on its facts because that case involved the accountant's expenses defending a disqualification motion characterized by the court as "baseless," "frivolous," and "lacking in any legal or factual basis."  *Id.* at 226 (citing *In re Am. Preferred Prescription*, 218 B.R. at 688).  Such was not the case in *Computer Learning Ctrs.*, the court concluded, because the time spent by Holland & Knight was in response to an inquiry made by a court-appointed fee auditor who revealed an improper billing practice by Frank & Company.  *Id.*  Unlike *Am. Preferred Prescription*, the "questions raised were not frivolous" and the "legal fees were caused, not by the debtor or a third party, but by the accountant."  *Id.*

At the Hearing, the U.S. Trustee also pointed to conflicting outcomes in *Blockbuster* and *Sbarro*.  In *In re Blockbuster, Inc., et al.*, Case No. 10-14997 (BRL) (Bankr. S.D.N.Y.), the U.S. Trustee objected to the retention application of Rothschild, Inc. ("Rothschild"), as financial advisor and investment banker to the debtors.  (Case No. 10-14997, ECF Doc. # 22.) Rothschild's proposed engagement letter contained a provision allowing reimbursement of outside legal counsel.  The U.S. Trustee argued, as it does here, that any attorney who receives reimbursement from the estate must be retained pursuant to section 327 of the Bankruptcy Code. (Case No. 10-14997, ECF Doc. # 283.)  The parties in *Blockbuster* agreed to leave the issue of fees incurred by outside legal counsel to the fee application process, but Judge Lifland refused to

16

do so.  Hr'g Tr., Oct. 27, 2010, 25:20–34:20.  The court sustained the U.S. Trustee's objection, concluding that a provision allowing for reimbursement of legal fees incurred on behalf of a retained professional was not appropriate and Rothschild's counsel may apply to the court for compensation if it believes it made a "substantial contribution" to the estate.  H'rg Tr. 34:17–20; *see* 11 U.S.C. §§ 503(b)(3), (4).

The issue of approval of an engagement letter containing a provision for reimbursement of outside legal expenses for a retained professional again arose in *In re Sbarro, Inc., et al.*, Case No. 11-11527 (SCC) (Bankr. S.D.N.Y.).  The debtor applied for retention of Rothschild, and the U.S Trustee again objected to expense reimbursement for Rothschild's outside counsel, Debevoise & Plimpton LLP ("Debevoise"), because Debevoise was not retained under section 327.  (Case No. 11-11527, ECF Doc. #s 104, 123.)  At the hearing, Rothschild said it would likely seek fees in only two circumstances: fees incurred in connection with retention and compensation; and, fees where litigation is commenced against Rothschild and Debevoise is engaged to deal with deposition and document production issues.  H'rg Tr., May 3, 2011, 50:5–51:4.  Judge Chapman ruled that reimbursement of legal fees incurred by Debevoise done on behalf of Rothschild's interests would be appropriate, but fees incurred for work on behalf of the debtor would not.  *Id.* at 51:5–13.  Debevoise's attorney assured the court that it would not be rendering services to the estate and would not be seeking expense reimbursement from the estate on that basis.  *Id.* at 51:15.  Judge Chapman overruled the U.S. Trustee's objection, disagreeing with Judge Lifland in *Blockbuster*, and allowing for the provision in the Rothschild engagement letter that permits reimbursement of fees subject to the court's review of fee and expense detail.  *Id.* at 67:9–14.

The conflicting decisions on expense reimbursement are not easily reconciled.  But the
Court concludes that nothing in the language of section 327 suggests that counsel retained to
represent a retained professional in connection with its retention or fee applications should or
even could be retained under section 327—that is work being done for the professional, not for
the estate.  And nothing in section 327 excludes such expenses as "necessary" where the work
was required to comply with the Bankruptcy Code, Rules, or General Orders.  Courts can
certainly refuse reimbursement if the expenses are unreasonable or the tasks performed did not
benefit from a lawyer undertaking them.  *See* 11 U.S.C. § 330(a)(6) ("Any compensation
awarded for the preparation of a fee application shall be based on the level and skill reasonably
required to prepare the application.").

