David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.*,[1] | **Case No. 11-10614 (MG)** |
| **Debtors.** | **(Jointly Administered)** |

**NOTICE OF HEARING ON DEBTORS' MOTION FOR ORDER PURSUANT TO SECTIONS 363(b) AND 365(a) OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 6004, 6006 AND 9014 AUTHORIZING DEBTORS (I) TO ASSUME AND ASSIGN CERTAIN UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES TO BOOKS-A-MILLION, INC. AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing to consider the annexed motion (the

"Motion"), filed by Borders Group, Inc. ("BGI") and its debtor subsidiaries, as debtors and

debtors in possession (collectively, the "Debtors"), shall be held before the Honorable Martin

Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

District of New York, Courtroom 501, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court") on **August 29, 2011 at 3:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion and the relief requested therein may be made at the hearing.

Dated: August 24, 2011
      New York, New York

                KASOWITZ, BENSON, TORRES
                  & FRIEDMAN LLP

                By: /s/ Andrew K. Glenn
                David M. Friedman (DFriedman@kasowitz.com)
                Andrew K. Glenn (AGlenn@kasowitz.com)
                Jeffrey R. Gleit (JGleit@kasowitz.com)
                1633 Broadway
                New York, New York 10019
                Telephone: (212) 506-1700
                Facsimile: (212) 506-1800

                *Attorneys for Debtors*
                *and Debtors in Possession*

David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **BORDERS GROUP, INC.,** *et al.*,[1] | Case No. 11-10614 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ORDER PURSUANT TO SECTIONS 363(b) AND 365(a) OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 6004, 6006 AND 9014 AUTHORIZING DEBTORS (I) TO ASSUME AND ASSIGN CERTAIN UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES TO BOOKS-A-MILLION, INC. AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Borders Group, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), submit this motion (the "Motion"), and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

## BACKGROUND

1. On February 16, 2011 (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. On February 24, 2011, the Office of the United States Trustee appointed the official committee of unsecured creditors (the "Committee").[2]

## JURISDICTION

3. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE DEBTORS' BUSINESS

**A. Operations**

4. The Debtors were a leading operator of book, music and movie superstores and mall-based bookstores. As of January 29, 2011, the Debtors operated 642 stores under the Borders, Waldenbooks, Borders Express and Borders Outlet names, as well as Borders-branded airport stores, of which 639 stores were located in the United States and 3 in Puerto Rico. In addition, the Debtors operate a proprietary e-commerce web site, www.Borders.com, launched in May 2008, which includes both in-store and online e-commerce components.

---

[2] [Docket No. 156].

2

**B.    Store Closing Sales**

5.    Before the commencement of these cases, the Debtors, in consultation with their advisors, identified and implemented critical cost-cutting initiatives to stabilize the Debtors' operations and ensure the Debtors' continued viability.  Chief among these initiatives was the closure of certain unprofitable stores.  Therefore, on the Commencement Date, the Debtors filed an emergency motion (the "Store Closing Motion")[3] with the Court seeking authority to, among other things, enter into an agreement with a liquidating agent (the "Liquidating Agent") to conduct store closing sales ("SCSs") at no fewer than 200 of the Debtors' stores, and up to an additional 75 of the Debtors' stores if the landlords did not agree to substantial rent concessions.

6.    Pursuant to the Court's *Order Approving the Agency Agreement, Store Closing Sales and Related Relief*, dated February 18, 2011 (the "Closing Sales Order"),[4] the Court approved the appointment of the Liquidating Agent and the commencement of the SCSs at the applicable stores.

7.    On or about June 30, 2011, the Debtors filed their *Motion for an Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and the Assumption and Assignment of Executory Contracts and Unexpired Leases Related Thereto, (II) Approving the Sale Procedures and Break-Up Fee, and (III) Granting Related Relief* (the "Sale Motion"),[5] seeking authority to, among other things, sell substantially all of the Debtors' assets.

---

[3]    [Docket No. 7].

[4]    [Docket No. 91].

[5]    [Docket No. 1130].

8. On or about July 21, 2011, the Court entered the *Order Approving Agency Agreement, Store Closing Sales and Related Relief*,[6] (the "GOB Order"), which, among other things, authorized the Debtors to conduct SCSs for the Debtors' remaining inventory and related assets.

