**EXHIBIT B**

August 24, 2011

**Via E-Mail**

Holly Felder Etlin, CRO
Borders Group, Inc.
100 Phoenix Drive
Ann Arbor, MI 48108

      RE:    Acquisition of Certain Leases of Borders Group, Inc. and Borders, Inc. (collectively, the "Seller")

Dear Holly:

This letter agreement (the "Letter Agreement") sets forth an agreement pursuant to which Books-A-Million, Inc. ("BAM") will acquire Seller's leases at the locations set forth on Exhibit A (collectively, the "Purchased Leases"). The terms of this transaction (the "Transaction") are as follows:

    **1.    Structure.** The Transaction will be structured as a lease assumption and assignment under section 365 of the Bankruptcy Code, pursuant to which BAM will acquire all Seller's right, title, and interest in the Purchased Leases; provided, however, that BAM shall not assume any obligations under any Purchased Leases arising prior to Turnover (as defined below), including, without limitation, any rent, back-charges, CAM, tax, lease, or other obligations for any periods prior to the Turnover, which amounts shall be paid by the Seller at or prior to closing (except as provided below with respect to Cure Costs).

All the Purchased Leases shall be acquired by BAM, and Seller may not remove any of the locations set forth on Exhibit A without the express written consent of BAM.

    **2.    Purchase Price.** As consideration for the Purchased Leases BAM will pay to Seller at closing the amounts specified on Exhibit A (the "Purchase Price").

BAM will pay at closing the "Cure Costs" specified on Exhibit A (the "Cure Costs"). The amounts listed as "cure costs" on Exhibit A are the maximum amounts that BAM shall be obligated to pay for Cure Costs for each of the Purchased Leases, unless BAM agrees otherwise in accordance with this Letter Agreement.

Seller shall seek in the Approval Motion (defined below) to have the amounts of the Cure Costs determined in the Approval Order (defined below). If the amount necessary to cure all defaults under a Purchased Lease pursuant to section 365(b)(1)(A) of the Bankruptcy Code (a) is lower than the specified Cure Cost for such Purchased Lease on Exhibit A, then BAM shall pay such lower amount (with the difference reducing the Purchase Price), or (b) is higher than the amount specified for such Purchased Lease on Exhibit A, then BAM shall have the option, exercisable in its sole discretion, of paying such greater amount. If BAM declines to pay such greater amount, then Seller shall have the option, exercisable in its sole discretion, to either (i)

1

CH\1291123.5

pay such amount, or (ii) terminate this Letter Agreement, which termination shall not result in any penalty or liability of any kind for BAM or Seller.

3. **Conditions to Closing**. The closing of the Transaction will not occur unless and until the satisfaction of the following conditions:

(a) Seller shall have returned a countersigned copy of this Letter Agreement by August 24, 2001;

(b) The official committee of unsecured creditors shall have provided written consent to the Transaction within two business days following Seller's execution of this Letter Agreement;

(c) Seller shall have filed a motion (the "Approval Motion") to approve the Transaction and to determine the Cure Costs with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") by August 24, 2011;

(d) Seller shall file with the Approval Motion a notice with the Bankruptcy Court removing the Purchased Leases from the auctions currently scheduled for August 31, 2011 and September 13, 2011 and notifying bidders that it will not entertain offers for any Purchased Leases;

(e) BAM and the Seller shall have entered into a lease assignment agreement in form and substance acceptable to both BAM and the Seller setting forth the terms of the Transaction, with such lease assignment agreement containing representations and warranties and other provisions customary for transactions of this nature;

(f) All applicable filings, consents and approvals required by governmental authorities, laws, rules, regulations or contracts, shall have been obtained, satisfied, waived or completed prior to the closing date;

(g) Except as provided herein with respect to Cure Costs, the Debtors shall have paid any obligations under any Purchased Lease arising prior to transfer of possession of the leased premises to BAM ("Turnover"), including, without limitation, any rent, back-charges, CAM, tax, lease, or other obligations for any periods prior to the Turnover. For avoidance of doubt, obligations under any Purchased Lease that arose between the date of the filing of Seller's bankruptcy case and Turnover shall not be included in the determination of Cure Costs for purposes of this Agreement.

(h) The Bankruptcy Court shall have entered a final order approving the Transaction and determining the Cure Costs (the "Approval Order") by August 29, 2011, which order shall be in form and substance satisfactory to BAM in its sole discretion; and

(i) The Transaction shall have closed by August 30, 2011. BAM's rental obligation under the lease assignments shall commence upon the latest of (i) Turnover, (ii) October 1, 2011, or (iii) the completion of the going out of business liquidation sales.

4. **Time Is Of The Essence.** In the event any of the foregoing conditions is not satisfied within the time specified, then this Letter Agreement will automatically terminate unless BAM otherwise notifies Seller in writing.

5. **Alternative Proposals.** Seller agrees to not solicit bids or proposals for any of the Purchased Leases prior to the conclusion of the hearing on the Approval Motion. In the event any person or entity submits a bid or other proposal for any of the Purchased Leases (an "Alternative Proposal"), Seller shall notify BAM as soon as practicable, indicating in such notice whether Seller is entertaining the Alternative Proposal. If Seller notifies BAM that Seller is entertaining an Alternative Proposal, this Letter Agreement will automatically terminate unless BAM otherwise notifies Seller in writing.

If the foregoing accurately sets forth your agreement, please sign this Letter Agreement and return the fully executed copy to me. Any questions you may have regarding our proposal may be directed to my attention at (205) 909-3540 (office) or (205) 821-2229 (mobile).

Sincerely,

Books-A-Million, Inc.

By: _____
Jay Turner, VP


Accepted and Agreed this___ day of August, 2011

Borders Group, Inc.

By:_____
    Name:
    Title:

Borders, Inc.

By:_____
    Name:
    Title:

# Exhibit A

## Purchased Leases

| Store # | City | Base Price | Cure Costs | Total |
|---|---|---|---|---|
| 125 | Bangor, ME | $34,584 | $19,780 | $54,364 |
| 136 | Canton, OH | $77,565 | $26,238 | $103,803 |
| 89 | Columbia, MD | $45,394 | $0 | $45,394 |
| 340 | Concord, NH | $62,363 | $25,588 | $87,951 |
| 292 | Davenport, IA | $41,629 | $0 | $41,629 |
| 138 | Eau Claire, WI | $41,114 | $0 | $41,114 |
| 334 | Edwardsville, IL | $42,952 | $0 | $42,952 |
| 193 | Mays Landing, NJ | $42,400 | $13,183 | $55,583 |
| 133 | Portland, ME | $150,705 | $18,052 | $168,757 |
| 369 | Rapid City, SD | $42,566 | $0 | $42,566 |
| 442 | Scranton, PA | $49,874 | $0 | $49,874 |
| 168 | Traverse City, MI | $34,252 | $37,420 | $71,672 |
| 524 | Waterford, CT | $46,497 | $23,283 | $69,780 |
| 394 | West Lebanon, NH | $38,155 | $20,665 | $58,820 |
| | | $750,050 | $184,209 | $934,259 |