**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| BORDERS GROUP, INC., *et al.*,[1] | Case No. 11-10614 (MG) |
| Debtors. | (Jointly Administered) |

### ORDER AUTHORIZING DEBTORS TO ENTER INTO SALE TRANSACTION AND TO ASSUME AND ASSIGN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY TO BOOKS-A-MILLION, INC.

Upon the Motion,[2] dated August 24, 2011, of Borders Group, Inc. ("BGI") and its debtor subsidiaries, including Borders, Inc., as debtors and debtors in possession (collectively, the "Debtors") for an order pursuant to sections 365(a) and 363(b) of the Bankruptcy Code and Rules 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the assumption of the certain leases and all amendments thereto, and authorizing the Debtors to enter into the Letter Agreement (annexed as Exhibit B to the Motion), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having provided notice of the Motion and Hearing (as defined below) to the Court and the Court having held a hearing to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

[2] Capitalized terms not defined herein shall have the same meaning as in the Motion.

1

consider the requested relief (the "Hearing"); and upon the record of the Hearing, and all of the proceedings before the Court, the Court finds and determines that the requested relief is in the best interests of the Debtors, their estates, creditors, and all parties in interest; the Debtors have provided due and proper notice of the Motion and Hearing and no further notice is necessary; the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested herein; IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. All objections with regard to the relief sought in the Motion as it pertains to the Assigned Leases, that have not been withdrawn, waived, or settled, are overruled on the merits.

3. Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized (a) to assume the leases identified on **Exhibit 1** (the "Assigned Leases"), attached hereto, and to assign the Assigned Leases to the BAM, which assignment shall take place on and be effective as of the Delivery Date (as defined herein) and (b) to enter into the Assignment Agreement with BAM substantially in the form attached hereto as **Exhibit 2**.

4. The consummation of the transaction with respect to the Assigned Leases contemplated hereunder shall take place on the date of delivery of the subject leased premises to BAM, in broom clean condition following conclusion of the Store Closing Sale for the premises related to the applicable Assigned Lease pursuant to the GOB Order (the "Delivery Date"), provided, however, that the Delivery Date shall occur no earlier than September 20, 2011 and no later than November 14, 2011. Within five business days of the Delivery Date, BAM shall provide notice of the Delivery Date to the applicable landlords for the Assigned Leases and shall file on the docket a notice showing the Delivery Date for each Assigned Lease.

5. By no later than the Delivery Date, BAM shall pay to the Debtors, in cash or otherwise immediately available funds, the Base Price, which is the amount set forth in **Exhibit 1**, plus the amount of the Cure Costs listed on Exhibit 1 (together with the Base Price, the "Consideration"), which Cure Cost amounts the Debtors shall pay to the applicable landlord within five (5) business days after the Delivery Date. In addition, subject to paragraph 7 hereof, absent further order of this Court, the Debtors shall pay (to the extent not already paid) on the Delivery Date an estimated amount of real estate taxes, and common area maintenance and other periodic charges due under the Assigned Leases (collectively, "CAM Charges") for the period from the Commencement Date through and including September 30, 2011 (the real estate taxes and CAM Charges collectively, the "Post-Petition Charges") to be agreed upon by the Debtors, the Committee, BAM and each respective landlord for each Assigned Lease, which agreement shall be reached on or before September 1, 2011. To the extent the amounts paid by the Debtors in accordance with the preceding sentence are also included in the Cure Costs on Exhibit 1, then the Cure Costs listed on Exhibit 1 shall be reduced accordingly. Notwithstanding anything else hereto to the contrary, in the event the amount of Post-Petition Charges with respect to a particular Assigned Lease supports the Debtors' business judgment to exclude such lease from this transaction as compared to assigning such lease to BAM, then the Debtors may choose on or before September 1, 2011, to refuse to assign such Assigned Lease to BAM by providing written notice of such to BAM and the affected landlord(s) on or before September 1, 2011, in which case such Assigned Lease shall not be assumed and assigned and shall be deemed excluded from the provisions of this Order and Exhibit 1 and 2 hereto. The Debtors shall file on the docket by September 2, 2011, a notice indicating which of the Assigned Leases are to be assigned to BAM and which will not be assigned to BAM.

