Michael St. Patrick Baxter
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5164
Facsimile: (202) 778-5164
*Consumer Privacy Ombudsman*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.*,[1] | **Case No. 11-10614 (MG)** |
| Debtors. | **(Jointly Administered)** |

**SUPPLEMENTAL REPORT OF MICHAEL ST. PATRICK BAXTER
CONSUMER PRIVACY OMBUDSMAN**

Michael St. Patrick Baxter, the consumer privacy ombudsman in these cases ("**Ombudsman**"), files this supplemental report ("**Supplemental Report**") in connection with the recent sale and transfer of personally identifiable information ("**PII**") of customers of Borders Group, Inc., and its debtor subsidiaries (collectively, "**Debtor**") to Barnes & Noble, Inc. ("**Buyer**"). The Ombudsman believes Buyer omitted material information from the opt-out notice it sent via e-mail to all Borders customers on or about September 30, 2011 ("**Opt-Out Notice**"). The Opt-Out Notice did not disclose the extent of the PII transferred to Buyer, and it

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Borders Group, Inc. (4588), Borders International Services, Inc. (5075), Borders, Inc. (4285), Borders Direct, LLC (0084), Borders Properties, Inc. (7978), Borders Online, Inc. (8425), Borders Online, LLC (8996), and BOP (UK) Limited.

failed to inform recipients that the opt-out opportunity was required by order of this Court (rather than the result of Buyer's generosity).

1. On September 21, 2011, the Ombudsman filed his report with this Court. The Ombudsman's report concluded, inter alia, that PII collected by Debtor on or before May 27, 2008, could only be transferred to Buyer with the affirmative consent of the affected consumers.

2. At this Court's request, the Ombudsman worked with the parties to negotiate the privacy related terms of Debtor's sale of PII to Buyer (**"Sale"**). The negotiated privacy related terms incorporated into the order approving the Sale (**"Sale Order"**) permitted a transfer of PII subject to an opt-out mechanism (i.e., transferred PII may be retained and used by Buyer unless the customer opts out) rather than requiring affirmative opt-in consent before the transfer of PII to Buyer. It was clear to the Ombudsman that a robust and meaningful opt-out was critical to reaching the negotiated privacy related terms of the Sale.

3. The negotiated terms were incorporated in Exhibit 3 to the Sale Order. The Sale Order required Buyer to, among other things, provide all Borders customers with clear and conspicuous notice of the transfer of PII and a 15-day right to opt out.[2] The Buyer must purge PII of customers who opt out. On September 26, 2011, this Court approved the Sale. All PII was transferred to Buyer on the closing of the Sale.

4. On September 28, 2011, Buyer provided the Ombudsman with a draft of the Opt-Out Notice. See **Exhibit A** attached hereto (September 28, 2011 e-mail from Paul Zumbro to Michael Baxter).

---

[2] "The opt-out notice must clearly and conspicuously disclose (a) the transfer of the PII and the opportunity to opt out; (b) the PII will be subject to Barnes & Noble privacy policy on the date of the transfer (which is subject by its terms to change from time to time); and (c) the subject matter of DVD and other video purchases will be part of the transferred information."

5. The Ombudsman believed that the draft of the Opt-Out Notice was deficient in several material respects, and, as a result, that it failed to provide important information to enable Borders customers to make an informed decision about whether to opt out. The Ombudsman was contacted by a representative of the New York Attorney General's Office, who shared the Ombudsman's concerns. In response to an inquiry from the Ombudsman, the staff of the Federal Trade Commission expressed similar concerns.

6. The Ombudsman informed Buyer of these concerns and proposed limited changes to the draft Opt-Out Notice to address the deficiencies. See **Exhibit B** attached hereto (September 28, 2011 e-mail from Michael Baxter to Paul Zumbro).

7. Buyer refused to accept two important changes proposed by the Ombudsman.[3] See **Exhibit C** attached hereto (September 30, 2011 e-mail from Paul Zumbro to Michael Baxter). The Ombudsman informed Buyer that (a) the Ombudsman believed that, without the two proposed changes, the Opt-Out Notice was materially deficient; (b) if the Opt-Out Notice were sent without the proposed changes, the Ombudsman intended to bring this matter to the attention of this Court; and (c) if the Opt-Out Notice were sent without the proposed changes, it was possible that Buyer may have to send a second opt-out notice to address the deficiencies of the first notice.

8. On September 30, 2011, Buyer advised the Ombudsman that it believed the Opt-Out Notice (without the two proposed changes) complied with the Sale Order and that the transaction had closed. A copy of an actual Opt-Out Notice received by a former Borders customer is attached as **Exhibit D**.

---

[3] Buyer agreed to include a subject-matter line in the Opt-Out Notice and to put the opt-out deadline in boldface type, but refused to include two changes discussed below in paragraphs 10 and 11.

9. For the reasons discussed in paragraphs 10 and 11 below, the Ombudsman believes that the Opt-Out Notice did not include important information to enable Borders customers to make an informed decision whether to opt out.

10. First, the Opt-Out Notice failed to alert Borders customers that the transferred PII included not only customers' names but e-mail addresses and purchase histories. The Opt-Out Notice merely refers to the Borders "customer list."[4] The Ombudsman believes that a Borders customer receiving the Opt-Out Notice referring only to the Borders "customer list" may reasonably assume that only his or her "name" (and perhaps e-mail address) was transferred to Buyer. But much more PII was transferred to Buyer, including each customer's purchase history.[5] The Ombudsman believes that this information is both relevant and material to a customer's decision whether to opt out and have his or her PII purged by Buyer. The right to opt out is only meaningful if customers are provided with sufficient information to make an informed decision. Buyer's failure to provide such relevant and material information in the Opt-Out Notice may defeat the very purpose of the notice.

11. Second, the Opt-Out Notice failed to inform Borders customer that the right to opt out was ordered by the Bankruptcy Court. Buyer's failure to include this important information in the Opt-Out Notice conveys the incorrect impression that the right to opt out is a privilege offered to Borders customers out of the generosity of Buyer, rather than a right granted

---

[4] Exhibit 3 to the Sale Order requires Buyer to "conspicuously disclose" the transfer of "PII," which is defined in paragraph Q of the Sale Order as "personally identifiable information," as defined in section 101(41A) of the Bankruptcy Code. Exhibit 3 nowhere refers to a "customer list."

[5] The Opt-Out Notice also indicates that "the subject matter of your DVD and other video purchases will be part of the transferred information." However, by referring only to DVD and video purchase history, and not all purchase history, the Opt-Out Notice incorrectly suggests that the transferred purchase history is limited to DVD and video purchases.

- 4 -

to them by this Court's order. Because the inaction of Borders customers is tantamount to their consent to Buyer's retention and use of their transferred PII, the perceived benevolence of Buyer may influence customers' decisions. The Ombudsman believes the fact that the opt-out right was required by this Court's order is relevant and material information that is necessary for an informed decision by Borders customers.

## **CONCLUSION**

12. For the reasons discussed above, the Ombudsman believes that the Opt-Out Notice did not include important information to enable Borders customers to make an informed decision whether to opt out. The Ombudsman believes that he has a responsibility to inform the Court of this development, and, accordingly, is filing this Supplement Report.

Respectfully submitted,

/s/ Michael St. Patrick Baxter
Michael St. Patrick Baxter
*Consumer Privacy Ombudsman*

Dated: October 3, 2011
      Washington, D.C.