David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:   (212) 506-1700
Facsimile:    (212) 506-1800

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.,*[1] | **Case No. 11-10614 (MG)** |
| **Debtors.** | **(Jointly Administered)** |

**DEBTORS' MOTION FOR ORDER PURSUANT TO SECTIONS 363 AND
105 OF THE BANKRUPTCY CODE AND RULES 2002 AND 6004 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE APPROVING AND AUTHORIZING THE
SALE OF A PERPETUAL, ROYALTY FREE LICENSE OF THE TRADEMARKS
FORMERLY OWNED BY THE DEBTORS IN SINGAPORE TO POPULAR
HOLDINGS, INC. AS THE HIGHEST AND BEST BIDDER FREE AND
CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES
AND WAIVING THE REQUIREMENTS OF BANKRUPTCY RULE 6004(H)**

TO:   THE HONORABLE MARTIN GLENN,
       UNITED STATES BANKRUPTCY JUDGE:

Borders Group, Inc. and its affiliated debtors, as debtors and debtors in possession

(collectively, the "Debtors"), respectfully submit this motion (the "Motion") for orders pursuant

to sections 363 and 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rules

2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

Approving and Authorizing the Sale of a Perpetual, Royalty Free License of the Trademarks Formerly Owned by the Debtors in Singapore to Popular Holdings, Inc. ("Popular") as the Highest and Best Bidder Free and Clear of all Liens, Interests, Claims and Encumbrances and waiving the requirements of Bankruptcy Rule 6004(h).  In support of the Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

In connection with the Debtors' continuing efforts to maximize the value of their assets, the Debtors previously sought approval of a sale of the Debtors' intellectual property assets (the "IP Assets") after conducting an auction.  By order dated September 27, 2011 (the "Sale Order"),[2] this Court authorized the sale  (the "IP Sale") of certain of the Debtors' IP Assets to Barnes & Noble, Inc. ("B&N"), along with licenses to certain licensees to use in certain foreign jurisdictions the trademarks (the "Marks") conveyed to B&N by the Debtors under the terms of the Purchase Agreement and the Sale Order.  Expressly carved out of the Sale Order, however, was a license to use the Marks in Singapore (the "Singapore License").  Although Popular was the winning bidder at such auction, Popular, B&N and the Debtors (collectively, the "Parties") were unable to reach an agreement on the license in advance of the entry of the Sale Order. Since the Sale Order's entry, however, the Parties have been able to reach final agreement on substantially the same terms as the other licenses approved by the Sale Order.  Accordingly, the Debtors respectfully request entry of an order authorizing the sale of the Singapore License to Popular under substantially the same terms and conditions as the other licenses sold in the IP Sale.

---

[2]   *Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure Approving the Sale of Certain of the Debtors' IP Assets Free and Clear of all Liens, Interests, Claims and Encumbrances and the Rejection of Certain Executory Contracts Related Thereto* [Docket No. 1876].

2347836v3
10/12/2011 2:32 PM

## BACKGROUND

1.      On February 16, 2011 (the "Commencement Date"), each of the Debtors

commenced a voluntary case under the Bankruptcy Code in the United States Bankruptcy Court

for the Southern District of New York (the "Court").  The Debtors are authorized to operate their

business and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered pursuant to

Bankruptcy Rule 1015(b).

2.      On February 24, 2011, the Office of the United States Trustee appointed the

official committee of unsecured creditors (the "Committee").[3]

## JURISDICTION

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are

sections 332, 363 and 105 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

## BACKGROUND

**A.      The Store Closing Motion.**

4.      On June 30, 2011, the Debtors filed their *Motion for an Order Pursuant to*

*Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the*

*Federal Rules of Bankruptcy Procedure (I) Approving the Sale of Substantially All of the*

*Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and the*

*Assumption and Assignment of Executory Contracts and Unexpired Leases Related Thereto, (II)*

*Approving the Bidding Procedures and Break-Up Fee, and (III) Granting Related Relief.*[4]  On

---

[3]      [Docket No. 156].

[4]      [Docket No. 1130].

July 14, 2011, the Court entered the *Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure Approving Sale Procedures in Connection with the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests*,[5] which approved sales procedures for the sale of substantially all of the Debtors' assets, but specifically excluded, among other assets, their intellectual property and related interests.  On July 21, 2011, the Court entered the *Order Approving Agency Agreement, Store Closing Sales and Related Relief*,[6] pursuant to which the Court authorized the Debtors to enter into the Agency Agreement (as modified, the "Agency Agreement") with Hilco Merchant Resources, LLC, SB Capital Group, LLC, Tiger Capital Group, LLC, Gordon Brothers Retail Partners, LLC and Great American Group, LLC (collectively, the "Agent").  The Agent, on behalf of the Debtors, has liquidated all remaining store locations.

