**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> BORDERS GROUP, INC., *et al.*, <br><br> Debtors.[1] | **NOT FOR PUBLICATION** <br><br> Chapter 11 <br><br> Case No. 11-10614 (MG) <br><br> (Jointly Administered) |

**MEMORANDUM OPINION APPROVING JEFFERIES & COMPANY, INC.'S APPLICATION FOR FINAL ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED**

*A P P E A R A N C E S:*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Attorneys for Borders Group, Inc.*
1633 Broadway
New York, New York 10019
By:   David M. Friedman, Esq.
      Andrew Glenn, Esq.
      Jeffrey R. Gleit, Esq.

LOWENSTEIN SANDLER PC
*Attorneys for the Official Committee of Unsecured Creditors*
65 Livingston Avenue
Roseland, New Jersey 07068
By:   Bruce S. Nathan, Esq.
      Bruce Buechler, Esq.
      Paul Kizel, Esq.
      Timothy R. Wheeler, Esq.

SNR DENTON
*Attorneys for Jefferies & Company, Inc.*
233 South Wacker Drive #7800
Chicago, Illinois 60606
By:   Thomas A. Labuda, Jr., Esq.

---

[1]   The "Debtors" are: Borders Group, Inc.; Borders International Services, Inc.; Borders, Inc.; Borders Direct, LLC; Borders Properties, Inc.; Borders Online, Inc.; Borders Online, LLC; and BGP (UK) Limited.

1

11-10614-mg    Doc 2261    Filed 12/05/11    Entered 12/05/11 11:49:43    Main Document
                                        Pg 2 of 10

TRACY HOPE DAVIS
*United States Trustee for Region 2*
22 Whitehall Street, 21st Floor
New York, New York 10004
By:   Paul K. Schwartzberg, Esq.
         Susan Golden, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Final Application of Jefferies & Company, Inc., Investment Banker and Financial Advisor to the Debtors for Final Allowance of Compensation and for the Reimbursement of Expenses for Services Rendered During the Period from February 16, 2011 Through August 31, 2011* (the "Final Fee Application").  (ECF Doc. # 2033.)  Through the Final Fee Application, Jefferies & Company, Inc. ("Jefferies") seeks entry of an order (i) granting final allowance and award of compensation for professional services rendered from February 16, 2011 through August 31, 2011 (the "Final Fee Period"), consisting of fees in the amount of $2,291,889.88, plus reimbursement of actual and necessary expenses incurred by Jefferies during the Final Fee Period in the amount of $26,669.69, for a total of $2,318,559.57 and (ii) authorizing and directing the Debtors to make payment in respect of 100% of such fees and expenses.  Upon the objection of the United States Trustee (the "UST Objection") (ECF Doc. # 2070), Jefferies agreed to forgo its $200,000 monthly fee for August 2011 and reduce its request for a liquidation fee by $250,000.  Based upon the $450,000 aggregate reduction in fees sought, the United States Trustee (the "UST") did not object to Jefferies' Final Fee Application.  (UST Objection at 9.)  The Debtors support approval of the Final Fee Application, as modified by the agreement with the UST.  (ECF Doc. # 2214 ¶ 14.)

The Official Committee of Unsecured Creditors (the "Committee") filed (i) an objection (the "Objection") (ECF Doc. # 1702) to Jefferies' monthly fee statement for the period July 1,

2

2011 through July 31, 2011 and (ii) a reply (the "Reply") (ECF Doc. # 2165) to Jefferies' response to the Objection, which was contained in the Final Fee Application. The crux of the Committee's argument is that Jefferies is not entitled to any amount as a liquidation fee (the "Liquidation Fee") provided by section 4(b) of the Jefferies Engagement Letter (defined below) and the Jefferies Retention Order (defined below) because Jefferies did not materially contribute to, run, or market a sale of the Debtors' assets. Additionally, the Committee asserts that the Jefferies Retention Order is unclear and does not reflect the intent of the Committee as negotiated.

