**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>BORDERS GROUP, INC., *et al.*,<br><br>                     Debtors.[1] | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 11-10614 (MG)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION GRANTING DEBTORS' MOTION TO SEAL**
**KOBO SHARE PURCHASE AGREEMENT**

*A P P E A R A N C E S:*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Attorneys for Borders Group, Inc.*
1633 Broadway
New York, New York 10019
By:    Jeffery R. Gleit, Esq.
        Nii-Amar Amamoo, Esq.

LOWENSTEIN SANDLER PC
*Attorneys for the Official Committee of Unsecured Creditors*
65 Livingston Avenue
Roseland, New Jersey 07068
By:    Timothy R. Wheeler, Esq.

TORYS LLP
*Attorneys for Indigo Books and Music, Inc.*
1114 Avenue of the Americas, 23rd Floor
New York, New York 10036
By:    Alison D. Bauer, Esq.

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
*Attorneys for 2303202 Ontario Inc.*
230 Park Avenue
New York, New York 10169
By:    Jenette Barrow-Bosshart, Esq.

---

[1]    The Debtors are: Borders Group, Inc.; Borders International Services, Inc.; Borders, Inc.; Borders Direct, LLC; Borders Properties, Inc.; Borders Online, Inc.; Borders Online, LLC; and BGP (UK) Limited.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Borders Group, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors-in-possession (collectively, the "Debtors"), filed the *Debtors' Motion Pursuant to 11 U.S.C. § 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure to File Exhibit B to Motion to Approve the Sale of Debtors' Interest in Kobo, Inc., Under Seal* (the "Motion"). (ECF Doc. # 2225.)  The Debtors have contemporaneously filed the Motion with the *Debtors' Motion for Order Pursuant to Sections 363 and 105 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure Approving and Authorizing the Sale of Debtors' Interest in Kobo Inc. Free and Clear of all Liens, Interests, Claims and Encumbrances and Waiving the Requirements of Bankruptcy Rule 6004(h)* (the "Kobo Sale Motion").  (ECF Doc. # 2229.)  The Court will hear the Kobo Sale Motion on December 20, 2011.  In support of the Motion, Indigo Books and Music, Inc. submitted a declaration of Nicholas Catros, the General Counsel of Kobo, Inc. (the "Catros Decl.").  (ECF Doc. # 2260.)

On December 6, 2011, the Court held a hearing and, for the reasons stated below, the Motion is granted.

## BACKGROUND

The Debtors hold approximately 10% of Kobo Inc. ("Kobo") common stock and are parties to an Amended and Restated Unanimous Shareholder Agreement (the "Shareholder Agreement") by and among Kobo and each of its shareholders.  Kobo's stock is subject to a variety of transfer restrictions and provisions for the corporate governance of Kobo.  Kobo's stock is also subject to first-refusal rights and participation rights under Kobo's organization documents and the Shareholder Agreement.

In conjunction with the liquidation of the Debtors' assets, the Debtors, as minority

shareholders of Kobo, now seek to sell their interest in Kobo.  On or about November 8, 2011,

2303202 Ontario Inc. (the "Purchaser"), Rakuten Inc., as guarantor, certain shareholders and key

management option-holders of Kobo, and Kobo entered into a Share Purchase Agreement (the

"SPA").

Pursuant to the SPA, the Purchaser agreed to acquire Kobo by purchasing all of the

outstanding shares of Kobo for approximately $315 million, less certain adjustments contained in

the SPA (the "Purchase Price").  (Motion ¶ 8.)  The SPA also includes mutual releases contained in

sections 5.1(11) and 5.2(5) of the SPA.  (*Id.*)  Finally, the SPA provides that any Kobo shareholder

may join the transaction by executing a joinder entitling them to their *pro rata* share of the Purchase

Price and binding such party to the terms and benefits of the SPA.  Through the Kobo Sale Motion,

the Debtors seek authorization to enter into a Joinder Agreement (the "Joinder Agreement"),

agreeing to sell their interests in Kobo pursuant to the terms of the SPA to the Purchaser for

approximately $27.5–$32 million.  (*Id.* ¶ 9.)

