UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

BORDERS GROUP, INC., *et al.*,

Debtors.[1]

NOT FOR PUBLICATION

Chapter 11

Case No. 11-10614 (MG)

(Jointly Administered)

**MEMORANDUM OPINION REQUIRING AN EVIDENTIARY HEARING
PERTAINING TO THE CLAIM OF NANCY DEMICHELE**

*A P P E A R A N C E S:*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Attorneys for Borders Group, Inc.*
1633 Broadway
New York, New York 10019
By:    Jeffrey R. Gleit, Esq.
       Michelle L. Angell, Esq.

LOWENSTEIN SANDLER PC
*Attorneys for the Official Committee of Unsecured Creditors*
65 Livingston Avenue
Roseland, New Jersey 07068
By:    Bruce Buechler, Esq.
       Timothy R. Wheeler, Esq.

NANCY L. DEMICHELE
*Pro Se*


**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

　　　　　Pending before the Court is the *Debtors' Seventh Omnibus Objection to the Allowance of*

*Certain Claims: (I) Reclassified Claims, (II) No Liability Claims, (III) Insufficient*

*Documentation Claims, and (IV) Duplicative Claims* (the "Seventh Omnibus Objection"). (ECF

---

[1]    The Debtors are: Borders Group, Inc.; Borders International Services, Inc.; Borders, Inc.; Borders Direct, LLC; Borders Properties, Inc.; Borders Online, Inc.; Borders Online, LLC; and BGP (UK) Limited.

1

Doc. # 1794.)  Through the Seventh Omnibus Objection, the Debtors assert that certain claims should be disallowed because they: (i) improperly assert priority status; (ii) allege liabilities that are not enforceable; (iii) fail to include sufficient documentation to ascertain their validity or (iv) duplicate other claims filed.  In support of the Seventh Omnibus Objection, the Debtors have contemporaneously filed the declaration of David F. Head, a managing director of AlixPartners, LLP (the "Head Decl.").  (ECF Doc. # 1562.)

The claims that the Debtors sought to expunge through the Seventh Omnibus Objection included the claim (the "DeMichele Claim" or "Claim No. 2866")[2] of Nancy L. DeMichele ("Ms. DeMichele") for severance payments allegedly owed to her on account of approximately eight years of employment for the Debtors.  On October 5, 2011, Ms. DeMichele filed a response (the "Response") to the Seventh Omnibus Objection, arguing that the DeMichele Claim should not be expunged because she was not paid the full amount of severance owed to her.  (ECF Doc. # 1952.)  Thereafter, on October 14, 2011, the Debtors filed a reply to the Response (the "Reply") (ECF Doc. # 1934) and concurrently filed a declaration of David F. Head in support of the Reply (the "Head Reply Decl.) (ECF Doc. # 1935).  In the Reply, the Debtors argued that all severance due and owing to Ms. DeMichele had been paid pursuant to the Debtors' prepetition severance and associated rehire policies.  (Reply ¶ 8.)

On October 18, 2011, the Court held a hearing, and counsel to the Debtors asked to adjourn the matter to the next omnibus hearing date to explore settlement options with Ms. DeMichele.  In response to this request, the Court sustained, in part, the Seventh Omnibus Objection but reserved judgment on the treatment of the DeMichele Claim.  On November 29, 2011, the Court held another hearing concerning the DeMichele Claim, with Debtors' counsel and the Committee's counsel present in court and Ms. DeMichele appearing by telephone.  At

---

[2]     The amount of the DeMichele Claim is $2,945.28.

the November 29 hearing, Debtors' counsel informed the Court that the Debtors had offered to settle the DeMichele Claim, but Ms. DeMichele rejected the proposal and read a lengthy statement to the Court.[3]  Upon review of the pleadings as well as Ms. DeMichele's representations at the hearings, the Court finds that there are a number of disputed issues of fact that require an evidentiary hearing unless this matter is resolved beforehand.  Therefore, an evidentiary hearing must be scheduled to determine the issues discussed below.

## BACKGROUND

On February 16, 2011 (the "Petition Date"), the Debtors commenced their chapter 11 bankruptcy cases.  (ECF Doc. # 1.)  The Debtors initially attempted to reorganize as a going concern but were unsuccessful and ultimately sought to sell substantially of their assets and close all of their stores.

Ms. DeMichele has provided a rough timeline of her approximate eight-year employment.  The Debtors have not contested Ms. DeMichele's timeline, and the Court has adopted it for the purposes of this opinion.  Ms. DeMichele was first employed by the Debtors on September 28, 2001 in Phoenix, Arizona at Store #54.  From September 2001 until late November 2004, Ms. DeMichele worked as a part-time cashier in Store #54.  In late November 2004, Ms. DeMichele requested and received a transfer to Store #99 in Syracuse, New York, so that she could be closer to and help care for her ailing mother.  On February 6, 2005, Ms. DeMichele requested and was granted a full-time position and continued to work at Store #99 until the latter part of 2007.  In late 2007, Ms. DeMichele requested a reclassification of her

---

[3] Upon request of the Court, Ms. DeMichele filed on the docket the statement that she read to the Court at the November 29 hearing.  (ECF Doc. # 2278.)

3

employment status to part-time associate and thereafter took a leave of absence under the Family Medical Leave Act (the "FMLA") to care for her ailing mother.[4]

Ms. DeMichele returned to Store # 99 following her leave of absence under the FMLA, but on October 6, 2009, Ms. DeMichele was forced to abruptly leave work to attend to a medical emergency. Her mother's health had taken a turn for the worse, and Ms. DeMichele chose to remain at her mother's side to care for her. Ms. DeMichele requested another leave of absence under the FMLA but was denied a leave because she did not accrue sufficient work hours in the twelve months prior to her request. Ms. DeMichele's mother passed away on February 1, 2010.

