**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re:                                                                                      :
                                                                                               :
BGI, INC., f/k/a BORDERS GROUP, INC.,          :            Chapter 11
                                                                                               :            Case No. 11-10614 (MG)
                                                                                               :
                                                            Debtors.             :
-------------------------------------------------------------x
JARED PINSKER, on behalf of himself and all       :
others similarly situated,                                         :
                                                                                               :
                                                            Plaintiff,             :
                                                                                               :            Adv. Pro. No. 11-02586 (MG)
                                    v.                                                  :
                                                                                               :
BORDERS, INC.                                                         :
                                                                                               :
                                                            Defendants.         :
-------------------------------------------------------------x

**FOR PUBLICATION**

**MEMORANDUM OPINION APPROVING WARN ACT CLASS ACTION**
**SETTLEMENT ON A FINAL BASIS**

*A P P E A R A N C E S :*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Attorneys for Borders Group, Inc.*
1633 Broadway
New York, New York 10019
By:     Joseph A. Piesco, Esq.

LOWENSTEIN SANDLER PC
*Attorneys for the Liquidating Trust*
65 Livingston Avenue
Roseland, New Jersey 07068
By:     Timothy R. Wheeler, Esq.

LANKENAU & MILLER, LLP
*Attorneys for the Plaintiff and the Settlement Class*
132 Nassau Street, Suite 423
New York, New York 10038
By:     Stuart J. Miller, Esq.

-and-

THE GARDNER FIRM, P.C.
*Attorneys for the Plaintiff and the Settlement Class*
210 South Washington Avenue
Post Office Drawer 3103
Mobile, Alabama 36652
By:    Mary E. Olsen, Esq.
       M. Vance McCray, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The pending motion seeks final approval of a settlement of a WARN Act class action

adversary proceeding (the "Motion"). Jared Pinsker (the "Class Representative" or "Plaintiff")

initiated a putative class action adversary proceeding on behalf of himself and other similarly

situated former employees (collectively, the "Class" or "Class Members") of Borders, Inc. (the

"Debtor"). (ECF Doc. # 2203.)[1] The Class Representative and the Debtors in these chapter 11

cases (collectively, the "Parties") jointly seek final approval of the *Settlement and Release*

*Agreement* between the Class Members and the Debtors (the "Settlement Agreement" or the

"Settlement"),[2] including an award of attorneys' fees for Class Counsel (defined below). Stuart

J. Miller, counsel for the Class Members, filed a declaration in further support of the Motion and

Settlement Agreement, including final approval of attorneys' fees (the "Miller Declaration").

(ECF Doc. # 2528.)

On December 20, 2011, the Court held a hearing (the "Preliminary Hearing") and entered

an order (i) preliminarily approving the Settlement, (ii) approving the form and manner of notice;

(iii) scheduling a fairness hearing to consider final approval of the Settlement (the "Fairness

Hearing"); and (iv) granting related relief (collectively, the "Preliminary Order"). (ECF Doc. #

---

[1]        Unless otherwise indicated, ECF citations throughout this Opinion refer to the docket in the Debtors' main case, Case No. 11-10614 (MG).

[2]        A copy of the Settlement Agreement was attached to the Motion as Exhibit A.

2372.)  The Court set February 16, 2012 as the date for the Fairness Hearing and approved the

form of notice that was mailed to members of the Class on December 23, 2011.  The opt-out and

objection deadline was set for February 6, 2012, and only three opt-outs were received.  (Miller

Decl. ¶ 11.)  No objections were filed to the Motion requesting approval of the Settlement

Agreement on a final basis.

For the reasons explained below, the Settlement is approved on a final basis, including

the award of attorneys' fees to Class Counsel.