Retained professionals' fees in chapter 11 cases can be very substantial.  It is
understandable that courts are reluctant to augment these already substantial costs by adding
reimbursement for the professionals' outside counsel.  Professionals may only be compensated in
bankruptcy cases for reasonable fees and expenses, taking into consideration customary fees in
bankruptcy and non-bankruptcy matters.  *See* General Order M-389 ¶ A.1 (stating that "the fees
and disbursements sought are billed at rates and in accordance with practices customarily
employed by the applicant and generally accepted by the applicant's clients").  If a professional
does not charge for counsel fees for negotiating retention in non-bankruptcy matters, then such
charges are inappropriate in bankruptcy cases.  Expense reimbursement should also bear a
reasonable relationship to the likely amount of the professional's compensation.  Caps on the
amount of reimbursable expenses can also be negotiated.  But where the fees are incurred in
representing the professionals, and not in performing work for the debtor, section 327 does not
apply.  The Bankruptcy Code and Rules require retention of professionals, and mandate

18

substantial obligations on professionals seeking retention.  Likewise, fee application preparation

imposes substantial obligations on professionals.  Because the Bankruptcy Code and Rules

mandate these obligations, the tasks associated with retention and fee applications are

"necessary," within the meaning of section 330(a)(1)(B), and, therefore, reimbursable at least

where an approved retention agreement provides for reimbursement of outside counsel fees.

Absent an approved expense reimbursement provision, a court may well conclude—particularly

with respect to expenses associated with retention—that such expenses are a cost of doing

business already built into the compensation structure and not separately compensable as

expense reimbursement.

   With due respect to those courts that have concluded otherwise, the Court agrees with

those courts that have concluded that section 327(a) is inapplicable where a retained professional

seeks expense reimbursement for legal fees actually incurred for the professional's own counsel

for services provided to the retained professional and not for the estate.[9]

   As in *Geneva Steel*, all of F&P's March and the bulk of the April legal fees were for

required work representing Mercer, not work for the Debtors.  *Id.*  Further, as in *Geneva Steel*,

the Engagement Letter and Retention Order specifically provide that Mercer can be reimbursed

for "other expenses related to the services requested, including legal fees associated with our

retention as a professional and subsequent fee application[s] with the US bankruptcy court if

required."  (Retention Order, Ex. B at 2–3.)  The March and the majority of the April legal fees

relate only to retention and fee application matters for which Mercer should receive expense

reimbursement, subject to a reasonableness determination by the Court.  Requiring Mercer, a

---

[9]       But to be clear, this conclusion does not mean that expense reimbursement provisions for outside counsel
must be approved at the retention stage in all cases.  The facts and circumstances in each case may lead to different
results.  For example, if an objection is filed and the proposed professional cannot demonstrate that it customarily
imposes similar reimbursement obligations on all clients in similar circumstances, a reimbursement provision would
not be justified.  Other circumstances could well lead to the same result.

non-attorney professional, to "absorb the cost of representation itself is fundamentally unfair . . .

especially in light of the engagement agreement which specifically provided for reimbursement

of such fees by [the debtor]." *Geneva Steel*, 258 B.R. at 803.

The Court rejects the U.S. Trustee's proposed *per se* rule that no attorney (or other

professional) who has not been retained by the estate under section 327 can receive

compensation for work done on behalf of a client who is performing services for the bankruptcy

estate. Fees for legal services performed on behalf of the debtor are not directly compensable or

eligible for expense reimbursement through a retained professional where the attorney has not

been retained by the estate pursuant to section 327 of the Bankruptcy Code. *See, e.g.*, *In re

Midland Capital Corp.*, 82 B.R. 233, 241 (Bankr. S.D.N.Y. 1988) (denying expense

reimbursement to chapter 11 debtors where debtors failed to obtain court approval of

employment of law firm consulted regarding securities law issues); *In re Northeast Dairy Coop.

Fed'n, Inc.*, 74 B.R. 149, 154 (Bankr. N.D.N.Y. 1987) ("The consequences of a debtor's failure

to secure prior bankruptcy court approval of a professional's employment within the jurisdiction

of the United States Court of Appeals for the Second Circuit are indeed harsh. With very limited

exceptions, the so-called 'per se' rule controlling in this Circuit prohibits the payment of

compensation to a professional who renders services to a debtor absent an order of

appointment.") (citations omitted); *In re United Cos. Fin. Corp.*, 241 B.R. 521, 528 (Bankr. D.

Del. 1999) ("Parties may not avoid the requirements of section 327(a) by entering into such

'subcontracting' arrangements which E & Y originally contemplated with respect to the EYR

personnel. Such a subcontracting arrangement, if approved would eviscerate the protections of

section 327(a) and allow a third party (rather than the debtor or the Court) to determine who

should render professional services for the estate.").