C. **Sale of Leases**

9. On or about July 27, 2011, the Debtors filed their *Motion for Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Approving the Bidding and Auction Procedures for Sale of Unexpired Nonresidential Real Property Leases, (II) Setting Lease Sale Hearing Dates and (III) Authorizing and Approving (A) Sale of Certain Unexpired Nonresidential Real Property Leases Free and Clear of All Interests, and (B) Assumption and Assignment of Certain Unexpired Nonresidential Real Property Leases* (the "Lease Disposition Motion"),[7] which, among other things, sought authority to engage in a process to sell, assume and assign the Debtors' unexpired nonresidential real property leases free and clear of all interests. On or about August 11, 2011, this Court entered an order approving the Lease Disposition Motion and the bidding procedures (the "Bidding Procedures"), contained therein.[8] In addition, the Court set August 24, 2011, as the deadline for nondebtor counterparties to the Debtors' unexpired nonresidential real property leases to file objections to the proposed cure amounts set forth in the Bidding Procedures. Accordingly, no further cure objection procedure is needed in connection with this Motion.

---

[6] [Docket No. 1377].

[7] [Docket No. 1399].

[8] [Docket No. 1519].

4

**D.      The Books-A-Million Proposed Transaction**

10.     On August 24, 2011, the Debtors and Books-A-Million, Inc. ("BAM") entered into that certain Letter Agreement (the "Letter Agreement") for the acquisition of certain of the Debtors' assets (the "BAM Transaction").  Specifically, the Letter Agreement provides that BAM's will acquire fourteen (14) of the Debtors' unexpired nonresidential real estate leases (the "Purchased Leases") of the Debtors' large format stores ("Superstores") and specialty stores (the "Small Format Stores" and together with the Superstores, the "Purchased Locations").  In addition, BAM would assume the real estate leases (each a "Lease" and collectively, the "BAM Leases") and consent to entering into an assumption and assignment agreement.[9]

11.     Several of the key terms of the Letter Agreement include:

- Structure.  Under the BAM Transaction, BAM will acquire all of the Debtors' right, title, and interest in the Purchased Leases; provided, however, that BAM shall not assume any obligations under any Purchased Leases arising prior to Turnover (as defined in the Letter Agreement), including, without limitation, any rent, back-charges, CAM, tax, lease, or other obligations for any periods prior to the Turnover, which amounts shall be paid by the Debtor at or prior to closing (except as provided below with respect to Cure Costs).

- Consideration.  In consideration for the Debtors' assignment of the BAM Leases to BAM, BAM shall pay to the Debtors the sum of Nine Hundred and Thirty-Forty Thousand and Two Hundred and Nine Dollars ($934,209) (the "Consideration"), which shall be comprised of (i) $184,209, which is the amount necessary to pay the cure costs described below to the landlords (the "Cure Claims") and (ii) and $750,000.

- Cure Costs.  BAM will pay at closing the "Cure Costs" specified on Exhibit A to the Letter Agreement.  The amounts listed as "cure costs" on Exhibit A to the Letter Agreement are the maximum amounts that BAM is obligated to pay for Cure Costs for each of the Purchased Leases, unless BAM agrees otherwise in accordance with this Letter Agreement[10]

- Removal of Lease(s).  All the Purchased Leases shall be acquired by BAM pursuant to the terms of the Letter Agreement, provided, however, the Debtors, in

---

[9]   A list of the BAM Leases is attached hereto as Exhibit C.

[10]  The Debtors have reviewed their books and records and believe they will not exceed $184,209.

5

consultation with the Committee, may remove any Lease(s) from the BAM Transaction if the Cure Cost exceeds the cap listed on Exhibit A of the Letter Agreement, and BAM does not consent to pay the increased amount.

Each of the BAM Leases has been marketed by the Debtors' real estate advisors, DJM Realty. Based on these marketing efforts, the Debtors, after consulting with the Creditors' Committee, believe that the BAM Transaction is the highest and best offer for the BAM Leases.

### E. Necessity for Shortened Notice

12. Upon the requested of BAM, and as a condition for closing the BAM Transaction, the Bankruptcy Court must enter a final order approving the BAM Transaction on or before August 29, 2011. (*See* Letter Agreement, at ¶ 3(i)). As such, upon direction of the Court, a hearing has been set with respect to the instant Motion for August 29, 2011 at 3:00 p.m.

## RELIEF REQUESTED

13. The Debtors respectfully request that, pursuant to sections 363 and 365(a) of the Bankruptcy Code and Bankruptcy Rules 6004, 6006 and 9014, the Court enter an order, substantially in the form of Exhibit A annexed hereto: (i) approving the assumption by Borders of the BAM Leases; (ii) authorizing the Debtors to enter into the Letter Agreement substantially in the form attached hereto as Exhibit B; (iii) confirming that Bankruptcy Rules 6004(h) and 6006(d) do not apply to the assumption of the BAM Leases.