6. Upon the entry of this Order and payment of the Cure Costs as provided for in paragraph 5 listed on **Exhibit 1** hereto, subject to paragraph 7 hereof, (a) all defaults under the Assigned Leases through the Delivery Date shall be deemed cured, and (b) in accordance with section 365(k) of the Bankruptcy Code, and except as provided in Paragraph 7, (i) no other amounts will be owed by Debtors or their estates with respect to the Assigned Leases with respect to all amounts or claims arising out of, or otherwise related to, the Assigned Leases that were known or could have been known or asserted through reasonable due diligence against the Debtors or their estates by the date hereof, (ii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors or their estates that any additional amounts are due or defaults exist under the Assigned Leases with respect to all amounts or claims arising out of, or otherwise related to, the Assigned Leases that were known or could have been known or asserted through reasonable due diligence against the Debtors or their estates by the date hereof, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or BAM that any additional amounts are due or defaults exist that arose or accrued, relate to, or are attributable to the period prior to the Delivery Date with respect to all amounts or claims arising out of, or otherwise related to, the Assigned Leases that were known or could have been known or asserted through reasonable due diligence against the Debtors or their estates by the date hereof and (iv) any and all persons or entities shall be forever barred and estopped from contending that any Assigned Lease is not in full force and effect in accordance with its terms as of the Delivery Date.

7. The Debtors shall be responsible for the payment of all obligations arising under the Assigned Leases from the Commencement Date through the Delivery Date (as has previously been ordered by this Court, including in the GOB Order), including the Cure Costs set

forth on Exhibit 1 hereto, which the Debtors shall pay to the applicable landlord within five (5) business days after the Delivery Date, obligations arising under each of the Assigned Leases from and after the Delivery Date shall be the responsibility of BAM.  For avoidance of doubt, BAM shall not be responsible for any amounts that arose or accrued, relate to, or are attributable to the period prior to the Delivery Date (whether before or after the Commencement Date), regardless of when billed, even in the event the Debtors are unable or unwilling to pay such amounts.  The Debtors, BAM and each respective landlord of an Assigned Lease shall, in the ordinary course, perform a year-end reconciliation for calendar year 2011 for CAM Charges and real estate taxes paid by the Debtors and/or BAM with respect to the Assigned Leases.  If such CAM Charges and/or real estate taxes paid (including with respect to the estimated real estate taxes paid pursuant to paragraph 5 hereof):  (a) exceed the amount determined to be actually due after such reconciliation with respect to an Assigned Lease, the applicable landlord for such Assigned Lease shall make payment to the Debtors' estates, for the period running from the Commencement Date through the Delivery Date, and/or BAM, for the period running from and after the Delivery Date; or (b) are less than the real estate taxes and/or CAM Charges determined to be actually due after such reconciliation with respect to an Assigned Lease, the Debtors, for the period running from the Commencement Date through the Delivery Date, and/or BAM, for the period from and after the Delivery Date, shall pay the difference to the landlord for such Assigned Lease; provided, however, to the extent that the Delivery Date differs from September 30, 2011, the Debtors or BAM shall make payment of the appropriate amount of the estimated real estate taxes and CAM Charges paid pursuant to paragraph 5 hereof to the other to account for such difference.

8. Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assigned Leases, or in applicable nonbankruptcy law, that prohibits, restricts, or conditions the assignment of the Assigned Leases, the Debtors may assign the Assigned Leases to the BAM, and such assignment shall not constitute a default under any Assigned Lease or entitle any landlord under a Assigned Lease to terminate, impose any fee or penalty, or in any way modify such lease.