**B.     The IP Sale.**

5.     On or about July 27, 2011, the Debtors filed the *Debtors' Motion for Orders Pursuant to Sections 332, 363, 365 and 105 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure:  (I) Approving Bidding Procedures With Respect to Sale of Certain IP Assets, Including Expense Reimbursement for a Stalking Horse Bidder, Setting the Sale Hearing Date, and Appointing a Consumer Privacy Ombudsman; and (II) Approving and Authorizing the Sale of IP Assets to the Highest or Best Bidder Free and Clear of All Liens, Interests, Claims and Encumbrances and the Assumption and Assignment of Certain Related Executory Contracts and Waiving the Requirements of Bankruptcy Rules*

---

[5]     [Docket No. 1253].

[6]     [Docket No. 1377].

2347836v3
10/12/2011 2:32 PM

*6004(h) and 6006(d)*,[7] pursuant to which, among other things, the Debtors sought authority to conduct a bidding process and auction for the sale of the IP Assets and the approval of such sale at a final hearing.

6.    On or about August 10, 2011, this Court entered the *Order Pursuant to Sections 332, 363, 365 and 105 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure Approving Bidding Procedures in Connection With the Sale of the Debtors' IP Assets Free and Clear of All Liens, Interests, Claims and Encumbrances*,[8] pursuant to which the Court, among other things, approved such bidding and auction process.

7.    In connection with such bidding process, Streambank LLC, the Debtors' advisor in connection with the sale or disposition of the Debtors' IP Assets, marketed the IP Assets. Streambank emailed or called several thousand potential buyers advising them of the sale of the Assets. Streambank had an exchange of correspondence, meetings or telephone conversations with one hundred and nine of the entities solicited, and forty-eight potential buyers ultimately executed Confidentiality Agreements and were given access to the data room. Ultimately, the Debtors received a total of fifteen qualified bids from thirteen different bidders to acquire some or all of the IP Assets.

8.    On September 14, 2011, the Debtors conducted an auction of the IP Assets (the "Auction"), separating the assets into numerous lots. Ultimately, B&N acquired most of the IP Assets with a winning bid of $13.9 million. Several other entities were the winning bidders for perpetual, royalty free licenses to the Debtors' Marks in certain foreign jurisdictions, bidding,

---

[7]    [Docket No. 1401].

[8]    [Docket No. 1513].

collectively, $1,875,000 for such licenses, which includes Popular's winning bid for such a

license in Singapore in the amount of $100,000.[9]

9.      Subsequent to the Auction, the Debtors were able reach agreement with B&N on

an asset purchase agreement, and the Debtors, B&N and the winning bidders for the licenses

other than Popular were able to reach agreement on a form of license agreement and an agreed

order.  However, B&N, Popular and the Debtors were unable, at that time, to reach agreement.

10.      On or about September 27, 2011, this Court entered the Sale Order, which, among

other things, approved the sale of certain of the Debtors' IP Assets to B&N and perpetual,

royalty free licenses to use the Marks in certain foreign jurisdictions excluding Singapore (the

"Other Foreign Licenses"), and expressly granted the Debtors the continued right to seek to sell a

license to use the Marks in Singapore.  A copy of the Sale Order without exhibits is attached

hereto as **Exhibit A**.  A copy of the form of Other Foreign Licenses, which was attached to the

IP Sale Order as exhibit 2, is attached hereto as **Exhibit B**.

11.      Since the entry of the IP Sale Order, Popular, B&N and the Debtors have

continued negotiations and have reached agreement for the sale of the Singapore License to

Popular, agreeing on the form of the Singapore License, which form is not materially different

than the form of the Other Foreign Licenses and requires, among other things, payment by

Popular to the Debtors of the same amount ($100,000) as Popular bid at the Auction.  The

Committee and B&N have no objection to the relief requested.  A copy of the form of the

Singapore License is attached hereto as **Exhibit C**.

---

[9]    Additional details concerning the marketing of the IP Assets and the Auction are contained in the *Declaration of David Peress Providing Report With Respect to Auction of Debtors' Intellectual Property* [Docket No. 1849], which is incorporated herein by reference.

2347836v3
10/12/2011 2:32 PM

**RELIEF REQUESTED**

12.     By this Motion, the Debtors request the entry of an order (the "Singapore Sale Order") approving and authorizing the sale of the Singapore License to Popular, in the form of Exhibit C, free and clear of all liens, interests, claims and encumbrances and on substantially the same terms and conditions as was approved in the Sale Order with respect to the Other Foreign Licenses and waiving the requirements of Bankruptcy Rule 6004.  A copy of the proposed Singapore Sale Order is annexed hereto as **Exhibit D**.