On November 29, 2011, the Court held a hearing (the "Hearing") on these issues and took the matter under submission. For the reasons discussed below, the Court concludes that the terms of the Jefferies Retention Order are clear and unambiguous, and, therefore, the Committee cannot support its argument with the parole evidence it has submitted in support of its Objection. Counsel for the Committee and Jefferies agreed at the Hearing that Jefferies "ran a sale process" with respect to the Debtors' assets; unfortunately, it did not culminate in a going-concern sale.[2] But, under the terms of the Jefferies Retention Order and Engagement Letter, Jefferies is entitled to allowance of the Liquidation Fee, subject to the reductions agreed upon with the UST. Therefore, the Court approves the Final Fee Application, as modified.

## BACKGROUND

On February 16, 2011 (the "Petition Date"), Borders Group, Inc. and certain of its affiliates commenced their chapter 11 bankruptcy cases. (ECF Doc. # 1.) On the Petition Date, the Debtors retained AP Services, LLC (known as AlixPartners) ("APS"), to perform crisis

---

[2] Negotiations for the ultimate liquidation sale were conducted by Ms. Etlin, without participation by Jefferies, resulting in a liquidation sale. Jefferies argues that its earlier sales efforts helped raise the price in the later liquidation sale, an assertion the Committee contests. For the reasons explained in this Opinion, it is unnecessary for the Court to resolve that issue.

management services.  (ECF Doc. # 46.)  Holly Etlin[3] ("Ms. Etlin") was designated as the APS employee in charge of "GOB Sales" (store closing sales).  (APS Application at 9.)  On the Petition Date, the Debtors also filed an application to retain Jefferies as its investment banker and financial advisor pursuant to the terms and conditions of an engagement letter between the Debtors and Jefferies.

On March 16, 2011, the Court approved Jefferies' retention (the "Jefferies Retention Order") (ECF Doc. # 393) and the February 11, 2011 Amended and Restated Engagement Letter (the "Engagement Letter").  A copy of the Engagement Letter is attached to the Jefferies Retention Order.  Jefferies worked with the Debtors and the Committee pursuing different reorganization strategies including a potential sale of the Debtors' assets as a going concern.  Jefferies' time records attached to the Final Fee Application show that Jefferies spent a large amount of time marketing and attempting to sell the Debtors' assets as a going concern.  Jefferies (i) contacted approximately eighty parties potentially interested in acquiring the Debtors' assets; (ii) worked with the Debtors to negotiate and execute confidentiality agreements with interested buyers; (iii) facilitated due diligence for potential buyers; (iv) prepared numerous presentations to interested parties; (v) organized and attended meetings with interested parties and the Debtors' senior management; and (vi) arranged and participated in meetings between interested parties and Committee advisors and representatives.  (Final Fee Application ¶¶ 27-29.)  It is undisputed that Jefferies' actions led to an offer from the Najafi Companies, whereby BB Brands, LLC, a wholly owned subsidiary of its affiliate, Direct Brands, Inc., would purchase a majority of the Debtors' assets on a going-concern basis.  (ECF Doc. # 1130.)

---

[3]     Ms. Etlin was originally retained as the Debtors' Senior Vice President–Restructuring and was subsequently named the Debtors' President.

While Jefferies marketed and ran a sale of the Debtors' assets as a going concern, Ms. Etlin and APS spearheaded marketing efforts for a possible liquidation of the Debtors' assets. Ms. Etlin and APS solicited and obtained back-up bids for a liquidation of substantially all of the Debtors' assets pursuant to a revised agency agreement. Ms. Etlin and APS, on behalf of the Debtors, negotiated the documents for a liquidation.

Ultimately, the Debtors' efforts to reorganize as a going concern were unsuccessful. On July 21, 2011, the Court authorized the sale of substantially all the assets to a consortium of nationally recognized retail liquidators as contemplated by the revised agency agreement. (ECF Doc. # 1377.)

## DISCUSSION

The Committee argues that Jefferies is not entitled to the Liquidation Fee provided by the Engagement Letter because Jefferies did not play any role in the ultimate liquidation of the Debtors' assets. Unless Jefferies played a role in the liquidation, the Committee argues Jefferies is not entitled to the Liquidation Fee. Furthermore, the Committee argues the Jefferies Retention Order does not reflect the "intent" of the Committee and Jefferies, limiting payment of a liquidation fee to Jefferies to such sales in which Jefferies played an important role. The Committee attempts to support its argument with parole evidence consisting of an exchange of emails between counsel to the Committee and to Jefferies. As explained below, because the Retention Order is clear and unambiguous, parole evidence is not admissible to vary the terms of the order.[4] Therefore, the Court finds that Jefferies fulfilled the terms of the Jefferies Retention Order. Jefferies' Final Fee Application is approved, as modified by the agreement with the UST.