Through the Motion, the Debtors seek an order permitting them to file a redacted copy of

the SPA with the Kobo Sale Motion.  According to the Debtors and Mr. Catros, the SPA contains

certain confidential and commercially sensitive business information of Kobo and the Purchaser.

(Motion ¶ 15; Catros Decl. ¶ 3.)  The Debtors claim that the redacted information in the SPA, "if

publicly disclosed could give an unfair advantage to competitors by revealing certain financial

information of Kobo and the Purchaser and the terms and conditions of the proprietary, sensitive and

confidential commercial agreement."  (Motion ¶ 15.)  The Debtors believe that all material terms of

the SPA necessary for parties to evaluate the proposed transaction are disclosed in the redacted

version of the SPA that was attached to the Kobo Sale Motion.  The Debtors also believe that the

redacted portions of the SPA are necessary to protect the Purchaser's future interest in Kobo.  (*Id.* ¶

16.)

## DISCUSSION

### A.  Statutory Authority

In limited circumstances, section 107(b) of the Bankruptcy Code empowers a bankruptcy

court to seal documents that would normally be available to the public.  Section 107(b) states, in

pertinent part:

> On request of a party in interest, the bankruptcy court shall, and on
> the bankruptcy court's own motion, the bankruptcy court may–
>
> (1)    Protect an entity with respect to a trade secret or
> confidential research, development, or commercial information.

11 U.S.C. § 107(b).  Rule 9018 of the Federal Rules of Bankruptcy Procedure establishes the

procedures to invoke section 107(b).  In relevant part, Rule 9018 provides:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires (1) to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . contained in
> any paper filed in a case under the Code.

FED. R. BANKR. P. 9018.  As this Court has held, the moving party bears the burden of showing

that the information is confidential.  *See In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 561

(Bankr. S.D.N.Y. 2007).

### B.  Presumption Favoring Public Access to Court Records

There is a strong presumption and public policy in favor of public access to court records.

*See, e.g., Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597-98 (1978); *Neal v. The Kansas City

Star (In re Neal)*, 461 F.3d 1048, 1053 (8th Cir. 2006); *Gitto v. Worcester Telegram & Gazette

Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005); *Food Mgmt. Grp.*, 359 B.R. at

553; *In re FiberMark, Inc.*, 330 B.R. 480, 505 (Bankr. D. Vt. 2005).  The right of public access

is "rooted in the public's First Amendment right to know about the administration of justice."

*Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24,

26 (2d Cir. 1994) (stating that public access "helps safeguard 'the integrity, quality, and respect

in our judicial system,' and permits the public 'to keep a watchful eye on the workings of public

agencies'") (citations omitted).  "The public interest in openness of court proceedings is at its

zenith when issues concerning the integrity and transparency of bankruptcy court proceedings

are involved."  *Food Mgmt. Grp., LLC*, 359 B.R. at 553; *see also Gitto*, 422 F.3d at 7 ("This

governmental interest is of special importance in the bankruptcy arena, as unrestricted access to

judicial records fosters confidence among creditors regarding the fairness of the bankruptcy

system."); *In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984) ("This policy of

open inspection, established in the Bankruptcy Code itself, is fundamental to the operation of the

bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or

could be raised.").

The presumption of open access to court records is codified in section 107 of the

Bankruptcy Code.  *See* 11 U.S.C. § 107(a).  Nevertheless, Congress implemented a statutory

exemption to prevent disclosure of commercial information in a bankruptcy case.  *See In re*

*Orion Pictures Corp.*, 21 F.3d at 27.  Where a party in interest moves to protect "commercial

information" from disclosure, the court must grant protection.  *See* 11 U.S.C. § 107(b) ("On

request of a party in interest, the bankruptcy court *shall* . . . (1) protect an entity with respect to . .

. commercial information.") (emphasis added).  Once a court determines that a party in interest is

seeking protection of information that falls within one of the categories enumerated in section

107(b), "the court is *required* to protect a requesting party and has no discretion to deny the

application."  *In re Orion Pictures Corp.,* 21 F.3d at 27.