From October 7, 2009 through February 28, 2010, Ms. DeMichele did not log any hours at Store #99. However, during this time, Ms. DeMichele claims that she "kept in frequent communication with management at Borders, and . . . was assured that [her] previous position would be available to [her] when [she] was able to return to work." (Response, Ex. A. at 2.) Additionally, Ms. DeMichele asserts that she "was led to believe by continually being assured by management that [her] position and pay status would be available and restored" when she was able to return. (Response, Ex. D.)

On March 1, 2010, Ms. DeMichele returned to the same position at Store #99 that she held prior to October 7, 2009 and continued to earn the same salary. However, according to the Debtors, her return was deemed a "rehire" by the Debtors' management pursuant to the Debtors' Associate Handbook (defined below) since Ms. DeMichele had taken an unapproved leave of absence which lasted more than 90 days. Thus, according to the Debtors, the date of Ms. DeMichele's rehire became her new "hire date" for purposes of calculating severance payments. When Store #99 shuttered in March 2011, Ms. DeMichele received a severance payment of $368.16 due to only one year of employment. (Reply ¶ 8.)

---

[4]   It is unclear from Ms. DeMichele's pleadings how long her FMLA leave lasted.

## DISCUSSION

Based on the statements and pleadings of Ms. DeMichele and Debtors' counsel, the Court finds that at least two disputed issues of fact exist at this time. Therefore, an evidentiary hearing must be held so that the Court may decide these issues.

*The Associate Handbook*

Portions of the Borders Field Handbook (the "Associate Handbook") were attached to the Head Reply Decl. as Exhibit 1. In relevant part, the Associate Handbook provides:

> **Rehired Booksellers**
> **Leaving the Company and Returning after 90 days**
> If a bookseller returns to work at Borders Group more than 90 days after leaving the Company, s/he is considered "rehired" and is treated as a new hire regardless of employment classification. The date of rehire becomes the new "hire date". Refer to Benefits section of the Handbook for information regarding benefits eligibility for rehires.

As an initial matter, the Debtors only included two pages of the Associate Handbook and failed to provide the so-called "Benefits section," which may be relevant to the issues presented. The section entitled "Leaving the Company and Returning after 90 days" clearly states that one must refer to the Benefits section of the Associates Handbook to determine benefits eligibility for rehires. Thus, without the full text of the Associates Handbook, particularly the Benefits section, the Court cannot make a determination whether Ms. DeMichele was actually entitled to credit for the years of her employment prior to the unapproved leave.

*Ms. DeMichele's Status During Her Leave of Absence*

In addition to the lack of a factual record before the Court with respect to the Associates Handbook, Ms. DeMichele raises an additional disputed issue of fact. The Court cannot conclude, based on the record before it, whether Ms. DeMichele was actually terminated or at least considered terminated after she had taken an unapproved leave of absence that lasted more

5

than ninety days. At the November 29 hearing, Ms. DeMichele contended that she was never told that she was terminated and remained in contact with Debtors' management throughout the time that she was absent. During this time, according to Ms. DeMichele, Debtors' management told her "that [her] previous position would be available to [her] when [she] was able to return to work." (Response, Ex. A. at 2.) It is thus unclear based on these statements whether Ms. DeMichele was terminated or even considered terminated when she took the unapproved leave of absence.

The Debtors argue that by the sole terms of the Associate Handbook, Ms. DeMichele was terminated "effective October 7, 2009 and rehired on March 1, 2010" due to the fact that she was absent for five months. (Response, Ex. B.) However, the Debtors have not provided any proof that an effective termination took place. The Court is particularly concerned with the following language contained in the Associates Handbook: "In order to apply for reinstatement or rehire, former booksellers must be eligible for rehire, as indicated on their separation of employment documentation." If Ms. DeMichele was rehired pursuant to the Associates Handbook, did she receive any "separation of employment documentation" that provided that she was eligible for rehire? If the Debtors had terminated Ms. DeMichele, there should be records evidencing such termination as required by the Associates Handbook.

Ms. DeMichele has repeatedly argued that she was not notified of her termination during her leave of absence. Other than citing to the Associates Handbook, the Debtors have not provided any proof that Ms. DeMichele was considered terminated or actually terminated during her unapproved leave of absence. If Ms. DeMichele was not terminated pursuant to the Associates Handbook, it is not apparent why she would be considered a "rehire" according to the Associates Handbook when she returned to work on March 1, 2010. If she was not "terminated"

6

and, therefore, was not a "rehire," wouldn't she be entitled to severance payments due to approximately eight years of employment in March 2011?

## CONCLUSION

In light of the above-mentioned issues of fact, an evidentiary hearing must be scheduled to determine: (1) whether the Associates Handbook provides for the reinstatement of previously earned severance benefits to a rehired employee; and (2) whether Ms. DeMichele's supposed termination was actually reflected in any of the Debtors' records or through the Debtors' management's conversations with Ms. DeMichele during her leave of absence.

However, before scheduling an evidentiary hearing, the Court will enter a mediation order sending this case to mediation before Hon. Shelley C. Chapman. In the event the case is not resolved in mediation, an evidentiary hearing will be scheduled. Debtors' counsel shall coordinate a date for the mediation with Ms. DeMichele and Judge Chapman's chambers.

Dated: December 14, 2011
New York, New York

                                                                  **/s/Martin Glenn**
                                                                   MARTIN GLENN
                                              United States Bankruptcy Judge