## BACKGROUND

On February 16, 2011 (the "Petition Date"), Borders Group, Inc. and certain of its

affiliates (the "Debtors") commenced their chapter 11 bankruptcy cases.  (ECF Doc. # 1.)  A

class action complaint in this adversary proceeding was filed on September 2, 2011 (the

"Complaint").  (ECF Doc. 1697.)  The Complaint asserted claims under the federal Worker

Adjustment and Retraining Notification Act (the "Federal WARN Act") and the New York State

Worker Adjustment and Retraining Notification Act (the "NY WARN Act," and together with

the Federal WARN Act, the "WARN Act") by ordering a plant closing and/or mass layoffs at its

Michigan facility on or about July 22, 2011 through August 23, 2011 without providing sixty-

days advance notice.  The Class Representative also asserted that the Class Members have an

administrative priority claim pursuant to section 503 of the Bankruptcy Code.  (Compl. ¶ 34.)

In late September 2011, the Parties entered into good faith, arm's length negotiations regarding a

resolution of this action.

The federal WARN Act is codified at 29 U.S.C. §§ 2101-2109.  In general terms, it

requires employers with more than 100 employees to provide sixty calendar days of advance

notice of "plant closing" or "mass layoffs" (both terms are defined in section 2101(a)).  There are

3

three exceptions to the full sixty-day requirement; however, employers must still provide notice

as soon as practicable.  The exceptions are: (1) when an employer is actively seeking capital or

business and reasonably believes that advance notice would preclude its ability to garner capital

or business (known as the "faltering company" exception); (2) unforeseeable business

circumstances; and (3) natural disasters.  *See* 29 U.S.C. § 2102(b).  When section 2102 is

violated, the employer is liable for damages, including employee back pay and benefits under an

employee benefit plan.  *See id.* § 2104.

The Parties contend that there exist significant, complex legal and factual issues

regarding the application of the WARN Act to the Debtors and, therefore, to the viability of this

action.  To avoid extensive and protracted litigation, the Parties have agreed to settle all claims

relating to or arising out of this litigation.

The Settlement Agreement provides for certification of a class comprised of all persons

who

> (i) worked at, or reported to, the Debtors' Michigan Facility; (ii)
> suffered an "employment loss," as that term is defined in 29 U.S.C.
> § 2101(a)(6) and 20 C.F.R. § 639.3(b)-(c), on, or within thirty days
> of July 22, 2011 as part of a "plant closing" or "mass layoff," as
> those terms are defined in 29 U.S.C. § 2101(a)(2)-(3) and 20
> C.F.R.  §  639.3(b)-(c),  or  as  the  reasonably  foreseeable
> consequence of a "plant closing" or "mass layoff" occurring on or
> about July 22, 2011; (iii) meet the definition of "affected
> employee," as set forth in 29 U.S.C. § 2101(a)(5) and 20 C.F.R. §
> 639.3(e); and (iv) do not file a timely request to opt-out of the
> Class . . . .

(Settlement ¶ 3.)

Additionally, pursuant to the Settlement, the Debtors shall pay $240,000 as follows: (1)

$3,000 to the Plaintiff as the class representative; (2) $158,000 to be divided equally among the

Class Members;[3] and (3) $79,000 in attorneys' fees to counsel for the Class.  (Settlement ¶ 4, 6-7; Mot. ¶ 26.)

The Settlement Agreement further provides that each Class Member that has not opted-out shall release any and all claims he or she may have against the Debtors.  (Settlement ¶ 11.)  Moreover, if 5% or more members of the Class decide to opt-out, the Debtors or the Liquidating Trust, as applicable, have the right to declare the Settlement null and void.  (*Id.* ¶ 12.)

## DISCUSSION

The Court is familiar with the standards applicable to approval of a settlement in a WARN Act class action, and substantially relies on its prior decision approving a settlement in *Wenzel v. Partsearch Techs., Inc. (In re Partsearch Techs., Inc.)*, 453 B.R. 84 (Bankr. S.D.N.Y. 2011).

### A.    Class Certification and Notice

#### 1.  Rule 23(a) of the Federal Rules of Civil Procedure

The Court preliminarily certified the Class for settlement purposes and approved the notice that was sent to all Class Members, advising them of their ability to opt-out of the Settlement (the "Notice").  Based on the following, the Court confirms its prior conclusions.