### 2. Certain of Mercer's Legal Fees May Have Been Performed On Behalf of the Debtors' Estates

F&P's legal fees for services that were not performed solely on behalf of Mercer cannot be recovered as expenses. Mercer seeks reimbursement for two categories of legal fees that arise from work for the benefit of the Debtors: (1) work performed by F&P involving implementation of the Debtors' employee compensation program; and (2) time spent reviewing the notice of bar date, reviewing the proof of claim form and correspondence relating thereto. The total amount of fees sought for these two categories is minimal—$343.50 and $250.00—but it must be disallowed.

### a. Entries Relating to the KEIP/KERP

F&P's billing statements contain two time entries totaling 0.6 hours for $343.50 relating to implementation of a key employee incentive and retention program for the Debtors. *See supra* n.2. The key employee incentive and retention programs were the focus of Mercer's work. Compensation for work on these programs can only be awarded to retained professionals. Mercer has failed to meet its burden of showing that F&P's work was for the benefit of Mercer only. Accordingly, the Court denies Mercer's request for reimbursement for expenses in the amount of $343.50 in this category.

### b. Entries Relating to the Proof of Claim Form

F&P's billing statements contain an entry of 0.4 hours for $250.00 reviewing the bar date notice, proof of claim form and correspondence relating thereto. This work was not within the scope of work for which reimbursement was permissible under the Engagement Letter, nor can the Court understand why such services would have been performed solely for Mercer. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) ("[W]e hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as

21

authorized by § 327.").  Accordingly, the Court denies Mercer's request for reimbursement of expenses in this category.

### B.    Mercer May Receive Reimbursement From the Estate For Certain, But Not All, Legal Fees of F&P Performed Solely on Behalf of Mercer

Having concluded that section 327(a) does not apply to F&P for work performed solely on behalf of Mercer, the Court must now address whether the expenses sought by Mercer are "reasonable" pursuant to section 330(a)(1).  11 U.S.C. § 330(a)(1)(A).  At the Hearing, the Court approved Mercer's request for compensation in the amount of $97,226.58 and a portion of the expenses in the amount of $905.67.  Mercer supports its request for compensation of $16,496.35 for outside legal fees for a total of 52.5 hours of work performed, an average hourly rate of $314.00 per hour.

Fees and expenses to professional persons must comply with section 330, which provides in part:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award . . .
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by an such person; and
> >
> > (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  In determining reasonable compensation and expenses, section 330 directs the court to consider:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

        (D) whether the services were performed within a reasonable
amount of time commensurate with the complexity, importance
and nature of the problem issue, or task addressed;
(E) with respect to a professional person, whether the person is
board certified or otherwise has demonstrated skill and experience
in the bankruptcy field; and

        (F) whether the compensation is reasonable based on the
customary compensation charged by comparably skilled
practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

"Necessary" expenses under section 330(a)(1)(B) must be "properly required to accomplish the task for which the professional was employed." 3 COLLIER ON BANKRUPTCY ¶ 330.04[1]. "The determination as to whether to allow reimbursement of expenses depends, in part, upon whether such expenses are considered nonreimbursable "overhead" charges. *Id.* The burden of establishing entitlement to expenses falls on Mercer. *In re Am. Preferred Prescription, Inc.*, 218 B.R. at 686.

**1.      The Requested Expenses Are Not "Overhead"**

As an initial matter, the U.S. Trustee asserts that the legal fees incurred by Mercer are "overhead," not compensable under the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases set forth in General M-389 by Chief Judge Bernstein on November 23, 2009. M-389 incorporates and supplements the Guidelines. Under the Guidelines, nonreimbursable overhead includes:

        [A]ll continuous administrative or general costs incident to the
operation of the applicant's office and not particularly attributable
to an individual client or case. Overhead includes, but is not
limited to, word processing, proofreading, secretarial and other
clerical services, rent, utilities, office equipment and furnishings,
insurance, taxes, local telephones and monthly car phone charges,
lighting, heating and cooling, and library and publication charges.

Black's Law Dictionary defines "overhead" as "[b]usiness expenses (such as rent, utilities, or support-staff salaries) that cannot be allocated to a particular product or service; fixed or ordinary operating costs."  BLACK'S LAW DICTIONARY 1213 (9th ed. 2009).  Expenses incurred by a retained professional for outside legal fees are often "allocated to a particular product or service"; they do not fall under this definition.  The Court concludes—as did Judge Chapman in *Sbarro*—that outside legal fees are not "overhead" as contemplated by the Guidelines.  *Sbarro* H'rg Tr. 52:2–5 (noting that overhead is akin to fixed costs such as electricity and the administrative staff—but not outside counsel to assist a professional during the retention process).

### 2.    Expenses Sought By Mercer For Certain Outside Legal Fees

Mercer seeks reimbursement of legal services performed by F&P solely on behalf of Mercer in the following categories: (1) retention matters; (2) fee application review and preparation; (3) reviewing time records; and (5) miscellaneous matters.