## BASIS FOR RELIEF

### A. Sections 363(b) and 365(a) Authorize the Debtors to Assume the BAM Leases

14. Section 363(b)(l) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To sell property under section 363(b), the Debtors must demonstrate to the Court a legitimate business justification for the proposed

action. *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

15. Moreover, section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Similar to section 363(b)(1), the standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed or rejected is the "business judgment" test, which is premised upon the debtor's business judgment that assumption would be beneficial to the estate. *See Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098-99 (2d Cir. 1993); *see also In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment"); *Hunts Point Tomato Co. v. Roman Crest Fruit, Inc. (In re Roman Crest Fruit, Inc.)*, 35 B.R. 939, 949 (Bankr. S.D.N.Y. 1983); *Control Data Corp. v. Zelman*, 602 F.2d 38, 42 (2d Cir. 1979). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten

the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

16. If the debtor's business judgment has been exercised reasonably, a court should approve the assumption or rejection of an executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Group of Inst'l. Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523 (1943); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989); *see also In re Orion Pictures Corp.*, 4 F.3d at 1098-99. Once the debtor has satisfied the business judgment standard by showing that assumption will benefit the estate, the court "should not interfere . . . 'except upon a finding of bad faith or gross abuse of [the debtor's] business discretion.'" *Crystalin, L.L.C. v. Selma Props. (In re Crystalin, L.L.C.)*, 293 B.R. 455, 464 (B.A.P. 8th Cir. 2003) (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

17. Moreover, the business judgment rule shields a debtor's management from judicial second-guessing. *In re Farmland Indus.*, 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986)) ("'[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.'"). Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkum*, 488 A.2d 858, 872 (Del. 1985)).

### B. Entering Into the Letter Agreement Represents a Sound Exercise of the Debtors' Business Judgment

18. The Debtors have properly exercised their sound business judgment, and determined that the assumption and assignment of the BAM Leases is in the best interests of their estates. Accordingly, this Court should approve the BAM Transaction and authorize the Debtors to enter into the Letter Agreement under sections 365(a) and 363(b) of the Bankruptcy Code. *In re Gucci*, 193 B.R. 411, 415-17 (Bankr. S.D.N.Y. 1996) (affirming bankruptcy court's approval of assumption of executory contract upon determination that assumption "was in the best interest of the estate").

19. There is sufficient business justification to assume and assign the BAM Leases to BAM. First, by entering into the BAM Transaction, the Debtors will receive the Consideration. Second, under the Letter Agreement, BAM is obligated to pay all the Cure Claims associated with assuming the BAM Leases up to $184,209, unless BAM agrees otherwise in accordance with this Letter Agreement. This will not only benefit the Debtors by decreasing the Debtors' pre-Commencement Date claims, but will also eliminate any potential termination damage claims that would result in the rejection of the BAM Leases if the Debtors were unsuccessful in their marketing efforts.

20. Third, assuming and assigning the BAM Leases will relieve the Debtors' estates of the burden and risks of further marketing of the BAM Leases. This will allow the Debtors to devote more estate resources to winding down their business and marketing their other leases that are not subject to the Bidding Procedures Order and remove the uncertainty of a continuation of the auction process as to the BAM Leases. Finally, the Debtors, after consulting with their professional advisors, believe that the consideration offered as part of the BAM Transaction for the BAM Leases is greater than the Debtors would receive if they sold each

9

individual lease pursuant to the auction process approved by the Bankruptcy Court. Thus, the Debtors believe that the BAM Transaction is advantageous to the Debtors and the assumption and assignment of the BAM Leases maximizes the value of the Debtors' assets.

**C.     The Cure and Adequate Assurance of
        Future Performance Requirements Are Satisfied**

21.     Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A). Congress' intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an executory contract is to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *See Eastern Air Lines, Inc. v. The Ins. Co. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 999 (2d Cir. 1996). Under section 365(b)(1)(A), to assume the BAM Leases, the Debtors must satisfy the cure claims and provide adequate assurance of future performance.

22.     BAM possesses sufficient assets to continue the performance called for going forward under the BAM Leases. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but generally, "adequate assurance" is a term of art afforded "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent). BAM is a publicly traded company and its common shares are traded on the NASDAQ National Market under the symbol

BAMM.  As indicated by its public filings,[11] BAM has the requisite financial health and experience in managing the type of property assigned to constitute adequate assurance.  *See In re Bygaph, Inc.,* 56 B.R. 596, 605-606 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee has financial resources and expressed willingness to devote sufficient funding to business to give it a strong likelihood of succeeding).