9. Pursuant to section 363(f) of the Bankruptcy Code, the BAM Transaction as approved hereby shall be free and clear of all liens, claims, encumbrances and interests, <u>provided</u>, <u>however</u>, that pursuant to the Court's *Order Approving Agency Agreement, Store Closing Sales and Related Relief* [Docket No. 1377] entered on July 21, 2011 (the "<u>GOB Order</u>"), (a) prior to the Over Payment Collateral Release Date (as defined in the GOB Order), the Debtors shall deposit the Consideration into a segregated account with the Agent (as defined in the GOB Order) and the Agent's liens on proceeds of the Assigned Leases granted pursuant to the GOB Order and the Agency Agreement (as defined in the GOB Order) shall attach to the Consideration in the same priority, validity and extent that they encumbered such collateral and (b) upon the Over Payment Collateral Release Date, the Agent's liens on the Consideration shall be deemed automatically released and the Agent will immediately disburse the Consideration to the Debtors.

10. Based on the declaration submitted by BAM in support of approval of the BAM Transaction, and the transaction contemplated thereby was entered into by BAM in good faith for purposes of section 363(m) of the Bankruptcy Code, and the sale price (including, without limitation, the Consideration) was not controlled by an agreement among BAM and potential bidders for the Assigned Leases for purposes of section 363(n) of the Bankruptcy Code.

11. This Order shall be effective and enforceable immediately upon entry and shall not be stayed pursuant to Rules 6004(h) and 6006(d).

12. To the extent that any provisions in the Assignment Agreement conflict with this Order, the Order shall govern.

13. The Debtors and their estates are authorized to take all actions and execute all documents necessary or appropriate to effectuate the assumption and assignment of the Assigned Leases consistent with this Order, including, without limitation, to assign to BAM, the Debtors' rights, if any, under any contract or agreement between the Debtors and a party having an interest in the applicable premises superior to the Debtors' current lessor.

14. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

15. In the event an objection is sustained with respect to one of the Assigned Leases, then the Debtors and BAM are authorized to consummate the BAM Transaction with respect to such lease upon subsequently receiving landlord and Committee consent, without further order of the Court.

Dated: August 30, 2011
      New York, New York

                                              **/s/Martin Glenn**
                                                  MARTIN GLENN
                                      United States Bankruptcy Judge

EXHIBIT 1

Purchase Price Allocation and Cure Costs

| Store # | City | Base Price | Cure Costs | Total |
|---|---|---|---|---|
| 89 | Columbia, MD | $43,394 | $2,000 | $45,394 |
| 125 | Bangor, ME | $54,364 | $0 | $54,364 |
| 133 | Portland, ME | $141,206 | $27,551 | $168,757 |
| 136 | Canton, OH | $77,566 | $26,237 | $103,803 |
| 138 | Eau Claire, WI | $38,389 | $2,725 | $41,114 |
| 168 | Traverse City, MI | $13,323 | $68,349 | $71,672 |
| 193 | Mays Landing, NJ | $38,166 | $17,417 | $55,583 |
| 292 | Davenport, IA | $41,064 | $565 | $41,629 |
| 334 | Edwardsville, IL | $42,952 | $0 | $42,952 |
| 340 | Concord, NH | $8,945 | $79,007 | $87,951 |
| 369 | Rapid City, SD | $42,566 | $0 | $42,566 |
| 394 | West Lebanon, NH | $30,232 | $28,588 | $58,820 |
| 442 | Scranton, PA | $8,217 | $41,657 | $49,874 |
| 524 | Waterford, CT | $69,780 | $0 | $69,780 |

**EXHIBIT 2**

ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT (this "Assignment and Assumption"), is entered into as of September 1, 2011, by and between Borders, Inc., a Colorado corporation, Debtor in Possession ("Assignor"), and Books-A-Million, Inc., a Delaware corporation ("Assignee").