**ARGUMENT**

**A.     The Court Should Approve The Relief Requested As A
Sound Exercise Of The Debtors' Business Judgment.**

13.     The Debtors are in the midst of liquidating their assets, having already closed their stores and completed the sale of their on-line business to B&N.  In connection with such sale to B&N, however, the Debtors reserved the right to sell the Singapore License.  Since the Sale Order was issued, the Parties reached agreement with respect to certain licensing issues and agreed on the form of Singapore License, which includes a payment to the Debtors in the same amount as was bid by Popular at the Auction, an amount which represented the highest and best bid for the Singapore License.[10]  Given the closing and/or sale of the Debtors' businesses, the value of the Marks in Singapore are deteriorating.  Accordingly, Popular is anxious to close on the Singapore License as soon as practicable.

14.     Section 363(b)(l) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To sell property under section 363(b), the Debtors must demonstrate to the Court a legitimate business justification for the proposed

---

[10]     Popular was the only bidder for the standalone Singapore License.

action.  *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

1063, 1071 (2d Cir. 1983).  "Where the debtor articulates a reasonable basis for its business

decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not

entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-*

*Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  When a

valid business justification exists, the law vests the debtor's decision to use property out of the

ordinary course of business with a strong presumption that "in making a business decision the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that

the action taken was in the best interests of the company."  *In re Integrated Res., Inc.*, 147 B.R.

at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

15.     The Debtors believe that sale of the Singapore License to Popular as requested

herein will allow the Debtors to maximize the value of the Singapore License and is consistent

with the other licenses approved by this Court under the Sale Order.  Moreover, given the

vigorous marketing process and the results of the Auction, the Debtors believe that the price to

be paid to the Debtors by Popular in exchange for the Singapore License represents the highest

and best value for the Singapore License  B&N has agreed to enter into an agreement with

Popular in the form attached hereto as Exhibit C regarding the Singapore License.

**B.      Sale Free And Clear Of Liens, Claims, Encumbrances**
**And Interests And Distribution Of Proceeds.**

16.     The Debtors seek to sell the Singapore License free and clear of all interests,

including liens, claims, and encumbrances (collectively, "Interests").  Section 363(f) of the

Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the

property if:  (a) applicable nonbankruptcy law permits such a "free and clear" sale; (b) the holder

of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the

value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f). Courts have interpreted the requirements of Section 363(f) to be disjunctive. *In Re Elliot*, 94 B.R. 343 (Bankr. E.D. Pa. 1988). Accordingly, if any of the five conditions set forth in section 363(f) are met, then a debtor is empowered to sell property free and clear of liens. *Id*.

17.    The sale of the Singapore License to Popular will satisfy the requirements of section 363(f). All relevant parties will have sufficient notice and the ability to object to this motion. Accordingly, if a party with an interest in the Singapore License does not timely object to a transaction in accordance with the proposed procedures, the Debtors submit that such party should be deemed to have consented to the Sale within the meaning of section 363(f)(2) of the Bankruptcy Code. *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)).

**C.    Relief Under Bankruptcy Rule 6004(h)**

18.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Rule 6006(d) of the Bankruptcy Rules provides that an Order authorizing . . . [the assignment of] an executory contract . . . under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

19.    Due to the facts of these cases, the Debtors request that the Singapore Sale Order be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) is waived.

2347836v3
10/12/2011 2:32 PM

## NOTICE

20.    No trustee or examiner has been appointed in these chapter 11 cases.  Notice of

this Motion has been given in accordance with this Court's order,[11] dated February 16, 2011,

implementing certain notice and case management procedures.  The Debtors submit that no other

or further notice need be provided.

## NO PRIOR REQUEST

21.    No prior request for the relief sought herein has been made by the Debtors to this

or any other court.

WHEREFORE the Debtors respectfully request that this Court (i) enter the Singapore

Sale Order, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: October 12, 2011
        New York, New York

                                    KASOWITZ, BENSON, TORRES
                                     & FRIEDMAN LLP

                                    By:    /s/ Andrew K. Glenn
                                    David M. Friedman (DFriedman@kasowitz.com)
                                    Andrew K. Glenn (AGlenn@kasowitz.com)
                                    Jeffrey R. Gleit (JGleit@kasowitz.com)
                                    1633 Broadway
                                    New York, New York 10019
                                    Telephone:  (212) 506-1700
                                    Facsimile:   (212) 506-1800

                                    *Attorneys for Debtors*
                                    *and Debtors in Possession*

---

[11]    [Docket No. 64].