---

[4] Even if the Court were to consider the two emails proffered by the Committee, they would not alter the result. The two emails do *not* reflect any agreement or understanding between the Committee and Jefferies limiting

5

### A. Overview of Jefferies Engagement Letter and Retention Order

The Engagement Letter provides the terms of the relevant fees. In section 4(a), the Debtors agreed to pay Jefferies a $200,000 monthly fee. In section 4(b), the Debtors agreed to pay the following fees:

> Upon the consummation of a Restructuring or similar transaction, a restructuring fee (the "Restructuring Fee") in an amount equal to $5.5 million; provided, however, that in the event that a Restructuring is a liquidation of all or substantially all of the Company's assets other than as a going concern and with respect to which the operations of the Company cease, under either Chapter 7 or Chapter 11 of the Bankruptcy Code, the Restructuring Fee shall be $1.5 million (the Restructuring Fee for a liquidation set forth in this proviso being the "Liquidation Fee"); provided, further, however, no Liquidation Fee shall be due as a result of any sale conducted and consummated by a Chapter 7 trustee.

The Jefferies Retention Order modified the terms of the Liquidation Fee. In relevant part, the Jefferies Retention Order provides:

> [N]otwithstanding anything to the contrary in the Engagement Letter . . . (b) Jefferies shall be entitled to a Liquidation Fee with respect to any sale or liquidation of assets (whether pursuant to a Chapter 11 plan, Section 363 of the Bankruptcy Code or otherwise) if, and only if, Jefferies *ran a sale process with respect to such assets* and/or *marketed such assets or investment concerning such assets* and/or *otherwise provided material services in connection with the sale or liquidation of such assets.*

(Jefferies Retention Order at 3.) (emphasis added).

The effect of the modification was to add the requirement that Jefferies fulfill any one of the three specific conditions before it received the Liquidation Fee. Because section 4(b) was drafted using the disjunctive, Jefferies is entitled to the Liquidation Fee if any one of the following conditions are met: (1) Jefferies ran a sale process with respect to the Debtors' assets;

---

Jefferies' right to receive a Liquidation Fee other than as stated in the clear language of the Jefferies Retention Order and Engagement Letter.

or (2) Jefferies marketed the Debtors' assets with respect to a sale of such assets; or (3) Jefferies provided material services in connection with the sale or liquidation of such assets.

### B. The Committee Objection

The Committee argues that Jefferies is not entitled to any amount as a Liquidation Fee because it did not play an integral role in the liquidation of the Debtors' assets. The Committee concedes that Jefferies "conducted a marketing campaign targeting potential financial and strategic buyers or investors to acquire the Debtors as a going concern" but could not obtain a going-concern purchaser for any of the Debtors' assets. (Objection ¶ 4.) As a result, according to the Committee, the Debtors commenced "a full chain liquidation" that was "negotiated and orchestrated" by APS and Ms. Etlin. (*Id.*) According to the Committee, Jefferies "did not assist in the marketing of bids to conduct the store closing sales in any manner." (*Id.* ¶ 30.) Therefore, according to the Committee, Jefferies did not earn the Liquidation Fee pursuant to the Jefferies Retention Order.

The Committee misinterprets the clear and unambiguous language of the Jefferies Retention Order. The Jefferies Retention Order provides that Jefferies shall be entitled to the Liquidation Fee with respect to the sale of the Debtors' assets if Jefferies "ran a sale process with respect to such assets." (Jefferies Retention Order at 3.) At the Hearing and in its pleadings, the Committee's counsel conceded that Jefferies ran a sale process of the Debtors' assets as a going concern, but was unable to find a purchaser. As a result, the Debtors were forced to liquidate their assets. The Jefferies Retention Order and Engagement Letter do not require that the liquidation sale approved by the Court result from Jefferies' efforts, only that Jefferies ran a sale process, marketed the assets, or otherwise provided material services in connection with the