The exception to the general right of access in section 107(b) is narrow. *See id.*

("Congress, itself, has recognized that under compelling or extraordinary circumstances, an

exception to the general policy of public access is necessary."). However, "[i]n most cases a

judge must carefully and skeptically review sealing requests to insure that there really is an

extraordinary circumstance or compelling need" to keep this material private. *Id.* (holding that

sealing official documents should not be done without a compelling reason) (citing *City of*

*Hartford v. Chase*, 942 F.2d 130, 135-36 (2d Cir. 1991)).

In cases where protection is required, however, the form of protection that must be

granted is not commanded by the statute. The Court has discretion when deciding how to protect

commercial information. *See Gitto*, 422 F.3d at 9 ("It is true that § 107(b)(2) speaks of

protection in general terms rather than of wholesale sealing, and that courts must therefore

exercise some discretion in determining what form of protection to grant."). Redacting

documents to remove only protectable information is preferable to wholesale sealing. The policy

favoring public access supports making public as much information as possible while still

preserving confidentiality of protectable information. *See, e.g., Nixon v. Warner Commc'ns,*

*Inc.*, 435 U.S. 589, 597-98 (1978).

### C.  The Meaning of "Commercial Information"

The question whether the Debtors are permitted to redact certain sections of the SPA

depends on whether the redacted information is "commercial information" within the meaning of

section 107(b)(1). In order for a document to be sealed, it must contain information implicating

the movant's business operations. *In re Orion Pictures Corp.*, 21 F.3d at 27; *see also In re*

*Farmland Indus., Inc.*, 290 B.R. 364, 368 (Bankr. N.D. Mo. 2003).

Commercial information need not rise to the level of a trade secret to qualify for

protection under section 107(b). *In re Orion Pictures Corp.*, 21 F.3d at 28 (noting that section

"107(b) is carefully drafted to avoid merging 'trade secrets' with 'confidential commercial

information'"). For purposes of section 107(b), commercial information includes "information

which would cause 'an unfair advantage to competitors by providing them information as to the

commercial operations of the debtor.'" *Id.* (citing *Ad Hoc Protective Comm. for 10 1/2%*

*Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (9th Cir. B.A.P. 1982)); *see*

*also In re Handy Andy Home Improvement Ctrs., Inc.*, 199 B.R. 316, 382 (Bankr. N.D. Ill.

1996); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D. Nev. 1994). One

court has found that the meaning of "commercial information" extends beyond the requirement

that such information will give an entity's competitors an unfair advantage. *In re Lomas Fin.*

*Corp.*, No. 90 Civ. 7827, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991). Rather, the term

includes situations where a bankruptcy court may reasonably determine that allowing such

disclosure would have a "chilling effect on [business] negotiations, ultimately affecting the

viability of Debtors." *Id.* (internal citation omitted). Moreover, the Court must also find that the

redacted information "is so critical to the operations of the entity seeking the protective order

that its disclosure will unfairly benefit the entity's competitors." *In re Barney's, Inc.*, 201 B.R.

703, 708-09 (Bankr. S.D.N.Y. 1996).

### D.  The Redacted SPA Properly Protects Commercial Information

As a threshold matter, by its terms, the protections afforded in section 107(b)(1) do not

just extend to a debtor. Rather, a bankruptcy court may "protect an *entity* with respect to . . .

commercial information." 11 U.S.C. § 107(b)(1) (emphasis added). Therefore, in this case,

Kobo's and the Purchaser's interests can be protected by this statutory provision.

After reviewing the unredacted and redacted versions of the SPA, the Court believes that the proposed redactions properly protect commercial information while assuring that information relevant to the Kobo Sale Motion will be publicly disclosed.  The material terms of the SPA are not redacted.  The Debtors have appropriately redacted only commercial information within the meaning of section 107(b)(1).  The redacted information primarily relates to the identities of key employees and vendors and confidential financial information of Kobo and the Purchaser.

## CONCLUSION

For the reasons discussed above, the Motion is granted.  A separate order approving the Motion will be entered.


Dated:  December 7, 2011
          New York, New York


                                **/s/Martin Glenn**
                                  MARTIN GLENN
                United States Bankruptcy Judge