Class actions in bankruptcy court are governed by Rule 23 of the Federal Rules of Civil Procedure, made applicable to an adversary proceeding by Rule 7023 of the Federal Rules of Bankruptcy Procedure.  Rule 23 establishes four prerequisites that must be satisfied in order for a class action proceeding to go forward:

> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[3]    According to the Motion, each Class Member will receive $797.  (Mot. ¶ 26.)

> (4)   the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

The Court may certify a class a for settlement purposes only.  *See In re WorldCom, Inc.*, 347 B.R. 123, 141 (Bankr. S.D.N.Y. 2006) (citing *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 619-22 (1997)).  The Court now turns to the requirements of Rule 23 and finds the structure of the Class to be appropriate.

First, as to the numerosity prong, there are 198 former employees comprising the Class. Rule 23(a)(1) does not mandate that joinder must be impossible.  *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029(CM), 2011 WL 1345041, at *4 (S.D.N.Y. Mar. 30, 2011) (citing *Grimmer v. Lord, Day & Lord*, 937 F. Supp. 255 (S.D.N.Y. 1996)).  Nor must class action plaintiffs specify the exact size of the class as a prerequisite to satisfying the numerosity requirement.  *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005).  In the Second Circuit, courts presume that joinder is impracticable when the prospective class consists of forty or more members.  *Robidoux v. Celani*, 987 F.2d 931, 935–36 (2d Cir. 1993); *Guippone*, 2011 WL 1345041, at *4; *see also* 7A Wright, Miller & Kane, FED. PRACTICE AND PROCEDURE § 1762 (3d ed. 2005).  Here, the Class is sufficiently large to make joinder of each class member impracticable.

With respect to commonality, the Court finds that common questions of law and fact exist between the Class Members.  Rule 23(a)(2) does not require that all of the questions of law and fact raised by the dispute must be completely common.  *See* FED. PRACTICE AND PROCEDURE § 1763.  Rather, Rule 23(a)(2) suggests that more than one issue of law or fact must be common to members of the class.  *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y.

6

1996).  "Minor factual differences will not preclude class certification if there is a common issue of law." *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).

The commonality requirement is clearly met in this case.  The Court would need to adjudicate whether the Class Members were all subjected to the same purported "plant closure" or "mass layoff" as those terms are used in the WARN Act and whether a sufficient number of employees suffered a job loss to trigger the notice requirements under the WARN Act.  *See* 29 U.S.C. §§ 2101–02; N.Y. Lab. Law § 860-b; *see also Campbell v. A-P-A Transp. Corp.*, No. 02-3480(WGB), 2005 U.S. Dist. LEXIS 28122, at *10 (D.N.J. Nov. 16, 2005) (finding that a proposed class consisting of 527 employees who asserted claims under the WARN Act satisfied the commonality requirement of Rule 23 because the named plaintiff and the proposed class had a common legal question whether the defendant employer complied with the WARN Act's notice requirements).  Moreover, the claims of each Class Member would be subject to the same affirmative defenses that could be raised by the Debtors.  Lastly, a question also arises whether each Class Member is entitled to the amount of damages sought.

As to the typicality prong, the Second Circuit has held that "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes the same legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Here, the Court is satisfied that the typicality requirement has been met.  All of the Class Members were employees of the Debtor and were subjected to the same course of events that resulted in the termination of their employment.  *See In re Taylor Bean & Whitaker Mortg. Corp.*, No. 3:09-bk-07047-JAF, 2010 WL 4025873, at *6 (Bankr. M.D. Fla. Sept. 27, 2010) (finding that the typicality requirement of Rule 23(a)(3) was satisfied because the plaintiff "suffered the same type of injury as the rest of

the class" and the debtor defendant's "alleged failure to comply with the requirements of the

WARN Act represent[ed] a single course of conduct with regard to each potential class

member"). All Class Members rely on the same facts and legal argument to prove that the

Debtors violated the WARN Act.