*(1)    Retention Matters*

F&P's entire March bill (totaling 23.8 hours of work for a total of $9,517.00) and the majority of the April bill (totaling 6.6 hours and $2,392.00) were for services in connection with Mercer's retention.  Mercer performed services necessary to the administration of the estate regarding the implementation of employee compensation plans.  Mercer's retention was a critical first step in Mercer's engagement.  Mercer's engagement was negotiated not only with the Debtors, but with the Committee as well.  The Court concludes that the amount of time spent and fees billed to Mercer for retention matters are reasonable under the circumstances and reimbursable in full.  The Court allows reimbursement of expenses of $11,909.00 to Mercer for services performed in this category.

24

*(2)    Fee Application Review and Preparation*

Mercer seeks reimbursement for F&P's time spent reviewing and preparing the monthly

fee statements pursuant to the interim compensation order entered in these cases.  In total, F&P

spent 11.8 hours, totaling $3,338.50, preparing and filing the monthly fee statements.

As this Court has previously stated, "considerable time is required to properly prepare a fee

application, and professionals are entitled to reasonable compensation for doing so."  *In re Mesa*

*Air Grp., Inc.*, 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011).  Section 330(a)(6) allows

compensation for preparation of fee applications, but a court can impose limits on such

compensation.  For example, in *Mesa*, the Court declined to adopt a hard cap on the amount

allowed for preparing fee applications, but applied a metric of 3-5% of the total fees sought.  *Id.*

Mercer seeks fees totaling $97,226.58.  F&P charged a total of $3,338.50 for preparing

the fee applications, less than 3.5% of the fees charged by Mercer.[10]  The Court concludes that

the amount of time spent and fees billed to Mercer for preparing the fee application are

reasonable and allowable in full.

*(3)    Reviewing Time Records*

Mercer also seeks reimbursement of $2,284.00 for F&P's time reviewing Mercer's time

records.  This Court has previously stated that "'the review and editing of time records—as

opposed to fee applications—is not compensable.'"  *Mesa Air Grp.*, 449 B.R. at 445 (quoting *In*

*re CCT Commc'ns, Inc.*, 2010 WL 3386947, at *9).  Accordingly, the Court denies Mercer's

request for reimbursement of time spent by F&P reviewing and editing time records.

---

[10]    The Mercer time entries attached as exhibits to the Application also indicate that Mercer employees spent a de minimis amount of time preparing the monthly fee statements.  One employee spent 0.25 hours preparing the March monthly fee statement and related documents, for a total amount of $139.20.  (Application, Ex. A at 4.)

*(4)    Miscellaneous Time*

Mercer seeks reimbursement for 0.8 hours—$176.00—for F&P's time spent on miscellaneous matters, including setting up a teleconference with the court for the hearing on the Mercer retention application.   The Court concludes that this time and expense should properly be considered overhead.  Reimbursement is denied.

\* \* \* \* \* \* \* \* \*

In sum, the Court approves Mercer's request for expense reimbursement for F&P's fees of $11,909.00 on retention matters, and of $3,338.50 for reviewing and preparing the Application—in the aggregate, the Court allows expense reimbursement of $15,247.50.  Mercer is not entitled to reimbursement for F&P's time spent reviewing time records, the Debtors' implementation of an employee compensation plan, the proof of claim and bar date notice, or setting up the telephonic hearing with the Court.

### III.    CONCLUSION

Attorneys who are not retained under section 327 cannot be compensated—directly or indirectly—for any work performed for the estate.  Retained professionals that retain outside counsel only to represent the professional in connection with retention or preparation of fee applications may be reimbursed for reasonable expenses of such counsel when the engagement agreement and retention order provide for such expense reimbursement.  Such counsel need not be retained under section 327.  As in all cases, requests for expense reimbursement are subject to court approval for reasonableness.  The scope of the engagement and expense reimbursement provisions should be negotiated before the retention application is presented; exclusions, caps or other limits on reimbursement of outside counsel fees may be appropriate.  Objections to expense reimbursement provisions should be raised before the retention is approved by the court.

In this case, Mercer's Engagement Letter and Retention Order permit reimbursement of such expenses to the extent allowed in this Opinion.  The U.S. Trustee's objection—that no reimbursement can be awarded because F&P was not retained pursuant to section 327—is overruled.

**IT IS SO ORDERED.**

Dated:    August 23, 2011
          New York, New York


          **_/s/Martin Glenn_**
          MARTIN GLENN
          United States Bankruptcy Judge