23.  The financial credibility, willingness, and ability of BAM as the assignee of the BAM Leases cannot be credibly disputed. [12]  BAM is a leading book retailer primarily located in the southeastern United States.  BAM presently operates 230 stores in 23 states and the District of Columbia.  BAM was founded in 1917 and operates both superstores and traditional bookstores.  Its superstores, the first of which was opened in 1987 range in size from 8,000 to 39,000 square feet and operate under the names "Books-A-Million," "Books and Co." and "2nd & Charles."  Traditional bookstores are smaller stores operated under the names "Bookland" and "Books-A-Million".[13]  These stores range in size from 2,000 to 7,000 square feet and are located primarily in enclosed malls.  All store formats generally offer an extensive selection of best sellers and other hardcover and paperback books, magazines, and newspapers.  In addition to the retail store formats, BAM offers its products over the Internet at www.booksamillion.com.  As a bookseller, BAM will operate stores at the Purchased Locations that are substantially similar in product mix as the Debtors' stores at such locations.

**D.  The Assignment of the BAM Leases is Appropriate Under Section 363(f)**

24.  Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such

---

[11] BAM's latest Form 10-K (the "BAM 10-K"), filed April 14, 2011, is available at www.sec.gov/Archives/edgar/data/891919/000089191911000027/0000891919-11-000027-index.htm.

[12] *See* BAM 10-K.

[13] *See* BAM 10-K.

a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f). Courts have interpreted the requirements of Section 363(f) to be disjunctive. *In re Elliot*, 94 B.R. 343 (Bankr. E.D. Pa. 1988). Accordingly, if any of the five conditions set forth in section 363(f) are met, then a debtor is empowered to sell property free and clear of liens. *Id*.

25. The assumption and assignment of the BAM Leases satisfy the requirements of section 363(f). The Debtors believe that the only party with an interest in the Leases or their proceeds is the Agent (as defined in the GOB Order), which received liens on proceeds of the Leases to secure the Debtors' payment obligations under the Agency Agreement.[14] To the extent required, the Debtors expect to obtain the Agent's consent to the BAM Transaction prior to the hearing on the Motion.

26. Moreover, the Debtors will serve this Motion on all parties listed on its master service list as required by the Case Management Order (as defined below). All relevant parties, including all known parties with an interest in the BAM Leases will have notice and the ability to object to the transaction. If a party with an interest in the subject property does not timely object to the transaction in accordance with the proposed procedures, the Debtors submit that such party has consented to the BAM transaction within the meaning of section 363(f)(2) of the Bankruptcy Code. *See Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)).

---

14  *See* the GOB Order, ¶ 33 [Docket No. 1377].

## OTHER RELATED RELIEF

27. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or lease … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Due to the facts of these cases and the Debtors' need to proceed in an expedited manner to monetize the BAM Leases and avoid incurring unnecessary administrative obligations, the Debtors request that any order approving the BAM Transaction be effective immediately by providing that the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) are waived.

28. Also, pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of any Lease after such assignment to and assumption to BAM on the effective date of the assumption and assignment.

## CONCLUSION

29. In light of the foregoing, the Debtors respectfully request that the Court (i) approve their assumption of the BAM Leases pursuant to section 365(a) of the Bankruptcy Code, and (ii) provide for the waivers of the notice requirements and stay period set forth in Bankruptcy Rules 6004 and 6006 and the protections to the Debtors under section 365(k) of the Bankruptcy Code.

## NOTICE

30. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been given in accordance with this Court's order (the "Case Management Order"), dated February 16, 2011, implementing certain notice and case management

procedures.[15] In addition, every landlord counterparty to the BAM Leases has been given notice of this Motion. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

31. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

---

[15] [Docket No. 64].

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: August 24, 2011
      New York, New York

                                KASOWITZ, BENSON, TORRES
                                  &FRIEDMAN LLP

                                By: /s/ Andrew K. Glenn
                                David M. Friedman (DFriedman@kasowitz.com)
                                Andrew K. Glenn (AGlenn@kasowitz.com)
                                Jeffrey R. Gleit (JGleit@kasowitz.com)
                                1633 Broadway
                                New York, New York 10019
                                Telephone: (212) 506-1700
                                Facsimile: (212) 506-1800

                                *Attorneys for Debtors*
                                *and Debtors in Possession*