RECITALS:

A. _____ ("Landlord") and Assignor, as Tenant, entered into that certain Lease Agreement dated _____ (as amended, the "Lease"), relating to _____ (the "Demised Premises") located at _____.

B. Assignor and its debtor affiliates (collectively, "Debtors") are currently debtors in administratively consolidated cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which are currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), styled and numbered *In re Borders Group, Inc., et al.* (11-10614) (MG).

C. Subject to the satisfaction of the "Conditions" (as defined in Paragraph 6), effective as of the "Delivery Date" (as defined in Paragraph 7), Assignor desires to assign all of its right, title, interest and obligation in to, and under the Lease to Assignee, and Assignee desires to assume, observe and perform all of the Assignor's right, title, interest and obligations in, to, and under the Lease, in accordance with the terms, covenants, and conditions described in this Assignment and Assumption.

NOW, THEREFORE, in consideration of the "Consideration" (as defined in Paragraph 5), the mutual covenants of the parties herein set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Incorporation of Recitals. The Recitals set forth above are hereby incorporated by reference as if fully set forth herein.

2. Assignment. Subject to the satisfaction of the Conditions, effective as of the Delivery Date, (a) Assignor hereby assigns to Assignee all of Assignor's right, title, and interest in the Lease, (b) Assignee hereby accepts such assignment, and (c) Assignor shall deliver possession of the Demised Premises to Assignee in accordance with the terms of Paragraph 7. Any rent and other charges (including, without limitation, annual or base rent, additional rent, Tenant's proportionate share of ad valorem real estate taxes and assessments, utility charges, and Tenant's proportionate share of the costs of maintaining the common areas, in each case which accrue under the Lease for the period from the date of the filing of the Chapter 11 Cases to the Delivery Date), shall be prorated between Assignor and Assignee as of the Delivery Date (with all such rent and charges attributable to the period before the Delivery Date being payable by Assignor and all such rent and charges attributable to the period after the Delivery Date being payable by Assignee), and Assignor's payment of such rent and other charges under the Lease for the month in which the Delivery Date occurs shall be adjusted accordingly. If actual amounts of any real estate taxes and CAM charges are not determinable as of the Delivery Date, then Assignor shall pay Landlord on the Delivery Date an estimated amount of real estate taxes and CAM charges for the period from February 16, 2011 (the "Commencement Date") through and including September 30, 2011 to be agreed upon by Assignor, Assignee, and the Landlord (collectively, the "Post-Petition Charges"). Assignor, Assignee, and the Landlord shall, in the ordinary course, perform a year-end reconciliation for calendar year 2011 for CAM charges paid by Assignor and/or Assignee with respect to the Lease and for the real estate taxes with respect to the premises related to the Lease. If such CAM charges and/or real estate taxes paid (including

with respect to the estimated real estate taxes paid):  (a) exceed the amount determined to be actually due after such reconciliation with respect to the Lease, the Landlord shall make payment to Assignor's estate, for the period running from the Commencement Date through the Delivery Date, and/or to Assignee, for the period running from and after the Delivery Date; or (b) are less than the real estate taxes and/or CAM charges determined to be actually due after such reconciliation with respect to the Lease, Assignor, for the period running from the Commencement Date through the Delivery Date, and/or Assignee, for the period from and after the Delivery Date, shall pay the difference to the Landlord; provided, however, to the extent that the Delivery Date differs from September 30, 2011, Assignor or Assignee shall make payment of the appropriate amount of the estimated real estate taxes paid to the other to account for such difference.

3. Assumption.  Subject to the satisfaction of the Conditions, effective as of the Delivery Date, Assignee hereby assumes all of the terms, covenants, and conditions of the Lease to be satisfied or performed by the Tenant under the Lease (including all such terms, covenants, and conditions to pay the Annual Rent and Additional Rent until the expiration or earlier termination of the Lease), in each case that first arise or accrue and first become due and payable under the Lease from and after the Delivery Date, all with full force and effect as if the Assignee had signed the Lease originally as the Tenant named therein and as a party thereto.  Assignee covenants and agrees that it will recognize Landlord as the Landlord under the Lease in the same manner and to the same extent as if Assignee were the original Tenant thereunder.  In no event shall the Assignee be responsible for any obligations (monetary or otherwise) under the Lease that accrued prior to the Delivery Date, except for the reconciliation amounts set forth in the preceding paragraph.