7

liquidation sale. Jefferies ran a very active sale process; nothing more was required. Therefore, Jefferies is entitled to the Liquidation Fee.[5]

### C. The Committee's Attempt To Introduce Parole Evidence

Although the Court finds that the Jefferies Retention Order is clear on its face, the Committee explained that it "always understood that Jefferies would not receive a Liquidation Fee unless Jefferies arranged for the *liquidation* sale, negotiated the *liquidation* sale, or found the buyer in a *liquation* sale." (Reply ¶ 17.) (emphasis added). The Committee offered parole evidence in the form of a March 9, 2011 email exchange between counsel to the Committee and to Jefferies. (Objection, Ex. A; Reply ¶ 18.)

Since the terms of the Jefferies Retention Order are clear, the Court cannot consider parole evidence with respect to the Committee's intent in negotiating the Jefferies Retention Order. Where a document "is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (internal citations omitted). In assessing ambiguity, the Court must consider the entire document subject to a dispute to "safeguard against adopting an interpretation that would render any individual provision superfluous." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993). The terms of a document are not ambiguous if they "have a definite and precise meaning and are not reasonably susceptible to differing interpretations." *RJE Corp. v.*

---

[5] The Court need not analyze the second and third alternative factors because the text was drafted in the disjunctive requiring that only one of the factors be satisfied. At the Hearing and in their papers, counsel to the Committee and counsel to Jefferies both agreed that Jefferies had conducted an unsuccessful sale of the Debtors' assets. Thus, as to the first factor, there are no disputed issues of fact, and the Court need only interpret the terms of the Jefferies Retention Order to resolve this issue.

8

*Northville Indus. Corp.*, 329 F.3d at 314 (citing *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095).

The Committee may have desired to restrict the payment of the Liquidation Fee to Jefferies to a *liquidation* sale in which Jefferies played a significant role, but the terms of the Jefferies Retention Order dictate otherwise. The Jefferies Retention Order provides for the Liquidation Fee if Jefferies conducted a sale process with respect to the Debtors' assets. It is undisputed that it did so.

The terms of the Engagement Letter, attached to the Retention Order, further support the Court's conclusion. The Engagement Letter provides for the payment of the full $5.5 million Restructuring Fee in the event of a going-concern sale, and a *reduced* (not eliminated) $1.5 million transaction fee (*i.e.*, the Liquidation Fee) in the event of a liquidation of all or substantially all of the Debtors' assets (a) other than as a going concern and (b) with respect to which the operation of the Debtors cease. (Engagement Letter § 4(b).) If Jefferies was only to receive a restructuring or liquidation fee following a sale resulting from Jefferies' successful efforts, it could have and should have been clearly stated in the Engagement Letter and any retention order.[6] Success fees limiting payment of fees to transactions resulting from a financial advisor's efforts are common, but provisions covering success fees are drafted very differently than the language in the Jefferies Retention Order and Engagement Letter.

---

[6] As Jefferies' counsel argued at the Hearing, the Engagement Letter contains a standard twelve-month "fee tail," providing that Jefferies would be entitled to a Liquidation Fee if, "on or prior to 12 months from the effective date of termination of [the Engagement Letter]," the Debtors consummate a liquidation of all or substantially all of their assets. (Engagement Letter § 7.) The Liquidation Fee would be payable whether or not Jefferies played any role in that liquidation. The Jefferies Retention Order changed this result only to the extent of adding the three disjunctive conditions discussed earlier, the first of which—"Jefferies ran a sale process with respect to such assets" (Jefferies Retention Order at 3)—would be satisfied here. If the intention was totally to eliminate any "tail," unless Jefferies played a role in that liquidation, it could have and should have been clearly stated in the Engagement Letter and any retention order.

**CONCLUSION**

For the reasons explained above, the Court overrules the Committee's Objection and concludes that Jefferies is entitled to receive the Liquidation Fee. Since no other objections have been raised, the Court grants Jefferies' Final Fee Application, subject to the agreed reduction with the UST.

A separate Order will be entered granting the Final Fee Application.

Dated: December 5, 2011
New York, New York

                                          **/s/Martin Glenn**
                                          MARTIN GLENN
                                United States Bankruptcy Judge