Lastly, the Plaintiff, as the class representative, fairly and adequately protects the

interests of the Class. *See* FED. R. CIV. P. 23(a)(4). What constitutes adequate representation is

a question of fact that depends on the circumstances of each case and is within the discretion of

the court. *See* FED. PRACTICE AND PROCEDURE § 1765. The named representative must be a

member of the class; however, there is no requirement that the representative have express

authority from the class members. *See id.* Class representatives must be of the character to

assure the vigorous prosecution of the action so that the members' rights will be protected, *see*

*id.* § 1766, and courts may consider the "honesty and trustworthiness of the named plaintiff."

*Savino v. Computer Credit Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Class representatives cannot

hold an interest in conflict with the class. FED. PRACTICE AND PROCEDURE § 1768; *see also In re*

*Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 128 (D. Conn. 2005). It is also important

to note that when considering Rule 23(a)(4), courts examine the quality and experience of the

class attorneys. *See Flight Safety Techs., Inc.*, 231 F.R.D. at 128.

In this case, it appears that the Plaintiff has diligently prosecuted this action. The

Plaintiff engaged counsel to file the instant action before this Court. The Plaintiff does not hold

an interest that is adverse to the Class Members. The Plaintiff, like the other Class Members,

was a former employee of the Debtors and does not appear to have an ulterior motive for

bringing the action. Additionally, Lankenau & Miller and The Gardner Firm, PC ("Class

Counsel") are experienced in WARN Act class action litigation. These two firms have handled

approximately seventy similar class action suits. (Mot. ¶ 43.) Recently, Class Counsel

successfully represented WARN Act plaintiffs before this Court in *In re Partsearch Techs., Inc.*,

453 B.R. 84.

### 2. Rule 23(b)(3)

In addition to Rule 23(a), the class action must be a type described in Rule 23(b). In this

case, the Parties submit that the Class falls under Rule 23(b)(3). Under Rule 23(b)(3), a class

action may be maintained if:

> (3) the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods for
> fairly and efficiently adjudicating the controversy. The matters pertinent to
> these findings include:
> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions
> (B) the extent and nature of any litigation concerning the   controversy
> already begun by or against class members;
> (C) the desirability or understandability of concentrating the litigation
> of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

Here, the Class is suited to proceed as a class under Rule 23(b)(3). For the reasons

previously discussed, questions of law or fact common to class members predominate over

questions affecting only individual members—namely, all of the Class Members were subject to

the same facts surrounding their termination. The Class is also superior to other methods of

resolving the controversy because individually adjudicating each of these substantially similar

claims would be impractical and consume significant judicial resources. *See In re Amaranth

Natural Gas Commodities Litig.*, 269 F.R.D. 366, 386 (S.D.N.Y. 2010). Moreover, proceeding

individually would likely be impractical for individual members because each holds a relatively

small claim.  In such circumstances, "the class action device is frequently superior to individual actions."  *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

The factors enumerated in Rule 23(b)(3)(A)-(D) also support certification under that subsection.  First, it appears that no Class Member has an interest in individually controlling the prosecution of this case.  All Class Members that have not opted-out will simply receive their individual settlement amounts.  Second, it does not appear that litigation concerning the WARN Act rights of any Class Member has already begun in a different forum.  Third, for the reasons discussed with respect to predominance and superiority, it is desirous to concentrate all of the Class Members' claims before the Court.[4]

### 3. Notice

Rule 23(e)(1) provides that the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  FED. R. CIV. P. 23(e)(1).  Rule 23(c)(2)(B) governs notice requirements for Rule 23(b)(3) classes.  Pursuant to Rule 23(c)(2)(B), class members are entitled to the best notice that is practicable under the circumstances.  Such notice must clearly and concisely state in plain language:

> (i)    The nature of the action;
> (ii)   The definition of the class certified;
> (iii)  The class claims, issues, or defenses;
> (iv)   That a class member may enter an appearance through an attorney if the member so desires;
> (v)    That the court will exclude from the class any member who requests exclusion;
> (vi)   The time and manner for requesting exclusion; and
> (vii)  The binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

---

[4]    The fourth factor enumerated in Rule 23(b)(3)(D)—the difficulties of managing a class action—does not need to be considered when certifying a class for settlement purposes, because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also WorldCom*, 347 B.R. at 142–43.