4. Assignor Released.  Notwithstanding anything contained in the Lease to the contrary, pursuant to Section 365 of the Bankruptcy Code, including, without limitation subsection (k) thereof, this Assignment and Assumption shall operate to release Assignor as of the Delivery Date from any and all obligations arising under or in connection with the Lease, with respect to the period from and after the Delivery Date.

5. Consideration.  In consideration for Assignor's assignment of the Lease to Assignee on the date on which all of the "Conditions" set forth in Paragraphs 6(b) and 6(c) are satisfied, Assignee shall pay to Assignor by wire transfer in accordance with the wire transfer instructions attached hereto as Exhibit B and by this reference made a part hereof, the sum of _____ Dollars ($_____) (the "Consideration"), which shall be comprised of (i) the amounts necessary to pay the cure costs described in Paragraph 9 hereof to Landlord and (ii) any additional consideration agreed to amongst Assignor and Assignee.

6. Conditions.  This Assignment and Assumption is conditioned upon, and shall only take effect upon, the satisfaction of the following conditions precedent (each a "Condition" and, collectively, the "Conditions"):

    (a) Assignee has paid the Consideration to Assignor;

    (b) This Assignment and Assumption has been fully executed by Assignor and Assignee;

    (c) The Bankruptcy Court enters an Order authorizing the Debtors to assume and assign the Lease to the Assignee and approving the Consideration, which Order shall be in form and substance acceptable to Assignee in its sole discretion (the "Approval Order"); without limiting the generality of the foregoing, the Approval Order shall contain (i) a final determination of Cure Costs (defined below) (provided, however, that with respect to real estate taxes of which the Assignor would ordinarily have been responsible for the payment or reimbursement to the landlord with respect to the premises related to the Lease, the payment of such real estate taxes shall be governed by the Approval Order and shall not affect the Delivery Date), (ii) a finding that Assignee purchased the Lease in "good faith," as such term is used in section 363(m) of the Bankruptcy Code, (iii) an injunction against any holder of a claim against the Assignor from asserting, prosecuting or otherwise pursuing such claim against Assignee, except as expressly provided in this Assignment

and Assumption, (iv) a finding that the Lease remains in full force and effect, with all parties to the Leases enjoined from asserting against the Assignee any default, breach, acceleration, assignment fees, increases, or any other fees resulting from the Assignor's assumption and assignment of the Lease to Assignee; and

(d) the Store Closing Sale (as defined in the Approval Order) for the premises related to the Lease shall have been completed pursuant to the GOB Order (as defined in the Approval Order).

7. Possession; Delivery Date. Subject to the satisfaction of the Conditions, Assignor shall deliver possession of the Demised Premises (together with all master keys, alarm codes, all permits, licenses, warranties, guarantees that have not yet expired, plans and specifications, all to the extent in Tenant's possession), to Assignee on the Delivery Date on an "as is, where is" basis and, except as otherwise provided herein, without any representation or warranty from Assignor whatsoever, and Assignee hereby releases Assignor from and against all claims, liability, cost, loss, damage, or expense arising out of the condition of the Demised Premises on the Delivery Date. As used herein, the phrase "Delivery Date" shall mean the first business date immediately following the date on which all of the Conditions have been satisfied; provided, however, that the Delivery Date shall be no earlier than September 20, 2011 and shall be no later than November 14, 2011 (in either case, unless Assignor and Assignee otherwise agree in their sole discretion). Any property of Assignor remaining in the Demised Premises after the Delivery Date shall be deemed abandoned by Tenant pursuant to the procedures, rights and remedies set forth in the Bankruptcy Court order dated July 21, 2011 [Docket No. 1377], which, among other things, authorized the Debtors to engage liquidators to conduct going out of business sales.