In terms of the *form* of notice, "[t]he notice need not be highly specific," and courts have approved very general descriptions of a proposed settlement under the theory that "notices to class members can practicably contain only a limited amount of information."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) (internal quotation marks omitted) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982), *aff'd*, 117 F.3d 721 (2d Cir. 1997)).  Courts have found notice to be deficient when it does not advise a potential claimant of its recovery.  *See Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 94 (S.D.N.Y. 2007). In this case, the Notice complies with all of the requirements of Rule 23(c)(2)(B). Importantly, the Notice includes each Class Member's projected recovery under the Settlement. (Notice ¶ 10.)

As for the *manner* of notice, due process requires that "notice [be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Here, the Parties served the Notice on the last known address of each Class Member, as reflected in the Debtors' records.  (Mot. ¶ 56.)  The Debtors' records and the possible use of a national database for returned envelopes are reasonable means of identifying the addresses of the Class Members.  Moreover, since the Notice was sent to *each* Class Member by mail, the Court is satisfied that Class Members received the best notice practicable under Rule 23(c)(2)(B).  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (finding that when the names and addresses of class members are easily ascertainable, individual notice by mail is the "best notice practicable" under Rule 23(c)(2)).

### B. Approval of the Settlement on a Final Basis

Court review of a proposed class action settlement is subject to a two-step procedure: The settlement must be preliminarily approved and then approved on a final basis following a fairness hearing. *See In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). At the Preliminary Hearing, the Court determined that notice of the Settlement should be sent to all Class Members and a fairness hearing should subsequently take place for the Court to consider approval of the Settlement on a final basis.

For the Settlement to be approved in bankruptcy court, the Settlement must be *both* procedurally and substantively fair under Rule 23 and Federal Rule of Bankruptcy Procedure 9019. *See WorldCom*, 347 B.R. at 143–49. This process requires the Court to assess the fairness of a settlement by examining its terms and the negotiation process leading to settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

### 1. Procedural Fairness Under Rule 23 and Bankruptcy Rule 9019

Both Rule 23 and Bankruptcy Rule 9019 require the court to assess whether a proposed settlement is free from collusion and inadequate representation. *See WorldCom*, 347 B.R. at 143. The compromise must be the result of arms-length negotiations among the parties. *See Weinberger*, 698 F.2d at 74. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation and internal quotation marks omitted); *see PaineWebber*, 171 F.R.D. at 125. The record indicates that the Settlement was the process of arms-length negotiations between the parties. As evidenced by the hearings and conferences held before the Court and in the various pleadings, both parties are represented by experienced and capable counsel. The Parties had an opportunity

12

to exchange discovery informally in order to investigate the strengths and weaknesses of the assertions contained in the Complaint.  (Mot. ¶ 51.)  The Parties also represented that they worked together to resolve this matter (Mot. ¶ 50) and no party-in-interest has challenged the nature of the parties' negotiations.

### 2.  Substantive Fairness Under Rule 23

Under Rule 23(e), a class action shall not be dismissed or compromised without the approval of the court.  Fed. R. Civ. P. 23(e).  Final approval of a settlement under Rule 23(e) requires the court to determine that the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).  The court "'must make an independent evaluation' of the adequacy, fairness and reasonableness of a proposed settlement."  *Worthington v. CDW Corp.*, Case No. C-1-03-649, 2006 U.S. Dist. LEXIS 27444, at *9 (S.D. Ohio May 9, 2006) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).  In the Second Circuit, the substantive reasonableness of a settlement is determined by application of several factors.  *See Mba v. World Airways, Inc.*, 369 Fed. Appx. 194, 197 (2d Cir. 2010).  These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

### a.  The Complexity, Expense and Likely Duration of Litigation

In this case, litigating this matter would no doubt be very costly and would necessitate a trial before the Court.  The Settlement provides an expeditious route to recovery for the Class Members.  Litigation, by its nature, is also uncertain, and it is understandable for the parties to try to cap their risk exposure.  If the Debtors were found liable, it could potentially be subject to a priority claim of close to $1.4 million.[5]  (Mot. ¶ 34.)  The Settlement also caps the Debtors' liability exposure at 17%.  On the other hand, the Class Members would have received nothing if they were not successful.  Therefore, it is reasonable for the Class Members "to take the bird in the hand instead of the prospective flock in the bush."  *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