8. Condemnation and Casualty.

(a) Condemnation. If after the full execution and delivery of this Assignment and Assumption and prior to the Delivery Date, any entity having the power of condemnation initiates proceedings to acquire by eminent domain or condemnation any material portion of or interest in the Demised Premises (a "Taking"), Assignor shall promptly notify Assignee, and Assignee shall have the right to terminate this Assignment and Assumption by notice to Assignor and Landlord given prior to the earlier of (a) twenty (20) days from the date Assignee receives the foregoing notice from Assignor and (b) the Delivery Date. If Assignee does not elect to so terminate this Assignment and Assumption, then this Assignment and Assumption shall not terminate, and provided that the Delivery Date occurs, Assignee shall be entitled to receive any award payable to Tenant as the result of the Taking, subject to the terms of the Lease.

(b) Casualty. If after the full execution and delivery of this Assignment and Assumption and prior to the Delivery Date, all or a material portion of the Demised Premises is materially damaged or destroyed by any cause ("Casualty"), Assignor shall promptly notify Assignee and Assignee shall have the right to terminate this Assignment and Assumption by notice to Assignor given prior to the earlier of (a) twenty (20) days from the date Assignee receives the foregoing notice from Assignor and (b) the Delivery Date. If Assignee does not elect to terminate this Assignment and Assumption, then this Assignment and Assumption shall not terminate, and provided that the Delivery Date occurs, Assignor shall pay to Assignee all insurance proceeds payable to Assignor with respect to the Casualty, subject to the terms of the Lease.

9 Cure Costs. In addition to performing its obligations under Paragraph 2 of this Assignment and Assumption, Assignor shall cure any defaults that would or might otherwise have to be cured pursuant to section 365(b)(1) of the Bankruptcy Code (the "Cure Costs") in connection with the assumption of the Lease, which such Cure Costs shall be set forth in the Approval Order.

10. <u>Representations of Assignor</u>.  Notwithstanding anything to the contrary in this Assignment and Assumption, Assignor hereby represents and warrants the following:

    (a) The documents which are referenced in, and/or which are attached hereto as, <u>Exhibit A</u> constitute a true and complete copy of the Lease (including all amendments or modifications thereto), and constitute all written agreements between Landlord and Assignor, as Tenant) affecting the Demised Premises.

    (b) The Lease is in full force and effect and neither the Landlord nor the Assignor has served any notice of default under the Lease to the other party.

    (c) There is no defense or counterclaim to the enforcement of the Lease, Assignor is not in breach of any of its obligations or covenants, and has not breached any of its representations or warranties, under the Lease, except as to any ipso facto or other defaults negated by the Bankruptcy Code or the Approval Order.

    (d) Assignee is not entitled to any reduction, offset or abatement of the rent (or other charges) payable under the Lease.

    (e) Except for the Cure Costs identified in Paragraph 9 above, as of _____, 2011, all amounts due by the Assignor to the Landlord have been paid in full.

    (f) The amount of the Security Deposit presently held under the Lease is $_____.

    (g) Assignor hereby confirms that, except as provided in this Assignment and Assumption, no other consents are required or necessary for purposes of binding the Assignor to the terms of this Assignment and Assumption (or in order for this Assignment and Assumption to become effective).