### b.  Reaction to the Settlement

The fairness of a proposed settlement can be measured by class reaction.  *See, e.g.*, *WorldCom*, 347 B.R. at 145.  For example, "the absence of objectants may itself be taken as evidencing the fairness of a settlement."  *Ross v. A.H. Robins Co., Inc.*, 700 F.Supp. 682, 684 (S.D.N.Y. 1988); *see also Marisol A. v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999).  Here, only three Class Members opted-out of the Settlement, and no objections to the Settlement were filed.

### c.  The Stage of the Proceedings and the Amount of Discovery Completed

The purpose of this factor is to assess "the parties' knowledge and awareness of the relative strength or weakness of each party's respective arguments and positions.  The progression of discovery is a useful proxy through which to measure that knowledge and awareness."  *WorldCom*, 347 B.R. at 145.  Here, the Settlement was reached as a result of

---

[5]      The argument for priority status is based on section 507(a)(4) and/or section 507(a)(5) because the possible damages would involve employee wages and benefits.  The Court need not and does not resolve this issue.

extensive negotiations between the parties and after informal discovery was exchanged—giving

both sides the ability to adequately assess their chances of succeeding on the merits.  (Mot.

¶¶ 33-36.)  Furthermore, both sides were represented by capable and experienced counsel; this

strengthens the conclusion that the parties had a sufficient opportunity to understand the

intricacies of the action.

### d.   Risks of Prevailing (Establishing Liability, Establishing Damages and Maintaining the Class Through Trial)

Each subcomponent of this factor is addressed independently under *Grinnell.*  495 F.2d at

463.  However, the Second Circuit has combined them to collectively assess the plaintiffs' risks

of prevailing.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

The Class Members may find it difficult to establish liability because they must both (i) establish

that all of the elements of a WARN Act claim are met, and (ii) overcome the Debtors'

affirmative defenses.  Given the possible affirmative defenses that the Debtors could raise, even

if the action did go to trial and the Class Members established liability, the Class Members may

experience difficulty proving significant damages.  In other contexts, courts have found overall

damages to be minimal despite a class's success in proving liability.  *See In re NASDAQ Market-*

*Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (antitrust class action); *In re Initial*

*Pub. Offerings Sec. Litig.*, 671 F. Supp. 2d 467, 482 (S.D.N.Y. 2009) (securities class action).

Moreover, although the Court has certified the Class on a final basis, it is not completely certain

whether the class would remain certified for trial.  Since none of the parties have offered

evidence demonstrating a risk of class decertification, the Court finds this factor to be neutral.

### e.   The Ability of the Defendants to Withstand a Greater Judgment

A settlement's fairness can also be assessed by examining a defendant's ability to pay a

judgment greater than the amount offered in a settlement.  *See PaineWebber*, 171 F.R.D. at 129.

Specifically, "evidence that the defendant will not be able to pay a larger award at trial tends to

weigh in favor of approval of a settlement, since the 'prospect of a bankrupt judgment debtor

down at the end of the road does not satisfy anyone involved in the use of class action

procedures.'" *Id.* (quoting *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y.

1985)).  But the fact "that a defendant is able to pay more than it offers in settlement does not,

standing alone, indicate that the settlement is unreasonable or inadequate." *PaineWebber*, 171

F.R.D. at 129.  In the context of an ongoing bankruptcy case, "this factor is of uncertain utility . .

. as the defendant's ability to pay more is clearly constrained." *WorldCom*, 347 B.R. at 147.

Although no parties raised this issue, the Court is not swayed by the proposition that the Debtors

could pay more than the settlement amount.  As discussed herein, the Settlement is the result of

good-faith, arms-length negotiations, and the Court will not disrupt the result of those

negotiations simply because the Debtors could pay more than the settlement amount.