11. <u>Notices</u>.  All notices, requests, demands, and other communications hereunder shall be in writing and shall be given by (a) established express delivery service, such as Federal Express, which maintains delivery records, or (b) certified mail with signed return receipt, or (c) hand delivery to the parties at the following addresses, or to such other or additional persons or at such other address as the parties may designate by notice in the above manner:

    To Assignor:        Borders, Inc.
                        100 Phoenix Drive
                        Ann Arbor, MI  48108
                        Attn: Legal Department *and* Chief Restructuring Officer

    To Assignee:        Books-A-Million, Inc.
                        402 Industrial Lane
                        Birmingham, AL 35211
                        Attention: _____

12. <u>Brokers</u>.  Each party represents and warrants that, except for DJM Realty, LLC (whose fee or commission shall be paid by Assignor pursuant to separate agreement), it dealt with no broker or brokers in connection with the negotiation, execution and delivery of this Assignment and Assumption.  Each party shall, and does hereby, indemnify, defend and save the other parties harmless from and against any losses, damages, penalties, claims or demands of whatsoever nature arising from a breach of its foregoing representation

including, without limitation, reasonable attorneys' fees and expenses. The foregoing indemnity shall survive the Assignment and Assumption and the Delivery Date.

13. <u>Authority.</u> Each of the parties hereto represents and warrants to the other the following: (a) it has the authority to enter into this Assignment and Assumption; and (b) the person(s) executing this Assignment and Assumption on its behalf are duly authorized to do so and this Assignment and Assumption is a legally binding obligation.

14. <u>Entire Understanding</u>. Except as set forth in the Order of the Bankruptcy Court authorizing the Debtors to enter into this Assignment and Assumption, this Assignment and Assumption sets forth the entire understanding of the parties in connection with the subject matter hereof. None of the parties hereto has made any statement, representation, or warranty in connection herewith which has been relied upon by any other party hereto or which has been an inducement for any party to enter into this Assignment and Assumption, except as expressly set forth herein. It is expressly understood and agreed that this Assignment and Assumption may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a writing duly executed by authorized representatives of the parties hereto. The parties agree that all agreements are merged into this Assignment and Assumption which alone sets forth the understanding of the parties, and that they will make no claim at any time that this Assignment and Assumption has been altered or modified or otherwise changed by oral communication of any kind or character.

15. <u>Binding Effect</u>. The terms and conditions of this Assignment and Assumption shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, successors and assigns.

16. <u>Headings</u>. This section and paragraph heading contained in this Assignment and Assumption are for reference purposes only and shall not affect in any way the meaning or interpretation of this Assignment and Assumption.

17. <u>Counterparts</u>. This Assignment and Assumption may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall together constitute one and the same instrument. The parties shall be bound by their signatures transmitted by facsimile or electronic mail (in .pdf format) as if such signatures were original "ink" signatures. They further agree to forward original "ink" signatures promptly following the transmission of facsimile or electronic signatures. This Assignment and Assumption shall be enforceable with facsimile or electronic signatures if one or more parties does not deliver an original signature.

18. <u>Governing Law;</u> This Assignment and Assumption shall be governed and construed in accordance with the laws of the state of New York without regard to conflicts of law principals thereof, except where governed by the Bankruptcy Code.

19. <u>Consent to Jurisdiction</u>. Each of the parties hereto irrevocably and unconditionally submits, for itself and its properties, to the exclusive jurisdiction of the Bankruptcy Court, in any action or proceeding arising out of or relating to this Assignment and Assumption.

20. <u>WAIVER OF JURY TRIAL</u>. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT AND ASSUMPTION. EACH PARTY HERETO ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS ASSIGNMENT AND ASSUMPTION, BY, AMONG OTHER THINGS, THE MUTUAL WAIVER AND CERTIFICATIONS IN THIS PARAGRAPH 20.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption to be made this _____ day of _____, 2011.

ASSIGNOR:

BORDERS, INC., a Colorado corporation,
Debtor in Possession


By: _____

Its: _____

ASSIGNEE:

BOOKS-A-MILLION, INC., a Delaware corporation


By: _____

Its: _____

# EXHIBIT A

TRUE AND CORRECT COPY OF
LEASE AND ALL AMENDMENTS

# EXHIBIT B

TENANT'S WIRE INSTRUCTIONS