### f.    The Range of Reasonableness

The final two *Grinnell* factors are generally considered together "since both speak to the

fairness of the settlement's terms relative to the possible outcomes of litigation." *Id.* at 147–48.

The range of reasonableness "recognizes the uncertainties of law and fact in any particular case

and the concomitant risks and costs necessarily inherent in taking any litigation to completion."

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  Moreover, "[d]ollar amounts [in class action

settlement agreements] are judged not in comparison with the possible recovery in the best of all

possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re

Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (citations omitted); *see

also Air Line Pilots Ass'n v. American Nat'l Bank and Trust Co. of Chicago (In re Ionosphere

Clubs, Inc.)*, 156 B.R. 414, 431 (S.D.N.Y. 1993) ("The weighing of a claim against

16

compensation cannot be . . . exact.  Nor should it be, since an exact judicial determination of the

values in issue would defeat the purpose of compromising the claim . . . .").  On this point, the

*Grinnell* court observed that "there is no reason, at least in theory, why a satisfactory settlement

could not amount to a hundredth or even a thousandth part of a single percent of the potential

recovery."  495 F.2d at 455 n.2.

In this case, the Court finds that in light of the circumstances discussed above, the

Settlement is reasonable.  The Settlement appropriately balances the competing interests of the

Class Members and the Debtors.  Both parties agreed that "litigation of the issues involved in

this litigation poses significant risk to each of the parties and that the Debtors are likely to incur

significant legal exposure defending the WARN Act claims."  (Miller Decl. ¶ 8.)  The Parties

arrived at this determination after exchanging discovery and thoroughly investigating the facts

and circumstances alleged in the Complaint.  (*Id.*)  When attorneys for both parties to a

settlement believe that the agreement is fair, reasonable and adequate, this factor weighs in favor

of approval.  *See Worthington v. CDW Corp.*, 2006 U.S. Dist. LEXIS 32100, at *12.  Moreover,

as previously discussed, none of the Class Members objected to the Settlement and only three

opted-out.  This fact further demonstrates the reasonableness of the Settlement.  *See Wal-Mart

Stores*, 396 F.3d at 119.  Lastly, the amount paid to Class Members under the Settlement is

likewise reasonable because it adequately considers the risks and added costs associated with

fully litigating this action, as well as a bankrupt defendant's ability to pay.  (Miller Decl. ¶ 14.)

No party-in-interest contends otherwise.

### 3.  Substantive Fairness Under Bankruptcy Rule 9019

The Court is satisfied that the Settlement passes muster under Bankruptcy Rule 9019.  A

court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the

17

best interests of the estate before it may approve a settlement. *In re Drexel Burnham, Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). Courts have developed standards to evaluate if a settlement is fair and equitable and identified factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry*, 390 U.S. 414 (1968). *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007). Those factors are interrelated and require the Court to evaluate: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." *In re Iridium Operating LLC*, 478 F.3d at 462. The burden is on the settlement proponent to persuade the Court that the settlement is in the best interests of the estate. *See* 8 NORTON BANKRUPTCY LAW AND PRACTICE 3D §167:2.

Although the factors articulated in *Grinnell* do not precisely mirror those enumerated in *Iridium Operating*, the reasons behind approving the Settlement are also applicable in the Bankruptcy Rule 9019 context. Namely, the Settlement is in the best interests of creditors and the estate because it caps the Debtors' risk at a relatively low percentage (17%) of their potential

18

total exposure.  The Settlement will eliminate additional expenses and uncertainty with respect to

litigating this matter.  Lastly, since the Debtors' Plan of Liquidation has already been confirmed

and gone effective, this Settlement presents an important step in winding-down the Debtors'

cases.

### C.  Class Counsel's Compensation

#### 1.  Appointing Class Counsel

Rule 23(g) directs the court to appoint class counsel when it certifies a class.  In

appointing class counsel, courts must consider the following:

> (i)  the work counsel has done in identifying or investigating potential claims in the action;
> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)  counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A).  In addition, a court may, among other things, consider any other

matter that is pertinent to counsel's ability to fairly and adequately represent the interests of the

class.  *Id.* at 23(g)(1)(B)-(E).

Here, the Court finds that it is appropriate to appoint the Class Counsel.  Lankenau &

Miller and the Gardner Firm, PC have served as class counsel in numerous WARN Act class

actions—a total of seventy between the two of them.  Therefore, both firms are capable of

handling this matter and are well versed in this area of the law.  Moreover, Class Counsel has

already invested time in this case by initiating this adversary proceeding and negotiating the

Settlement with the Debtors.  For these reasons, the Court appoints Lankenau & Miller and the

Gardner Firm, PC as Class Counsel.

### D. Class Counsel's Requested Fees Are Reasonable

Class Counsel also seeks payment of fees in the amount of one-third of the settlement amount ($79,000), after service fees are paid to the Plaintiff.  (Miller Decl. ¶ 24.)  The Plaintiff agreed to this fee structure, and Notice specifically apprised the Class Members of the amount of attorneys' fees sought.  According to the Miller Declaration, Class Counsel has spent over ninety hours prosecuting this case, which would equal approximately $54,285.50 in billable houly rates.  (Miller Decl. ¶ 25.)  Further, Class Counsel projects an additional $10,000-$15,000 in hourly fees for future matters.  (*Id.*)  Class Counsel also submitted time summary sheets and expense details, which are attached to the Miller Declaration as Exhibit 2.

Class Counsel's requested fees are reasonable as required by Rule 23(h).  *See* FED. R. CIV. P. 23(h).  In the Second Circuit, courts may employ either the "lodestar" or percentage-of-fund method to calculate attorneys' fees.  *Goldberger v. Integrated Res.*, *Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Under the lodestar method, "hours reasonably expended" are multiplied by a "reasonable hourly rate."  *Wal-Mart Stores*, 396 F.3d at 121 (citing *Goldberger*, 209 F.3d at 47).  A "multiplier" to the base lodestar amount may be employed to increase the award depending "on factors such as the riskiness of the litigation and the quality of the attorneys."  *Id.*  While the percentage method "more faithfully adheres to market practice," the lodestar method nonetheless "remains useful . . . as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)).  In the Second Circuit, the trend is toward use of the percentage method.  *See Wal-Mart*, 396 F.3d at 121.  Regardless of which method is employed, the proposed attorneys' fees must qualify as reasonable according to six factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3)

the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (citation and internal quotations omitted); *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989).

Here, Class Counsel is requesting attorneys' fees in the amount of $79,000, representing one-third of the Settlement amount.[6] (Miller Decl. ¶ 24.) As stated, a percentage method may be employed to calculate these fees. The proposed fees satisfy the *Goldberger* criteria for reasonableness. Class Counsel has expended over ninety hours of work on this matter and has submitted detailed time records showing the precise allocation of time spent on each task. (Miller Decl., Ex. 2.) There is no indication that these time entries are unreasonable. Furthermore, class action litigation under the WARN Act is specialized and complex and the risks of litigation here appear to be significant because of the substantial time and expense required to conduct a trial. Counsel has worked on this case for a significant period of time without any compensation and has satisfied the *Goldberger* factors, warranting the approval of a 1.45 multiplier. For these reasons, the Court finds that the requested fees are reasonable.

---

[6] Class Counsel incurred approximately $575 in expenses associated with litigating this case. (Miller Decl., Ex. 2.) However, Class Counsel is not seeking separate reimbursement for these expenses. (*Id.* ¶ 24.)

**CONCLUSION**

For the reasons explained above, the Court approves the Settlement on a final basis.  In

doing so, the Court confirms its preliminary conclusions that the Notice was appropriate and that

certification of the Class complies with the standards of Rule 23(a) and (b)(3).  The Settlement is

also both procedurally and substantively fair under Rule 23 and Bankruptcy Rule 9019.  The

requested award of attorneys' fees and expenses is also reasonable and appropriate in the

circumstances.  A separate order will be entered approving the Settlement on a final basis.


Dated:    February 17, 2012
          New York, New York



          **/s/Martin Glenn**
          MARTIN GLENN
          United States Bankruptcy Judge